# In the United States Court of Federal Claims

No. 11-779C

(Filed:  September 17, 2012)

```
*********************************** *
                                    *
STARR INTERNATIONAL COMPANY,        *
INC.,                               *
                                    *
                  Plaintiff,        *
                                    *
v.                                  *
                                    *   Motion  for  Reconsideration;  Standing;
THE UNITED STATES,                  *   Judicial Notice; Illegal Exaction; Federal
                                    *   Reserve Act, 12 U.S.C. § 343 et seq.
                  Defendant,        *   (2006).
                                    *
 and                                *
                                    *
AMERICAN INTERNATIONAL GROUP,       *
INC.,                               *
                                    *
                Nominal Defendant.  *
                                    *
*********************************** *
```

*David Boies*, with whom were *Robert J. Dwyer*, *Nicholas A. Gravante Jr.*, *Hamish P. M. Hume*, *Samuel C. Kaplan*, *Duane L. Loft*, *Julia C. Hamilton*, and *Luke Thara*, Boies, Schiller & Flexner LLP, Armonk, New York, and *John L. Gardiner*, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Plaintiff, Starr International Company, Inc.

*Brian M. Simkin*, Assistant Director, with whom were *Stuart F. Delery*, Acting Assistant Attorney General, *Jeanne E. Davidson*, Director, *Shalom Brilliant*, *Timothy P. McIlmail*, *Brian A. Mizoguchi*, John Roberson, Senior Trial Counsel, *Christopher A. Bowen*, *Renee A. Gerber*, *Karen V. Goff*, *Michael S. Macko*, *John J. Todor*, *Amanda L. Tantum*, *Jacob A. Schunk*, and *Vincent D. Phillips*, Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for Defendant.

*Joseph S. Allerhand*, *Stephen A. Radin*, and *Jamie L. Hoxie*, Weil, Gotshal & Manges LLP, New York, New York, for Nominal Defendant, American International Group, Inc.

OPINION AND ORDER ON
<u>DEFENDANT'S MOTION FOR RECONSIDERATION</u>

WHEELER, Judge.

On August 9, 2012, the Government filed a motion for reconsideration of the Court's July 2, 2012 49-page opinion addressing the Government's motion to dismiss the amended complaint of Plaintiff, Starr International Company ("Starr").  The motion for reconsideration has been fully briefed and is ready for decision.

In the July 2, 2012 opinion, the Court granted in part the Government's motion to dismiss as to:  (i) any due process claims not characterized as illegal exactions; (ii) any equal protection claims; (iii) Starr's takings claims based on the Government's conversion of its preferred stock to common stock, insofar as Starr alleged the taking of the same equity more than once; and (iv) Starr's use of the rough proportionality test.  <u>See</u> <u>Starr Int'l Co. v. United States</u>, __ Fed. Cl. __, 2012 WL 2512920, at *1 (July 2, 2012).  The Court deferred the issue of the Rule 23.1 demand requirement for a shareholder's derivative suit, and denied the Government's motion to dismiss in all other respects.  <u>Id.</u>

In its motion for reconsideration, the Government maintains that Starr: (i) lacks standing to bring its direct claim; (ii) lacks standing to bring its illegal exaction claim; and (iii) possessed no property interest that was adversely affected by the American International Group ("AIG") reverse stock split.  Def.'s Mot. for Recons. 1.  For the reasons stated below, the Government's motion for reconsideration is DENIED.

I.      <u>Standards of Review</u>

        a.  Reconsideration

The Government filed its motion for reconsideration pursuant to Rule 54(b) of the Rules of the United States Court of Federal Claims ("RCFC").  <u>Id.</u>  Rule 54(b) states, in relevant part, that:

> any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

RCFC 54(b).  This rule permits a court, in its discretion, to modify an interlocutory decision upon a motion for reconsideration.  See Yuba Natural Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990) ("The decision whether to grant reconsideration lies largely within the discretion of the district court.").  A motion for reconsideration is not to be used as an opportunity for a disappointed party to re-litigate issues in the case.  See Prati v. United States, 82 Fed. Cl. 373, 376 (2008) (internal quotations omitted).  Rather, a motion for reconsideration may be granted "upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States."  RCFC 59(a)(1)(C); Grand Acadian, Inc. v. United States, 93 Fed. Cl. 637, 640 (2010); see also Stevens v. United States, No. 98-554C, 2012 WL 2021740, at *4 (Fed. Cl. June 4, 2012) (explaining that such circumstances include "discovery of new and different material evidence that was not presented [before], or an intervening change of controlling legal authority, or when a prior decision is clearly incorrect and its preservation would work a manifest injustice.") (citing Intergraph Corp. v. Intel Corp., 253 F.3d 695, 698 (Fed. Cir. 2001)).

> b.  Motion to Dismiss

To survive a motion to dismiss, a plaintiff need only "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The Court must accept as true all well-pleaded allegations in the complaint and draw all reasonable inferences in favor of the plaintiff.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A well-pleaded complaint may proceed even if it appears on the face of the pleadings that "recovery is very remote and unlikely."  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974).  In sum, the Court considered the Government's motion to dismiss keeping in mind that Starr's burden at this phase was "minimal."  Colonial Chevrolet Co. v. United States, 103 Fed. Cl. 570, 574 (2012).  Although the facts of this case are vigorously contested, the Court must accept all well-pleaded allegations in Starr's amended complaint and construe the facts in the light most favorable to Starr.

## II.   Whether Starr Has Standing to Bring Its Direct Claim

In its motion, Defendant contends that Starr's allegations regarding the Government's control and subsequent dilution of the AIG minority shareholders' interest are implausible and should be rejected by the Court.  See Def.'s Mot. for Recons. 3.  The Government communicated these same sentiments in its motion to dismiss and at oral argument.  See Def.'s Mot. to Dismiss 15-18; June 1, 2012 Oral Arg. Tr. 17-19.  The Court carefully considered the Government's position and provided its opinion on the matter.  See Starr Int'l, 2012 WL 2512920, at *9-13.  The Government has not asserted any "intervening change of controlling legal authority," nor has it demonstrated that the Court's decision would work a "manifest injustice."  See Stevens, 2012 WL 2021740, at *4.

Instead, the Government asserts that "two key contract documents" eviscerate Starr's standing regarding its direct claim:  the September 2008 Term Sheet and the Credit Agreement.  Def.'s Mot. for Recons. 3-4.  These "key documents" were submitted to the Court for the first time as an attachment to the Government's motion for reconsideration.  Id. at Attach. A.  The Government did not submit these documents during the motion to dismiss stage, and in any event, the Court is not inclined to review evidentiary documents in the process of ruling upon a motion to dismiss.   The Government simply has not shown any basis for reconsideration.

Next, the Government encourages the Court to take judicial notice of the Term Sheet and Credit Agreement.  Def.'s Mot. for Recons. 3, 5.  In limited circumstances, a court may, in its discretion, take judicial notice of evidence outside of the pleadings, such as public records or documents incorporated into the complaint by reference.  See AstraZeneca Pharm. LP v. Apotex Corp., 669 F.3d 1370, 1378 n.5 (Fed. Cir. 2012); Indium Corp. of Am. v. Semi-Alloys, Inc., 781 F.2d 879, 884 (Fed. Cir. 1985).  Given the complexity of this case and the potential differing interpretations of these documents, see e.g., Def.'s Mot. for Recons. 4-8; Pl.'s Resp. 4-5, the Court declines to take judicial notice of the Term Sheet and the Credit Agreement.   Accordingly, the Government's motion for reconsideration as it pertains to Starr's direct claim is denied.

III.   Review of Starr's Illegal Exaction Claim

The Government argues that the Court should reconsider its denial of the motion to dismiss the illegal exaction claim because (i) Starr lacked standing to enforce the Federal Reserve Bank of New York's ("FRBNY's") compliance with Section 13(3) of the Federal Reserve Act ("FRA") (hereinafter "Section 13(3)"), Pub. L. No. 63-43, § 13(3) (1913) (codified as amended at 12 U.S.C. § 343 (2006)); (ii) Starr failed to cite a money-mandating statute; and (iii) the FRBNY had authority to condition the financing to AIG.  Def.'s Mot. for Recons. 12.

a.   Standing

The Court recognizes that the Board of Governors serves a regulatory role in exercising general supervision over Federal Reserve banks like the FRBNY.  See 12 U.S.C. §§ 248(j), 343 (2006).  This acknowledgement, however, does not alter any material aspect of the Court's previous opinion.  Starr alleges that the FRBNY exceeded its authority under Section 13(3), resulting in an illegal exaction.  Pl.'s Opp'n. 9.  Illegal exactions create substantive rights conferring standing.  Starr Int'l , 2012 WL 2512920, at *8 (citing Eastport S.S. Corp. v. United States, 372 F.2d 1002, 1007-09 (Ct. Cl. 1967).  Accordingly, provided that Starr has validly asserted an illegal exaction claim, standing is established.

b.  Money-mandating Statute

In its motion, the Government reasserts that the Court lacks jurisdiction over Starr's illegal exaction claim because Starr has not cited a money-mandating statute. Def.'s Mot. for Recons. 14.  As a general rule, claims asserting a violation of the Due Process Clause alone are not sufficient to establish jurisdiction under the Tucker Act, 28 U.S.C. § 1491 (2006).  See Norman v. United States, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citing Murray v. United States, 817 F.2d 1580, 1582 (Fed. Cir. 1987)).  An exception exists, however, for monetary claims based on an illegal exaction:  "In the context of an illegal exaction, the court has jurisdiction regardless of whether the provision relied upon can be reasonably construed to contain money-mandating language." Figueroa v. United States, 57 Fed. Cl. 488, 496 (2003); aff'd, 466 F.3d 1023 (Fed. Cir. 2006).  Moreover, as the Court stated in its opinion, "the question of whether [Section 13(3)] is money-mandating is . . . a novel one," Starr International Co. v. United States, __ Fed. Cl. __, 2012 WL 2512920, at *36 (July 2, 2012), and the Court must draw all reasonable inferences in favor of the plaintiff, Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Therefore, even if the citation of a money-mandating statute is required to bring an illegal exaction claim, at this stage Starr is entitled to the inference that Section 13(3) is indeed money-mandating.

c.  The Board's Authority Under Section 13(3)

For purposes of ruling on the Government's motion to dismiss, the Court found ample support for a reasonable inference that the FRBNY purchased the Series C Preferred Stock.  Starr Int'l, 2012 WL 2512920, at *36-37.  In determining that the exchange was a "purchase," the Court looked at various factors such as: (i) the Government's loan to AIG being sufficiently secured without the preferred shares; (ii) the Government's retention of the stock even if the loan is paid off with interest; and (iii) the parties' use of the label "Stock Purchase Agreement." Id.  As the Court pointed out in its opinion, neither the plain text of Section 13(3) nor the Federal Reserve circulars provide any "express authority for the Federal Reserve to purchase . . . equities." Id. at *38 (quoting David Small & James Clouse, Limits the Federal Reserve Act Places on Monetary Policy, 19 Ann. Rev. Banking L. 553, 579 (2000)).

The Government disagrees with the Court's characterization of the exchange as a "purchase," asserting again that the Series C Preferred Stock was merely consideration for the loan to AIG.  Def.'s Mot. for Recons. 16.  The Government argues that Section 13(3) allowed the Board to condition the $85 billion lending commitment to AIG upon the additional consideration of the Series C Preferred Stock to the Trust. Id. at 16-17. This argument fails, however, as the "only consideration for a loan prescribed by" Section 13(3) "is an interest rate subject to the determination of the Board of Governors."

Starr Int'l, 2012 WL 2512920, at *37.   The Government is merely repackaging its previous arguments, based on assumptions that the Court already has rejected.

The Government's argument that the Board had implied authority to demand transfer of equity in exchange for a loan is similarly unavailing.   The Court determined, for purposes of the Government's motion to dismiss, that interest rates are the only permissible form of consideration for a loan under the FRA.   See id.  Although the FRA does indeed confer incidental powers upon Federal Reserve banks, it grants only such powers that "shall be necessary to carry on the business of banking *within the limitations prescribed by this chapter.*"   12 U.S.C. § 341 Seventh (2006) (emphasis added).   Thus, because the FRA only permits the Board to demand consideration in the form of interest rates, the Board did not have implied authority to demand the transfer of equity as consideration for the loan to AIG.   Accordingly, the Government's motion for reconsideration with respect to Starr's illegal exaction claim is denied.

IV.    Whether Common Shareholders Possessed a Property Interest

Similar to its claim regarding the Term Sheet and Credit Agreement, the Government seeks to introduce a stipulation and order from the Delaware Court of Chancery ("Stipulation").   Def.'s Mot. for Recons. 19, Attach. A.   The Government argues that the Stipulation was not intended to protect common shareholders of AIG from dilution of their shares.   Id. at 20.   The Government's position hinges on the Court taking judicial notice of the Stipulation at this stage of the proceedings.   Def.'s Mot. for Recons. 19-21.   As discussed in Part II above, the Court may take judicial notice of certain categories of documents in its discretion.   See Indium Corp. of Am., 781 F.2d at 884. The Stipulation is but one document that may be relevant to the Chancery Court's decision, and the parties may want to introduce other documents to support their interpretations of the Stipulation.   At present, the Court declines to take judicial notice of the filings in the Delaware Court of Chancery and instead preserves the issue for later consideration on the merits.

CONCLUSION

Based upon the foregoing, the Government's motion for reconsideration is DENIED.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge