**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

```
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
STARR INTERNATIONAL COMPANY,
INC., Individually and on Behalf of All          :
Others Similarly Situated, and derivatively on
behalf of AMERICAN INTERNATIONAL    :
GROUP, INC.,
                                                 :
                          Plaintiff,
                                                 :
              v.                                      No. 11-00779C (TCW)
                                                 :
THE UNITED STATES OF AMERICA,
                                                 :
                          Defendant,
                                                 :
and AMERICAN INTERNATIONAL
GROUP, INC., a Delaware corporation,             :

                  Nominal Defendant.             :

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X
```

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR CLASS
CERTIFICATION AND APPOINTMENT OF CLASS COUNSEL**

# TABLE OF CONTENTS

I.  Statement of Facts ...........................................................................................................1

II.  The Proposed Classes ...................................................................................................3

III.  The Proposed Classes Readily Satisfy RCFC 23's Requirements ...................................4

    A.  Numerosity ...............................................................................................................5

    B.  Commonality .............................................................................................................6

    C.  Typicality ...................................................................................................................8

    D.  Adequacy of Representation ...................................................................................10

        1.  Adequacy of Counsel ...........................................................................10

        2.  Dual Representation ...............................................................................12

        3.  Class Conflicts .......................................................................................13

    E.  Superiority ................................................................................................................14

CONCLUSION ...................................................................................................................16

# TABLE OF AUTHORITIES

## Cases

*Adams v. United States*,
    93 Fed. Cl. 563 (2010).........................................................................................7, 10

*Barnes v. United States*,
    68 Fed. Cl. 492 (2005).........................................................................................7, 15

*Bertozzi v. King Louie Intern., Inc.*,
    420 F. Supp. 1166 (D.R.I. 1976) ......................................................................12, 13

*Dietrich v. Bauer*,
    192 F.R.D. 119, 122 (S.D.N.Y. 2000) .....................................................................5

*Douglas R. Bigelow Trust v. United States*,
    97 Fed. Cl. 674, 676 (2011)..............................................................4, 6, 7, 8, 9, 15

*Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011)...........................11

*Geneva Rock Prods., Inc. v. United States*,
    100 Fed. Cl. 778 (2011)................................................................4, 6, 7, 8, 9, 10, 13

*Grace v. Rosenstock*,
    No. CV-85-2039, 1986 WL 2709 (E.D.N.Y. Mar. 6, 1986) ....................................12

*Gross v. United States*,
    106 Fed. Cl. 369 (2012).................................................................................3, 6, 7, 14

*Haggart v. United States*,
    89 Fed. Cl. 523 (2009).......................................................................................7, 14

*Hurwitz v. R.B. Jones Corp.*,
    76 F.R.D. 149 (W.D. Mo. 1977)...............................................................................12

*In re Auction Houses Antitrust Litig.*,
    No. 00 Civ. 0648, 2001 U.S. Dist. LEXIS 1713 (S.D.N.Y. Feb. 22, 2001) ............11

*In re Blech Sec. Litig.*,
    187 F.R.D. 97 (S.D.N.Y. 1999)..................................................................................5

*In re DaimlerChrysler AG Sec. Litig.*,
    216 F.R.D. 291 (D. Del. 2003) ..................................................................................5

*In re Monster Worldwide, Inc. Sec. Litig.*,
    251 F.R.D. 132 (S.D.N.Y. 2008) (citation omitted) ...............................................15

*In re Rasterops Corp. Sec. Litig.*,
    No. C 92–20115, 1993 WL 476651 (N.D. Cal. Sept. 10, 1993) ........................12, 13

*In re Vitamins Antitrust Litig.*,
    No. 99-0197, 2000 U.S. Dist. LEXIS 8931 (D.D.C. Mar. 31, 2000) .......................11

*Keyser v. Commonwealth Nat'l Fin. Corp.*,
    120 F.R.D. 489 (M.D. Pa. 1988) ............................................................12

*King v. United States*,
    84 Fed. Cl. 120 (2008).............................................................................3

*Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*,
    277 F.R.D. 97 (S.D.N.Y. 2011)...............................................................15

*Schnorbach v. Fuqua*,
    70 F.R.D. 424 (S.D. Ga. 1975)...............................................................12

*Singleton v. United States*,
    92 Fed. Cl. 78 (2010)...................................................1, 4, 6, 7, 8, 9, 10, 14, 15

*Toscano v. United States*,
    98 Fed. Cl. 152 (2011).............................................................4, 6, 8, 15

**Other Authorities**

7A Fed. Prac. & Proc. Civ. § 1781.1 (3d ed.) ............................................5

7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.) ............................................13

By its Order of July 2, 2012 ("July 2 Order"), this Court held that the public shareholders of the Common Stock of American International Group, Inc. ("AIG") stated direct claims under the Fifth Amendment arising from two actions by which the Government expropriated property either "without paying just compensation" or through an illegal exaction—namely: "(1) the imposition of the Credit Agreement on September 22, 2008," by which the Government obtained a 79.9% equity interest in AIG through a commitment of Series C Preferred Stock; and "(2) the reverse stock split of June 30, 2009," by which the "common shareholders lost their ability to prevent anyone from diluting the pool of common stock by more than 40% and ultimately, lost their majority vote when voting as a separate class." *Id.* at 22-23.

As to each of these two "government actions," which this Court held "sufficiently identified" a claim on behalf of shareholders for an expropriation of property interests "requiring just compensation," certification of a class action for those "AIG common shareholders at the time of the alleged expropriations," is warranted. *Id.* at 23 & n.11.

As set forth below, the requisite standards of Rule 23 of the Rules of the United States Court of Federal Claims are readily satisfied with respect to each of the defined classes and certification of the shareholder classes "serves public purposes of judicial economy and efficiency." *Singleton v. United States*, 92 Fed. Cl. 78, 82 (2010).

I.      **Statement of Facts**

The allegations at issue in this action and the background salient to the present motion for class certification are addressed in detail in the prior rulings of this Court concerning the Government's Motion to Dismiss and for Reconsideration. *See* July 2 Order, *passim*; *see also* Sept. 17, 2012 Order (denying the Government's motion for reconsideration).

In pertinent part, this Court addressed comprehensively whether Starr and other shareholders of AIG Common Stock held direct claims arising from the "'expropriation of the economic value and voting power associated with plaintiff's shares of AIG common stock.'" July 2 Order at 12-13 (quoting Plaintiff's Opposition at 29). The Court concluded "Starr has pled facts sufficiently alleging a harm to the suing stockholders independent of any harm to AIG." *Id.* at 13, 22-23.

With respect to the "harm to the suing stockholders," this Court held that Starr had properly pled two defined expropriations of property interests for which the direct claims of "then-existing common stock shareholders" were cognizable. *Id.* at 13.

*First*, "pursuant to the Credit Agreement, signed September 22, 2008, the Government took 79.9% of the minority shareholders'[1] 'equity interest,' consisting of dividends and liquidation value, as well as 79.9% of their 'first voting interest,' consisting of dividend and shareholder voting rights (but not yet common stock only voting rights)." *Id.* at 15-16.

*Second*, "the Government took 79.9% of the minority shareholders' common stock only voting rights by means of the reverse stock split on June 30, 2009." *Id.* at 16.

The Court held each of these two events to be among three "government actions allegedly requiring just compensation" that had been "sufficiently identified" by Starr in its pleadings. *Id.* at 23.[2]

This Court concluded that based on Starr's allegations "the Government extracted from the public shareholders, and redistributed to itself, 'a portion of the economic value and voting

---

[1] The Court stated: "'Minority' shareholders refers to the AIG common shareholders at the time of the alleged expropriations." *Id.* at 15 n.11.

[2] The third government action—"the Government's use of AIG collateral to purchase certain CDOs from AIG counterparties in November and December of 2008"—is a derivative claim brought on behalf of AIG, not a direct shareholder claim, and thus is not the subject of this class certification motion. *Id.* at 23.

power embodied in the minority interest.' As a result, AIG's shareholders were harmed 'uniquely and individually' to the same extent that the Government benefited." *Id.* at 18 (citations omitted); *see also id.* at 31 (common stock shareholders have "a protectable property interest in the equity and voting power associated with Plaintiffs' shares of common stock.").

## II.     The Proposed Classes

Consistent with this Court's ruling, Starr respectfully seeks certification of the following two classes of "AIG common shareholders at the time of the alleged expropriations." *Id.* at 15 n.11.

1.     All persons or entities who held shares of AIG Common Stock on or before September 16, 2008 and who owned those shares as of September 22, 2008 ("**The Credit Agreement Class**"), excluding Defendant, any directors, officers, political appointees, and affiliates thereof, as well as members of the immediate families of Jill M. Considine, Chester B. Feldberg, Douglas L. Foshee, and Peter A. Langerman.

2.     All persons or entities who owned shares of AIG Common Stock on June 30, 2009 and were eligible to vote those shares at the annual shareholder meeting held on that date ("**The Stock Split Class**"), excluding Defendant, any directors, officers, political appointees, and affiliates thereof, as well as members of the immediate families of Jill M. Considine, Chester B. Feldberg, Douglas L. Foshee, and Peter A. Langerman.

Each class represents a defined, cohesive group of shareholders with identical claims and interests arising from actions of the Government "generally applicable to the class." RCFC 23(b)(2). Moreover, these classes are drawn narrowly to abide by this Court's prior rulings and to ensure that this Court will be able to adjudicate each group's claims efficiently.[3]

---

[3] In this respect, the class definition has been narrowed from that set forth in the Amended Complaint in order to conform to the rulings of the Court and to address specifically the two identified expropriations which provide shareholders with a direct cause of action. If the Court disagrees with either of Starr's proposed classes, however, it may modify the class definitions as it deems necessary. *Gross v. United States*, 106 Fed. Cl. 369, 374 (2012) (citing *King v. United States*, 84 Fed. Cl. 120, 128-29 (2008)).

**III.    The Proposed Classes Readily Satisfy RCFC 23's Requirements**

The proposed classes satisfy the requirements of RCFC 23, which have been "succinctly described as comprising inquiry into the elements of numerosity, commonality, typicality, adequacy, and superiority." *Singleton*, 92 Fed. Cl. at 82; RCFC 23; *see also Geneva Rock Prods., Inc. v. United States*, 100 Fed. Cl. 778, 782 (2011).

As stated in more detail, a class action is maintainable under RCFC 23 when:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a).  In addition, for the class action to maintainable under RCFC 23(b), the court must find that "'the United States has acted or refused to act on grounds generally applicable to the class,' that the common questions of law and fact predominate, and that the class action is superior to other methods for adjudicating the controversy." *Singleton*, 92 Fed. Cl. at 81-82 (quoting RCFC 23(b)).

Courts applying RCFC 23 have recognized that the rule should be accorded "a liberal construction," which "serves public purposes of judicial economy and efficiency." *Singleton*, 92 Fed. Cl. at 82.  Moreover, "the rule assumes that the court may certify a class on the basis of the complaint." *Toscano v. United States*, 98 Fed. Cl. 152, 154 (2011); *Douglas R. Bigelow Trust v. United States*, 97 Fed. Cl. 674, 676 (2011) ("the court must assume the truth of the factual assertions contained in the complaint").

Notably, the propriety of the class action procedure has been consistently recognized where, as here, the matters in dispute have affected a defined group of shareholders on a

common basis. *See, e.g.*, *In re DaimlerChrysler AG Sec. Litig.*, 216 F.R.D. 291, 300 (D. Del. 2003) ("Class actions are favored in securities fraud cases in this Circuit."); *Dietrich v. Bauer*, 192 F.R.D. 119, 122 (S.D.N.Y. 2000) (noting that "the Second Circuit has 'traditionally favored the use of class actions for the resolution of securities law claims'"); 7AA Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1781.1 (3d ed.) ("In general, however, because most securities cases involve hundreds or thousands of class members who typically possess only small individual claims, courts have noted that securities class actions should be liberally allowed."). In accordance with this well-developed body of securities class action law emphasizing the appropriate role of the class action procedure to address efficiently the common claims of affected shareholders, class certification is proper here to address, on an efficient and just basis, the uniform claims of "AIG common shareholders at the time of the alleged expropriations." July 2 Order at 15 n.11.

As set forth below, each of the enumerated requirements of RCFC 23 are readily met.

**A. Numerosity**

The proposed classes satisfy the numerosity requirement. AIG's 2008 and 2009 proxy statements show that each of the respective classes has in excess of 50,000 shareholders, with close to 2.7 billion outstanding shares.[4] Rausser Report ¶ 17; *In re Blech Sec. Litig.*, 187 F.R.D. 97, 103 (S.D.N.Y. 1999) (finding numerosity where the "number of class members is in the thousands," shares were actively traded on NASDAQ, and "names and addresses of the Class members can be ascertained from the books and records of defendants").

---

[4] *See* AIG, 2008 Proxy Statement at 3 (April 4, 2008), *available at* http://www.aig.com/Chartis/internet/US/en/2008proxy_tcm3171-440901.pdf  (last visited Dec. 3, 2012) (55,886 shareholders of record as of March 28, 2008); AIG, 2009 Proxy Statement at 6 (June 5, 2009), *available at* http://www.aig.com/Chartis/internet/US/en/2009proxy_tcm3171-440898.pdf, (last visited Dec. 3, 2012) (57,741 shareholders of record as of May 22, 2009).

The tens of thousands of shareholders at issue readily satisfy any numerosity standard. *See generally Geneva Rock*, 100 Fed. Cl. at 787 ("In one popular view, any class larger than 40 is assumed to be sufficiently numerous."); *Bigelow Trust*, 97 Fed. Cl. at 677 (certifying a class of approximately 25 plaintiffs, in part because "the costs of litigation threaten to overwhelm the pursuit of smaller claims"); *Gross v. United States*, 106 Fed. Cl. 369, 374 (2012) ("There is no set number of potential class members that must exist before a court can certify a class.").

As with any significant publicly traded stock of the magnitude and scope of AIG, these tens of thousands of investors are geographically dispersed, *see Toscano*, 98 Fed. Cl. at 155, and many investors have relatively small shareholdings that would not otherwise justify the burdens associated with pursuing litigation against the Government.

## B. Commonality

The two proposed classes satisfy the Court of Federal Claims' three-part commonality test, which combines the related requirements of RCFC 23(a)(2), (b)(2) and (b)(3):

> Commonality is a three-part test. RCFC 23(a)(2) requires that there be questions of law or fact common to the class; RCFC 23(b)(2) requires that the United States has acted or refused to act on grounds generally applicable to the class; and RCFC 23(b)(3) requires that the questions of law and fact common to class members predominate over questions particular to individual class members.

*Singleton*, 92 Fed. Cl. at 84; *Geneva Rock*, 100 Fed. Cl. at 788.

The "threshold to establish commonality is 'not high,'" and the "test of a common question of law or fact is met 'when there is at least one issue whose resolution will affect all or a significant number of the putative class members.'" *Singleton*, 92 Fed. Cl. at 84 (citations omitted). Where a "single act is the wellspring of all the putative class members' claims," there "can be little question that the government acted on grounds applicable to the entire class" and that the commonality test is satisfied. *Geneva Rock*, 100 Fed. Cl. at 788-89; *see generally*

*Bigelow Trust*, 97 Fed. Cl. at 678; *Adams v. United States*, 93 Fed. Cl. 563, 575-76 (2010); *Haggart v. United States*, 89 Fed. Cl. 523, 532-33 (2009); *see also Gross*, 106 Fed. Cl. at 377-79; *Barnes v. United States*, 68 Fed. Cl. 492, 496 (2005).

Here, each proposed class readily meets the commonality standard. As to the Credit Agreement Class, the central issue is whether the 79.9% equity interest in AIG obtained by the Government through the Series C Preferred Stock commitment constituted an illegal exaction or a taking without just compensation. The factual and legal inquiries necessary to address this central issue of liability are uniform as to all public shareholders and involve matters of generalized proof that do not vary amongst class members. *See Geneva Rock*, 100 Fed. Cl. at 789 (noting the central issue of "whether the NITU issued on December 31, 2002 effected a taking of the class members' property" and "the central legal questions of this case—concerning the original easement given to the railroad, the reversionary rights" and "the effect of the NITU on those rights—can all be resolved through generalized proof."); *Singleton*, 92 Fed. Cl. at 84 ("the legal question common to all class members is whether the NITU effectuated a Fifth Amendment taking").

So too, the Stock Split Class involves the common central issue of whether use of the reverse stock split to circumvent the separate right of Common Stock shareholders to the required independent vote to increase the number of authorized shares of Common Stock and to reduce the par value of Common Stock constituted an illegal exaction or taking without just compensation of the "equity and voting power associated with the Plaintiffs' shares of common stock." July 2 Order at 31. Again, the factual and legal inquiries necessary to address this central issue of liability are uniform as to all public shareholders and involve matters of

generalized proof that do not vary amongst class members. *See, e.g.*, *Geneva Rock*, 100 Fed. Cl. at 789; *Singleton*, 92 Fed. Cl. at 84.

As Plaintiff's expert Dr. Gordon Rausser discusses in more detail in his report: "All evidence regarding the Government's actions is common to each member of the respective Class to which that member belongs." Rausser Report ¶ 11.

Given the centrality of these over-arching common issues to the claims of the shareholders within each of the classes, and the common proof by which these central issues will be adjudicated, the "predominance" requirement is readily met. *See, e.g.*, *Geneva Rock*, 100 Fed. Cl. at 789; *Toscano*, 98 Fed. Cl. at 155 (finding commonality where the "one core common legal question" certainly predominated "over any individual variations such as differences of title or differing damages allegedly due."); *Singleton*, 92 Fed. Cl. at 84; *Bigelow Trust*, 97 Fed. Cl. at 678 (commonality and predominance met where "all plaintiffs share the same core legal question: did a Fifth Amendment taking occur."). Indeed, no individualized proof, other than the mechanical determination of the number of shares held by each class member, is plausibly at issue in the resolution of the class claims, and the possibility that there will be a damages determination "on a plaintiff by plaintiff basis does not preclude class certification." *Singleton*, 92 Fed. Cl. at 84.

## C. Typicality

Starr's claims are typical of the claims and defenses of every class member because, as discussed in the "commonality" analysis, all plaintiffs' claims arise out of the same conduct and events and rely on answers to the same legal questions. Indeed, typicality "is intertwined with commonality," and the "named plaintiff need only show that its 'claims share the same essential characteristics as the claims of the class at large.'" *Geneva Rock*, 100 Fed. Cl. at 789-90 (citations omitted). As with commonality, "the threshold is not high." *Singleton*, 92 Fed. Cl. at

84; *Bigelow Trust*, 97 Fed. Cl. at 678. Thus, the requirement is readily satisfied if the claims "of the representatives and the members of the class stem from a single event or unitary course of conduct, or if they are based on the same legal or remedial theory." *Geneva Rock*, 100 Fed. Cl. at 790 (citations omitted); *Bigelow Trust*, 97 Fed. Cl. at 678.

Starr's claims and those of the shareholders in each of the respective classes are based on the same legal theory and arise out of the same Government actions resulting in the expropriation of the shareholders' property interests. *See Geneva Rock*, 100 Fed. Cl. at 790 (noting that the named Plaintiff's "claim shares the same essential characteristics as the claims of the class because they are all based on the same factual and legal predicates"); *Singleton*, 92 Fed. Cl. at 84. All members of the Credit Agreement Class, including Starr, raise takings and illegal exaction claims that stem from the September 22, 2008 Credit Agreement and the 79.9% equity interest in AIG obtained by the Government through the Series C Preferred Shares commitment. *See* July 2 Order at 16. Specifically, as this Court found, all shareholders within the Credit Agreement class claim that the "the Government took 79.9% of" AIG shareholders' "'equity interest,' consisting of dividends and liquidation value, as well as 79.9% of their 'first voting interests,' consisting of dividend and shareholder voting rights (but not yet common stock only voting rights)." July 2 Order at 15-16, & n.11. Resolution of whether this Government action violated the Takings Clause or constituted an illegal exaction will be based upon the same factual and legal predicates for all shareholders within the Class.

So too, all members of the Stock Split Class, including Starr, raise takings and illegal exaction claims based on the circumvention of those shareholders' "common stock only voting rights" to prevent the dilution of the Common Stock pool and the concomitant conversion of the Series C Preferred Shares to Common Stock. *Id.* at 16. Starr and the other class members have

identical interests in prevailing on this claim by proving identical facts: that Proposal 4 did not allow a separate vote of common shareholders, that it misleadingly claimed that AIG had no plans for the extra authorized but unissued shares that the Proposal would create, that it coercively tied the Proposal to a delisting threat, and that failure to conduct a separate vote of common shareholders with respect to an increase in authorized shares and a reduction in par value was contrary to the Credit Agreement, the Stock Purchase Agreement, the *Walker* settlement, and various SEC filings, and was improper under the law. Resolution of whether this Government action violated the Takings Clause or constituted an illegal exaction will also be based upon the same factual and legal predicates for all shareholders within the Class. *See* Rausser Report ¶ 19 ("Each of the actions taken by the Government had an effect that was shared across all of the common stock on a ratable basis, share for share.").

Indeed, not only do Starr's claims with regard to these two wrongful expropriations of shareholders' property interests "share the same essential characteristics as the claims of the class at large," *Geneva Rock*, 100 Fed. Cl. at 790—they are fully coextensive with those of the other "AIG common shareholders at the time of the alleged expropriations." July 2 Order at 15 n.11.

### D. Adequacy of Representation

Plaintiffs satisfy the adequacy of representation requirement, which "has been held to encompass two components: adequacy of counsel as well as lack of conflict between the interests of named plaintiffs and the proposed class members." *Singleton*, 92 Fed. Cl. at 85 (citation omitted); *see also Adams*, 93 Fed. Cl. at 576.

#### 1. Adequacy of Counsel

Here, class counsel is "qualified, experienced, and generally able to conduct the litigation." *Adams*, 93 Fed. Cl. at 576. The classes will be represented by attorneys from two

widely respected national law firms, Boies, Schiller & Flexner LLP ("BSF") and Skadden, Arps, Slate, Meagher & Flom, LLP ("Skadden"), both of which have extensive experience in class action litigation and in lawsuits involving shareholder matters. Lead counsel David Boies, and BSF as a whole, has served as lead counsel in numerous class actions with successful results for the class, including a $512 million settlement on behalf of an antitrust class in *In re Auction Houses Antitrust Litigation*. This victory was cited by the court as "the most outstanding result I have ever heard of in the history of antitrust laws." *See In re Auction Houses Antitrust Litig.*, No. 00 Civ. 0648, 2001 U.S. Dist. LEXIS 1713, at *27-28 (S.D.N.Y. Feb. 22, 2001). The firm obtained partial settlements of over a billion dollars in *In re Vitamins Antitrust Litigation*, and went on to win a jury verdict for the class against four non-settling defendants for $148.5 million. *In re Vitamins Antitrust Litig.*, No. 99-0197, 2000 U.S. Dist. LEXIS 8931, at *20, *35 (D.D.C. Mar. 31, 2000). Just last year, the firm won a Supreme Court victory for the plaintiff class that resolved an important question of class certification—whether plaintiffs in securities fraud class actions must prove loss causation in order to obtain class certification. *See Erica P. John Fund, Inc. v. Halliburton Co.*, 131 S. Ct. 2179 (2011).[5]

Likewise, Skadden has been involved in hundreds of class action proceedings, including numerous class actions involving shareholder issues. Among various accolades for its work in class action legal matters, the firm was recognized as one of only three "Class Action and Tort Litigation Powerhouse" law firms in a survey published by Law360 in 2012.

---

[5] Other class actions that Boies, Schiller & Flexner LLP has been involved in include *In re Buspirone Patent & Antitrust Litig.*, MDL No. 1413, No. 01-cv-7951 (S.D.N.Y. 2003) (resulting in an approved settlement for the certified Class totaling $220 million) and *In re Cardizem CD Antitrust Litigation*, MDL No. 1278, Nos. 99-cv-73259 and 99-cv-73870 (E.D. Mich. 2002) (resulting in an approved settlement for the certified Class totaling $110 million); *Anwar, et al. v. Fairfield Greenwich Ltd., et al.*, No. 09-cv-118 (S.D.N.Y. 2012) (preliminary approval granted in settlement of case involving the largest feeder fund for Bernard Madoff's fraud); *Pokorny v. Quixtar Inc., et al.*, No. C 07-00201 SC (N.D. Cal. 2011) ($55 million class settlement); and *In re Vitamin C Antitrust Litig.*, 279 F.R.D. 90 (E.D.N.Y. 2012) (pending).

Accordingly, there is no meaningful basis to dispute that counsel for Starr are "qualified, experienced, and generally able to conduct the litigation."

### 2. Dual Representation

Although the AIG Board has yet to determine whether it will allow Starr's derivative claims to proceed, and if so, whether Starr's counsel will represent AIG with respect to the derivative claims, it bears note that no conflict would arise from such a representation on behalf of both AIG and the classes. First, such dual representations are not precluded. *See, e.g.*, *Bertozzi v. King Louie Intern., Inc.*, 420 F. Supp. 1166, 1180 (D.R.I. 1976) ("The Court agrees that no per se rule controls this question, and feels that the fashioning of such an inflexible rule would be singularly inappropriate for class action questions."); *In re Rasterops Corp. Sec. Litig.*, No. C 92–20115, 1993 WL 476651, at *7-8 (N.D. Cal. Sept. 10, 1993). Second, no conflict exists or will materialize between the direct and derivative plaintiffs in this action because none of the risk factors are applicable. Specifically, conflicts are unlikely to arise where: (a) the parties are not seeking relief from the corporation itself, *see Hurwitz v. R.B. Jones Corp.*, 76 F.R.D. 149, 165 (W.D. Mo. 1977) (certifying a class where both the class claim and the derivative claim were brought against high net-worth individual officers and directors, not the corporation); (b) one set of claims will not reduce the likelihood or amount of recovery in the other set, *Schnorbach v. Fuqua*, 70 F.R.D. 424, 435 (S.D. Ga. 1975); and (c) the direct and derivative claims are factually similar, *Keyser v. Commonwealth Nat'l Fin. Corp.*, 120 F.R.D. 489, 492-93 (M.D. Pa. 1988); *Grace v. Rosenstock*, No. CV-85-2039, 1986 WL 2709, at *3 (E.D.N.Y. Mar. 6, 1986) ("Since the class action and the derivative claims are all based upon the same nucleus of facts, the court believes that plaintiffs are able to vigorously prosecute the action.").

Here, there is no real dispute that Starr's direct and derivative claims against the Government are legally and factually similar: both the direct and the derivative claims allege illegal exactions and violations of the Takings Clause and will require a detailed examination of Defendant's conduct between September 2008 and January 2011. Courts have consistently held where a plaintiff's success in both actions is "equally contingent upon the proof of the same nucleus of facts, they and their counsel can be expected to attack all fronts with equal vigor." *Bertozzi*, 420 F. Supp. at 1180. Moreover, recovery on the direct claims will not reduce recovery on the derivative claims, or vice versa. AIG and its shareholders each suffered distinct injuries, and the allocation of damages for these injuries will be based on data disclosed during discovery and expert testimony. In any event, the allocation of damages between AIG and the shareholders does not bear on the Government's liability, which must be established first. *See In re RasterOps Corp. Sec. Litig.*, 1993 WL 476651, at *8 (certifying the class where "defendants perceive a potential conflict at the remedy stages of each litigation" because the conflict argument improperly "presupposes that liability is first resolved in plaintiffs' favor in both the class action and derivative suits, and that funds from the derivative action are diverted to the class action plaintiffs to the detriment of the present shareholders"); *Bertozzi*, 420 F. Supp. at 1180 ("'only a conflict that goes to the very subject matter of the litigation will defeat a party's claim of representative status.'" (quoting 7A Fed. Prac. & Proc. Civ. § 1768 (3d ed.))). Thus, dual representation will greatly enhance efficiency, and it does not create any conflicts.

### 3. Class Conflicts

There are no "conflicting, competing, or antagonistic interests as between" Starr and the proposed classes. *See Singleton*, 92 Fed. Cl. at 86. Class members have a united interest in establishing the factual and legal basis of their claims, and there is no basis by which "the putative class members have interests that would put them at odds with one another." *Geneva*

*Rock*, 100 Fed. Cl. at 790. "'To the contrary, the interests of the named plaintiffs and the proposed class members are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same governmental actions.'" *Id.* (quoting *Haggart*, 89 Fed. Cl. at 535).[6] Within each class, the members have identical interests, and all stand to similarly benefit from proving the identical theory of liability. Starr, as the largest AIG shareholder, will recover in direct proportion to all other class members and possesses a strong incentive to secure the highest recovery possible.

Similarly, each of the proposed classes addresses different expropriations at distinct time periods and thus there is no conflict between the classes. The Credit Agreement Class addresses the economic and voting right expropriation arising from the 79.9% equity interest obtained by the Government through the commitment of Series C Preferred Shares in the September 22, 2008 Credit Agreement. *See* July 2 Order at 22-23. The Stock Split Class addresses the economic and voting right expropriation resulting from the circumvention of the Common Stock shareholders' independent voting right to preclude "anyone from diluting the pool of common stock" and to prevent conversion of the Series C Preferred Shares to Common Stock. *Id.* at 22.

Thus, conflicts will not arise and certification is proper.

**E. Superiority**

A class action is superior to any other method of adjudicating this action because it will "achieve economies of time, effort, and expense, and promote the uniformity of decision as to

---

[6] Indeed, as a general matter, it is unlikely that class members in an opt-in class will have antagonistic interests. This is because "only those individuals who affirmatively choose to join the class are bound by the outcome"—the existence of the class action will not determine the rights of or preclude recovery by non-class members. *Gross*, 106 Fed. Cl. at 381. Thus, any prospective plaintiffs who believe that their interests diverge from those of the class representative or other class members may simply choose not to opt-in, thereby avoiding any potential conflict. *Jaynes v. United States*, No. 04-856C, 2005 WL 6112634, *7 (Fed. Cl. Aug. 19, 2005) (rejecting the notion of class conflict because only "those class members wishing to pursue their claims will opt-in. Having considered the parties' arguments as discussed above, there does not appear to be any conflict of interest sufficient to bar adequate representation by the named plaintiffs.").

persons similarly situated." *Bigelow Trust*, 97 Fed. Cl. at 678; *see also Singleton*, 92 Fed. Cl. at 86; *Toscano*, 98 Fed. Cl. at 156 (quoting *Barnes*, 68 Fed. Cl. at 499). "Litigating all putative class members' claims in one action will achieve economies of scale in time, effort and expense because '[a]ll plaintiffs are affected by the same'" government action, "'the defenses the government will likely use in response to plaintiffs' claims should be identical, and the law which the court will apply to resolve plaintiffs' claims should also be identical.'" *Bigelow Trust*, 97 Fed. Cl. at 678 (quoting *Singleton*, 92 Fed. Cl. at 86) (alteration in original).

Cases, such as this one, involving uniform claims advanced on behalf of the shareholders of large publicly traded companies "'easily satisfy the superiority requirement'" because the conduct at issue inflicts "'economic injury on large numbers of geographically dispersed persons such that the cost of pursuing individual litigation to seek recovery is often not feasible.'" *In re Monster Worldwide, Inc. Sec. Litig.*, 251 F.R.D. 132, 139 (S.D.N.Y. 2008) (citation omitted). Here, there are tens of thousands of geographically dispersed prospective class members, many of whom have relatively small claims, who will almost certainly not be able to pursue a claim on their own. *See* Rausser Report ¶¶ 17-18. Thus, a class action is not only a "superior" method of adjudication; it may be the only method of adjudication for the vast majority of class members.

Notably, because this case does not differ materially in size, scope, or complexity from a traditional securities class action, it is equally as manageable as those cases. As with securities class actions, the only manageability difficulty that the court might anticipate is the difficulty "inherent in any hard fought battle where substantial sums are at issue and all active parties are represented by able counsel." *Pub. Employees' Ret. Sys. of Miss. v. Merrill Lynch & Co., Inc.*, 277 F.R.D. 97, 121 (S.D.N.Y. 2011) (citation and quotations omitted).

In light of these considerations, the class action procedure is a superior means of addressing the uniform claims of shareholders.

## CONCLUSION

Because Starr and the rest of the proposed class members have satisfied the requirements for class certification under RCFC 23(a) and (b), the undersigned respectfully request that the Court: (a) certify the two proposed classes and allow Plaintiff to proceed as a representative of the classes to seek compensation from the United States for the taking of their property without just compensation and the illegal exaction of their property in contravention of the Fifth Amendment of the United States Constitution; and (b) appoint Boies, Schiller & Flexner LLP and Skadden, Arps, Slate, Meagher & Flom, LLP  as counsel for the class.

Dated:  December 3, 2012
              New York, New York


BOIES, SCHILLER & FLEXNER LLP


By        s/ David Boies
              David Boies
              Attorney of Record
              333 Main Street
              Armonk, NY 10504
              Tel. (914) 749-8200
              Fax (914) 749-8300
              Email: dboies@bsfllp.com

              Robert J. Dwyer
              Julia C. Hamilton
              Luke Thara
              575 Lexington Avenue
              New York, NY 10022
              Telephone:  (212) 446-2300

              Hamish P. M. Hume
              Samuel C. Kaplan
              5301 Wisconsin Avenue, NW

Washington, DC 20015
Telephone: (202) 237-2727

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

John L. Gardiner
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000

*Attorneys for Plaintiff Starr International Company, Inc.*