# In the United States Court of Federal Claims

No. 11-779C

(Filed:  March 11, 2013)

|  |  |  |
|---|---|---|
| ****************************************** | * | |
| | * | |
| STARR INTERNATIONAL COMPANY, INC., on its behalf and on behalf of a class of others similarly situated, | * | |
| | * | |
| | * | |
| | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Fifth Amendment and Illegal Exaction |
| THE UNITED STATES, | * | Claims;  Certification of Class Action |
| | * | Under Rule 23 of the Court of Federal |
| Defendant, | * | Claims; Appointment of Class Counsel. |
| | * | |
| And | * | |
| | * | |
| AMERICAN INTERNATIONAL GROUP, INC., | * | |
| | * | |
| | * | |
| Nominal Defendant. | * | |
| | * | |
| ****************************************** | * | |

*David Boies*, with whom were *Robert J. Dwyer, Julia C. Hamilton, Luke Thara, Hamish P. M. Hume*, and *Samuel C. Kaplan*, Boies, Schiller & Flexner LLP, Armonk, New York, and *John L. Gardiner*, Skadden, Arps, Slate, Meagher & Flom LLP, New York, New York, for Plaintiff, Starr International Company, Inc.

*Brian A. Mizoguchi*, Senior Trial Counsel, with whom were *Joyce R. Branda*, Deputy Assistant Attorney General, *Jeanne E. Davidson*, Director, *John J. Todor*, Senior Trial Counsel, *Renee A. Gerber*, and *David S. Silverbrand,* Trial Attorneys, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant.

*Joseph S. Allerhand, Stephen A. Radin*, and *Jamie L. Hoxie*, Weil, Gotshal & Manges LLP, New York, New York, for Nominal Defendant, American International Group, Inc.

OPINION AND ORDER
REGARDING CLASS CERTIFICATION

WHEELER, Judge.

Before the Court is the motion of plaintiff Starr International Company, Inc. ("Starr") to certify two classes and appoint class counsel pursuant to Rule 23 of the Rules of the United States Court of Federal Claims ("RCFC").  In its initial and amended complaints, Starr alleged that through the actions of (1) the imposition of the Credit Agreement on September 22, 2008 by which the Government obtained a 79.9% equity interest in American International Group, Inc. ("AIG"), and (2) the reverse stock split on June 30, 2009 by which shareholders were denied a separate vote, the Government effected a taking or illegal exaction of the property of shareholders in violation of the Fifth Amendment of the U.S. Constitution.  In a prior opinion and order on the Government's motion to dismiss, the Court determined that Starr had sufficiently pled these two events as government actions allegedly requiring just compensation, although the Court made no determination as to the merits of such claims.  Starr Int'l Co. v. United States, 106 Fed. Cl. 50, 69 (2012).

On December 3, 2012, Starr filed a motion for class certification and appointment of class counsel, with an accompanying memorandum.  In its motion and memorandum, Starr proposed two classes, one for each of these government actions, that consist of the named plaintiff and other similarly situated individuals or entities whose property was allegedly expropriated.  On February 1, 2013, the Government opposed this motion, arguing that Starr had not satisfied all of the requirements of Rule 23, namely, those of typicality, commonality, and adequacy.  Starr replied on February 11, 2013.  Both parties submitted expert reports as attachments to their memoranda, those of Dr. Gordon Rausser for the plaintiff and Dr. Lucy Allen for the defendant.  See Mem. Attach. 1; Opp'n Ex. 1.  After careful review, and for the reasons set forth below, plaintiff's motion to certify the classes and appoint class counsel is GRANTED.

Discussion

Class action suits in the Court of Federal Claims are governed by Rule 23.  Under this rule, a member of a class may sue as a representative party on behalf of other members only if the following prerequisites are met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

> (4) the representative parties will fairly and adequately protect the interests of the class.

RCFC 23(a).  Additionally, for the class action to be maintainable, the Court must find that "the United States has acted or refused to act on grounds generally applicable to the class," common questions of law and fact predominate, and a class action is superior to other methods for adjudication of the controversy.  RCFC 23(b); Singleton v. United States, 92 Fed. Cl. 78, 82 (2010).  The criteria for certifying a class action have been distilled to five requirements: numerosity, commonality, typicality, adequacy, and superiority.  Barnes v. United States, 68 Fed. Cl. 492, 494 (2005).  The party seeking class certification must satisfy each of these requirements by a preponderance of the evidence.  Geneva Rock Prods., Inc. v. United States, 100 Fed. Cl. 778, 782 (2011) (citing Filosa v. United States, 70 Fed. Cl. 609, 615 (2006)).  In the interests of judicial economy and efficiency, however, courts construe the requirements of Rule 23 liberally, "or at least not narrowly," in favor of class certification.  Barnes, 68 Fed. Cl. at 502; see also, e.g., Geneva Rock, 100 Fed. Cl. at 782; Singleton, 92 Fed. Cl. at 82.  This approach is consistent with the general principal that "class actions are not 'disfavored' in the United States Court of Federal Claims."  Adams v. United States, 93 Fed. Cl. 563, 574 (2010); see also Barnes, 68 Fed. Cl. at 502 ("If the proposition that class actions are 'disfavored' ever was valid, it certainly is no longer so.").

Here, Starr proposes certification of two classes: (1) the "Credit Agreement Class;" and (2) the "Stock Split Class."  Mot. 2-3; Mem. 3.[1]  The Credit Agreement Class is comprised of the following:

> All persons or entities who held shares of AIG Common Stock on or before September 16, 2008 and who owned those shares as of September 22, 2008 . . . , excluding Defendant, any directors, officers, political appointees, and affiliates thereof, as well as members of the immediate families of Jill M. Considine, Chester B. Feldberg, Douglas L. Foshee, and Peter A Langerman.

Mem. 3.  The second proposed class, that of the Stock Split Class, is defined as follows:

---

[1] As the Government points out, Starr presented more precise definitions of these two classes in its supporting memorandum than in its motion for class certification.  Opp'n 3 n.1; compare Mot. 2-3, with Mem. 3.  Like the Government, the Court presumes that Starr intended the more precise definition of the classes set forth in its memorandum.

> All persons or entities who owned shares of AIG Common
> Stock on June 30, 2009 and were eligible to vote those shares
> at the annual shareholder meeting held on that date . . . ,
> excluding Defendant, any directors, officers, political
> appointees, and affiliates thereof, as well as members of the
> immediate families of Jill M. Considine, Chester B. Feldberg,
> Douglas L. Foshee, and Peter A. Langerman.

Id.  Starr asserts that each of these classes represents "a defined, cohesive group of shareholders with identical claims and interests arising from actions of the Government 'generally applicable to the class.'" Id. (citing RCFC 23(b)(2)).  The Government does not contest numerosity.  Opp'n 7.  The Court will address the contested requirements of Rule 23 in more detail below.

## I.    Commonality

The requirement of commonality consists of three sub-elements derived from Rule 23: "(1) whether 'there are questions of law or fact common to the class,' RCFC 23(a)(2); (2) whether 'the United States has acted or refused to act on grounds generally applicable to the class,' RCFC 23(b)(2); and (3) whether those common questions 'predominate over any questions affecting only individual members,' RCFC 23(b)(3)." Geneva Rock, 100 Fed. Cl. at 788 (quoting Haggart v. United States, 89 Fed. Cl. 523, 532 (2009)). "Individual class members need not be identically situated to warrant a finding of commonality," id., but "[t]heir claims must depend upon a common contention," Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2551 (2011).  This common contention "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Id.  Class-wide factual or legal questions predominate over specific, individual, issues of class members if resolution of the former can be achieved through generalized proof and are more substantial than specific, individualized issues. See Geneva Rock, 100 Fed. Cl. at 789 (citing Barnes, 68 Fed. Cl. at 496).  The threshold for proving commonality is "not high." King v. United States, 84 Fed. Cl. 120, 125 (2009) (citing Jenkins v. Raymark Indus., 782 F.2d 468, 472 (5th Cir. 1986)).

Applying these principles, and for the reasons explained below, the Court finds that the commonality requirement for both classes is met.  Here, the claims of the members within each putative class are based on the same exact government action, either the Credit Agreement or the reverse stock split.  This unifying nexus of the claims makes the issue justiciable, unlike in Wal-Mart, where "respondents wish[ed] to sue about literally millions of employment decisions at once." 131 S. Ct. at 2552.  If the government action relevant to each proposed class did constitute a taking or illegal

exaction, "then the putative class members will be owed just compensation regardless of the specific property interest they held [at the time]." Geneva Rock, 100 Fed. Cl. at 789.

Here, the putative Credit Agreement Class alleges that the Government's acquisition of 79.9% equity interest in AIG constituted an illegal exaction or a taking without just compensation. As the Court found in its opinion and order on the Government's motion to dismiss, Starr had sufficiently identified that "the imposition of the Credit Agreement on September 22, 2008" was a government action allegedly requiring compensation. Starr Int'l, 106 Fed. Cl. at 69. The Credit Agreement affected all putative members, and the acquisition of 79.9% of equity interest in AIG "is the wellspring of all the putative class members' claims." Geneva Rock, 100 Fed. Cl. at 789 (finding that the government's issuance of a Notification of Interim Trail Use was a single act that affected all putative class members); Singleton, 92 Fed. Cl. at 84 (same). Thus, the Government acted on grounds applicable to the entire class.

Moreover, the resolution of the Credit Agreement issue will affect all putative class members. Thus, the putative class shares a common question of law or fact. See Geneva Rock, 100 Fed. Cl. at 789 ("A class shares a common question of law or fact when there is at least one issue whose resolution will affect all or a significant number of the putative class members.") (internal citation omitted); Fisher v. United States, 69 Fed. Cl. 193, 199 (2006) ("The requirement for a common question of law is satisfied when there is one core common legal question that is likely to have one common defense."); cf. Wal-Mart, 131 S. Ct. at 2552 ("Without some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was I disfavored*.").

Finally, the determination of whether the Credit Agreement was a taking or an illegal exaction predominates over any individual variations within the class, as its resolution will not require individualized proof. All members of the putative class share the same core legal question of whether the Credit Agreement was a government action requiring just compensation, and resolution of this question can be achieved through generalized proof. See Douglas R. Bigelow Trust v. United States, 97 Fed. Cl. 674, 678 (2011) (finding commonality satisfied where "all plaintiffs share the same core legal question: did a Fifth Amendment taking occur"). If successful, the members of the putative class will likely receive different damages based on their proportionate shareholdings at the relevant time period. See Mem. Attach. 1 at ¶ 11 (Rausser Decl.). However, "[t]he fact that the eventual award 'will ultimately require individualized fact determinations is insufficient, by itself' to defeat a class action." King, 84 Fed. Cl. at 126 (citing Curry v. United States, 81 Fed. Cl. 328, 334 (2008)).

Similar to the Credit Agreement issue, the members of the putative Stock Split Class share the core legal question of whether the reverse stock split constituted a taking

or an illegal exaction without just compensation of the "equity and voting power associated with the Plaintiffs' shares of common stock." Starr Int'l, 106 Fed. Cl. at 75. The reverse stock split on June 30, 2009 is the "wellspring" of the putative class members' claims. Geneva Rock, 100 Fed. Cl. at 789. This single act of the Government is applicable to all those persons or entities owning shares of AIG common stock on that day. The resolution of whether the reverse stock split constituted a government action requiring just compensation will affect all putative class members, and thus, the class shares common questions of law and fact. Id.

These common questions predominate over issues specific to individual members of the putative class. Starr alleges that "[t]he taking that occurred was the right to a separate class vote," a vote that each individual shareholder, and putative class member, was entitled to by right. Reply 5. How the individual shareholders voted, and whether or not they voted, is irrelevant to Starr's allegation that the putative class members were entitled to a separate, independent vote. Therefore, the Government's argument that shareholders who voted differently or did not vote are not similarly situated is without merit. Whether the members were entitled to such a vote, and whether the reverse stock split was a government action that denied them of that right without just compensation, can be resolved through generalized proof applicable to the entire class. Accordingly, the requirement of commonality is met for both classes.

II.     Typicality

Typicality is intertwined with commonality, and the analysis of these two requirements "tends to merge." Barnes, 68 Fed. Cl. at 498. To establish typicality, "[t]he named plaintiff need only show that its 'claims share the same essential characteristics as the claims of the class at large.'" Geneva Rock, 100 Fed. Cl. at 790 (quoting Curry, 81 Fed. Cl. at 335)). "Courts 'have found typicality if the claims or defenses of the representatives and the members of the class stem from a single event or a unitary course of conduct, or if they are based on the same legal or remedial theory.'" King, 84 Fed. Cl. at 126 (quoting 7A Wright et al., Federal Practice and Procedure § 1764, at 270-71)).

Here, Starr's claim shares the same essential characteristics as the claim of the proposed Credit Agreement Class because it is based on the same factual and legal predicates. Both Starr and the putative class members were shareholders of AIG common stock "on or before September 16, 2008 and [] owned those shares as of September 22, 2008[.]" Mem. 3. Starr and the putative class members seek a remedy from the same government action and premised upon a common theory, that the Credit Agreement constituted a taking or an illegal exaction of their property requiring just compensation. Thus, Starr's claim is typical of the class.

Starr's claim that the reverse stock split constituted a taking or an illegal exaction of its voting rights is also typical of the claim of the Stock Split Class. Both Starr and the

putative class members were "persons or entities who owned shares of AIG Common Stock on June 30, 2009 and were eligible to vote those shares at the annual shareholder meeting held on that date[.]"  Id.  Both Starr and the putative class members seek just compensation from the same government action premised upon a common theory.  The typicality requirement, therefore, has been met for both classes.

III.    Adequacy

In determining whether the adequacy requirement is met, "courts first consider the adequacy of class counsel and, second, ensure that class members do not 'have interests that are antagonistic to one another.'"  King, 84 Fed. Cl. at 127 (citing Barnes, 68 Fed. Cl. at 499)).  Here, the first prong of adequacy of class counsel is not contested, Opp'n  7, and the Court agrees that the proposed class counsel is "qualified, experienced, and generally able to conduct the litigation," Adams, 93 Fed. Cl. at 576.  The inquiry into the second prong of this requirement overlaps significantly with commonality and typicality. Singleton, 92 Fed. Cl. at 85 (citing Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 627 n.20 (1997)).

Here, the interests of the putative class members within their respective classes are not antagonistic to each other.  Rather, the interests of Starr, the named plaintiff, and the proposed class members "are aligned because all plaintiffs would assert the same legal claim, a taking in contravention of the Fifth Amendment, arising out of the same government actions[.]"  Haggart, 89 Fed. Cl. at 535 (finding adequacy requirement met); Geneva Rock, 100 Fed. Cl. at 790 (same).  Within each class, the members have identical interests, proportionate to their shareholdings at the time of the alleged expropriation. Accordingly, the adequacy requirement is met.

The Government posits that Starr cannot adequately represent both classes because there are conflicts within the proposed classes, as well as conflicts between the two different proposed classes.  In arguing that there are conflicts between the two proposed classes, the Government highlights the premise that "the Government can only take the same property once," Opp'n 14, and avers that both classes allege a taking of the same interests, id. at 15.  Starr disagrees with the characterization, and points out that the signing of the Credit Agreement and the reverse stock split were two distinct events that each resulted in a taking of different interests, and recovery for both classes would be proportionate to the amount of shares held at the time of the taking.  Reply 10-11; see also id. at 8 ("[e]ach of the actions taken by the Government had an effect that was shared across all of the common stock on a ratable basis, share for share.") (citing Rausser Dep. at 67-68, 184-85, Jan. 11, 2013).  Starr's proposal of two classes is consistent with the Court's previous findings of sufficient allegations that the Government had conducted two separate actions requiring just compensation: "(1) the imposition of the Credit Agreement on September 22, 2008; [and] (2) the reverse stock split on June 30, 2009[.]"

Starr Int'l, 106 Fed. Cl. at 69.[2]  Just as at the motion to dismiss to stage, the Court makes no determinations as to the merits of Starr's claims at this juncture, but finds Starr to have sufficiently alleged that the interests of the two proposed classes are distinct and nonexclusive, and therefore there is no conflict between the classes.

With regards to the purported conflicts within the class, the Government relies upon the fact that "not all members of each class are only members of that class" to argue that those with larger proportionate holdings in another class prevents the class from being "united in seeking the maximum possible recovery."  Opp'n 15 (citing Amchem, 521 U.S. at 610).  As stated above, the Court does not view the two proposed classes as having interests that are antagonistic to one another.  Therefore, the mere fact that some members within one class may stand to benefit more from their shareholdings in another class does not create a conflict within the individual classes.

The Government further contends that conflicts exist between the direct and derivative claims "such that Starr's counsel should not represent both AIG derivatively and a direct class."  Opp'n 15.  The status of Starr's derivative claims currently is under review by the Court.  In January 2013, AIG rejected Starr's demand under Rule 23 to join in the lawsuit.  Starr is required, by prior order, to clarify whether it intends to pursue its shareholder derivative claims and whether AIG should remain as a party.  See Dkt. No. 99.  Until Starr's position on the derivative claims has been articulated, the Court finds any ruling on potential conflicts between direct and derivative claims to be premature.  If the Court deems it necessary to address this issue at a later date, it will do so.

IV.     Superiority

In order for a case to be maintained as a class action, it must be "superior to other available methods for fairly and efficiently adjudicating the controversy."  RCFC 23(b)(3).  To determine whether superiority is met, courts engage in "a cost/benefit analysis, weighing any potential problems with the manageability or fairness of a class action against the benefits to the system and the individual members likely to be derived from maintaining such action."  Barnes, 68 Fed. Cl. at 499 (citing Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 163-64 (1974); 7A Wright et al., Federal Practice & Procedure § 1780, at 197-98)).

Here, such a cost/benefit analysis tips decidedly in favor of class certification. Litigating the claims of both putative classes in one action "will achieve economies of scale in time, effort and expense," Bigelow, 97 Fed. Cl. at 678, because all plaintiffs

---

[2] During the motion to dismiss stage, the Court also found that Starr had sufficiently identified a third government action requiring just compensation, that of "the Government's use of AIG collateral to purchase certain CDOs from AIG counterparties in November and December of 2008."  Starr Int'l, 106 Fed. Cl. at 69.  As this third government action "is a derivative claim brought on behalf of AIG, not a direct shareholder claim," it is not subject to this class certification motion.  See Mem. 2 n.2.

within each class are affected by the same government action: either the Credit Agreement or the reverse stock split.  Considering the estimation of Plaintiff's counsel that the putative plaintiffs may number more than tens of thousands of geographically dispersed persons, Mem. 6, 15, class certification is by far the most efficient method of adjudicating these claims.  Moreover, "the defenses the government will likely use in response to plaintiffs' claims should be identical, and the law which the court will apply to resolve plaintiffs' claims should also be identical." Singleton, 92 Fed. Cl. at 86.  As addressed above, the differences in individual damages are not determinative of class certification, Geneva Rock, 100 Fed. Cl. at 789, therefore the fact that some class members may recover more than others does not preclude certification.

Although the Government has argued that certain requirements of Rule 23 class certification have not been met, it "has not claimed that the pursuit of a class action here would be less efficient than pursuing the claims represented here in individual or consolidated actions." Bigelow, 97 Fed. Cl. at 678 n.7 (finding superiority satisfied and noting as probative the defendant's failure to argue any efficient alternative to a class action).  Accordingly, the Court finds that the requirement of superiority is met.

<u>Certification</u>

Based on the foregoing, the Court hereby determines that this case may be maintained as a class action and GRANTS plaintiff's motion to certify.  Pursuant to Rule 23(c), the Court "must define the class and the class claims, issues, or defenses, and must appoint class counsel under RCFC 23(g)."  The Court adopts the definitions of the classes as proposed by the named plaintiff:

1. The Credit Agreement Class:  All persons or entities who held shares of AIG Common Stock on or before September 16, 2008 and who owned those shares as of September 22, 2008, excluding Defendant, any directors, officers, political appointees, and affiliates thereof, as well as members of the immediate families of Jill M. Considine, Chester B. Feldberg, Douglas L. Foshee, and Peter A Langerman.

2. The Stock Split Class:  All persons or entities who owned shares of AIG Common Stock on June 30, 2009 and were eligible to vote those shares at the annual shareholder meeting held on that date, excluding Defendant, any directors, officers, political appointees, and affiliates thereof, as well as members of the immediate families of Jill M. Considine, Chester B. Feldberg, Douglas L. Foshee, and Peter A. Langerman.

The Court defines the primary issue for the Credit Agreement Class to be whether the 79.9% equity interest in AIG obtained by the Government constituted an illegal exaction or a taking without just compensation.  The Court defines the primary issue for the Stock Split Class to be whether the reverse stock split on June 30, 2009 constituted an illegal exaction or taking without just compensation.

Rule 83.1 of this Court allows for "only one attorney of record in a case at any one time," who shall be "an attorney (not a firm)."  RCFC 83.1(c)(1).  All other attorneys assisting the attorney of record shall be designated "of counsel" for the class.  Id.  The Court designates David Boies of the firm Boies, Schiller & Flexner, LLP as counsel of record for the classes.  The other attorneys and law firms identified in plaintiff's motion for class certification, to the extent of their participation in this litigation, shall be designated "of counsel" in subsequent filings with the Court.

Conclusion

For the foregoing reasons, plaintiff's motion for class certification is GRANTED.  The Court certifies a class action in this case and appoints David Boies as class counsel.  On or before April 1, 2013, the parties shall file a joint status report proposing a plan to satisfy the notice requirements of Rule 23(c)(2) and addressing further notice proceedings.  Pursuant to Rule 10(a), all subsequent pleadings in this case shall use the caption shown above.

IT IS SO ORDERED.

s/Thomas C. Wheeler
THOMAS C. WHEELER
Judge