IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STARR INTERNATIONAL COMPANY, INC., | ) | |
| on its behalf and on behalf of a class of others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-779C |
| | ) | (Judge Wheeler) |
| UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO CERTIFY THE COURT'S
JUNE 26, 2013 ORDER FOR INTERLOCUTORY APPEAL**

                                                JOYCE R. BRANDA
                                                Deputy Assistant Attorney General

                                                JEANNE E. DAVIDSON
                                                Director

| | |
|---|---|
| OF COUNSEL: | |
| BETH BRINKMANN | BRIAN A. MIZOGUCHI |
| Deputy Assistant Attorney General | Assistant Director |
| DOUGLAS LETTER | SCOTT D. AUSTIN |
| Director | Assistant Director |
| MARK B. STERN | TIMOTHY P. MCILMAIL |
| Senior Litigation Counsel | Senior Trial Counsel |
| MARK R. FREEMAN | AMANDA L. TANTUM |
| JEFFREY E. SANDBERG | BENJAMIN J. ZEITLIN |
| Attorneys | Trial Attorneys |
| Appellate Staff | Commercial Litigation Branch |
| Civil Division | Civil Division |
| | Department of Justice |
| | P.O. Box 480 |
| | Ben Franklin Station |
| | Washington, D.C. 20044 |
| | Tele: (202) 305-3319 |
| | Fax: (202) 514-7644 |
| | Email:brian.mizoguchi@usdoj.gov |
| | |
| | Attorneys for Defendant |

August 16, 2013

# TABLE OF CONTENTS

Page

INTRODUCTION……………………………………………….………………………..1

ARGUMENT………………………………………………………………………….....3

    I.       Standard For Certification Under Section 1292(d)(2)…………………………3

    II.      Certification Under Section 1292(d)(2) Is Warranted……………………………4

            A.      Whether Starr's Remaining Claims Are Direct Or Derivative Is A
Controlling Question Of Law………………………………………………..5

            B.      There Is Substantial Ground for Difference of Opinion………………...…7

            C.      Immediate Appeal Would Materially Advance The Ultimate
Termination Of The Litigation……………………………………..………9

CONCLUSION………………………………………………………………………..11

# TABLE OF AUTHORITIES

## CASES

*Aleut Tribe v. United States*,
　　702 F.2d 1015 (Fed. Cir. 1983)……………………...……………………….……4

*Alley's of Kingsport, Inc. v. United States*,
　　106 Fed. Cl. 762 (2012)……………………………………………………...…..6, 11

*AT&T Co. v. United States*,
　　33 Fed. Cl. 540 (1995)………………………………………………………….....3, 4

*Bailey v. United States*,
　　53 Fed. Cl. 251 (2002)……………………………………………………………….8

*Burt on Behalf of McDonnell Douglas Corp. v. Danforth*,
　　742 F. Supp. 1043 (E.D. Mo. 1990)………………………………………….…..11

*Cain v. United States*,
　　350 F.3d 1309 (Fed. Cir. 2003)…………………………………………………....9

*Colonial Chevrolet Co., Inc. v. United States*,
　　106 Fed. Cl. 619 (2012)………………………………….....……………6, 10

*Coast Fed. Bank FSB v. United States*,
　　49 Fed. Cl. 11 (2001)……………………………………………………………...9

*Ellamae Phillips Co. v. United States*,
　　No. 04-1544L, 2007 U.S. Claims LEXIS 426 (Dec. 21, 2007) (unpublished)…………....3

*Federal Deposit Insurance Corp. v. United States*,
　　342 F.3d 1313 (Fed. Cir. 2003)…………………………………………………....9

*Hermes Consol., Inc. v. United States*, 58 Fed. Cl. 409 (2003),
　　*rev'd on other grounds*, *Tesoro Hawaii Corp. v. United States*,
　　405 F.3d 1339 (Fed. Cir. 2005)……………………………………………………7

*In re J.P. Morgan Chase & Co. Shareholder Litigation*,
　　906 A.2d 808 (Del. Ch. 2005)……………………………………………………..8

*Johnson v. Burken*,
　　930 F.2d 1202 (7th Cir. 1991)……………………………………………………..6

*Johnson v. United States*,
　　49 Fed. Cl. 648 (2001)…………………………………………………………… 8

*Marriott International Resorts, L.P. v. United States*,
 122 F. App'x 490 (Fed. Cir. 2005) (unpublished)……………………………………...6, 7

*Nebraska Public Power District v. United States*,
 74 Fed. Cl. 762 (2006)…………………………………………………………………….4, 5

*Northrop Corp. v. United States*,
 27 Fed. Cl. 795 (1993)……………………………………………………………………….9

*Page v. United States*,
 49 Fed. Cl. 521 (2001)……………………………………………………………………….8

*Starr International Co., Inc. v. United States*,
 106 Fed. Cl. 50 (2012) (*Starr I*)……………………………………………………..…..7, 8

*Starr International Co., Inc. v. United States*, No. 11-779C (Dkt. # 126),
 __ Fed. Cl. __, 2013 WL 3286244 (June 26, 2013) (*Starr IV*)…...…………………..*passim*

*Vereda, Ltda. v. United States*,
 46 Fed. Cl. 569 (2000)…………………………………………………..…………………...6


UNITED STATES CONSTITUTION, STATUTES AND REGULATIONS

U.S. Const. amend. V……………………………………….…………………………*passim*

28 U.S.C. § 1292……………………………………………..…………...……………*passim*

OTHER AUTHORITIES

16 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3930 (2d ed. 1996)….....4

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| STARR INTERNATIONAL COMPANY, INC., on its behalf and on behalf of a class of others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 11-779C (Judge Wheeler) |
| UNITED STATES, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO CERTIFY THE COURT'S
JUNE 26, 2013 ORDER FOR INTERLOCUTORY APPEAL**

For the reasons set forth below, the United States respectfully requests that the Court certify its June 26, 2013 order for interlocutory appeal by amending the order to include the findings required under 28 U.S.C. § 1292(d)(2). Starr opposes this motion.

## INTRODUCTION

The United States respectfully requests that the Court certify for interlocutory appeal under 28 U.S.C. § 1292(d)(2) the question whether Starr may assert its takings and illegal exaction claims as direct shareholder claims under Delaware law and the United States Constitution, or whether instead those claims are exclusively derivative in nature.

We recognize that the Court has resolved that threshold question against the Government. Before the parties and the Court dedicate extraordinary time and resources to conducting a trial on multi-billion dollar legal claims on that basis, however, the Court should permit the United States Court of Appeals for the Federal Circuit the opportunity to consider the same question. Particularly in the wake of this Court's June 26, 2013 order dismissing Starr's derivative claims, there is little doubt that Starr's standing to assert direct claims against the United States under the Fifth Amendment represents precisely the sort of dispositive legal question for which Congress

enacted Section 1292(d). It is a controlling question of law; there is substantial ground for difference of opinion; and an immediate appeal on the question would materially advance the ultimate termination of the litigation. *See* 28 U.S.C. § 1292(d)(2). By certifying the question for interlocutory appeal, the Court would signal to the parties, the Federal Circuit, and the public that the Court is committed to finding the most expedient possible resolution of this important case.

Indeed, although Starr has informed us that it will oppose this motion, it is unclear on what legitimate basis Starr opposes prompt appellate review of the question whether its remaining claims may proceed on a direct basis. No party will be prejudiced by resolving in advance whether a complex and expensive trial on Starr's claims will be necessary. Starr will have a full and fair opportunity to explain its corporate overpayment theory to the court of appeals, and it will have the benefit of this Court's written decisions in doing so. If the Federal Circuit reverses, this Court's certification decision will have vindicated the public interest by avoiding an unnecessary trial at public expense. And if the Federal Circuit affirms, the path forward will be clear: by certifying the interlocutory appeal, the Court will have obtained confirmation of its legal rulings on the Government's dispositive motions, clarified the scope of the claims going forward, and cleared the way for a resolution on the merits. Either outcome is preferable to risking an appellate reversal after months or years of potentially unnecessary effort by the parties and the Court.

For the reasons stated above and explained in more detail below, this case exemplifies the circumstances in which certification under Section 1292(d)(2) is appropriate. But even if the Court has doubts on that score, it is appropriate to grant certification and allow the Federal Circuit to decide for itself whether an immediate interlocutory appeal is warranted. If the Court grants certification, Starr and the Government alike will have the opportunity to present their

arguments to the court of appeals, which may then exercise its discretion to accept or decline the appeal. *See* 28 U.S.C. § 1292(d)(2). Given the importance of the question presented and the size and subject of Starr's claims, there is no reason to deny the court of appeals the opportunity at least to consider that question.

## ARGUMENT

I. **Standard For Certification Under Section 1292(d)(2)**

Section 1292(d) of Title 28 authorizes this Court to certify an order for immediate interlocutory review by the Federal Circuit. The court of appeals may then exercise its discretion whether to accept the appeal. In relevant part, Section 1292(d)(2) provides:

> [W]hen any judge of the United States Court of Federal Claims, in issuing an interlocutory order, includes in the order a statement that a controlling question of law is involved with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from that order may materially advance the ultimate termination of the litigation, the United States Court of Appeals for the Federal Circuit may, in its discretion, permit an appeal to be taken from such order, if application is made to that Court within ten days after the entry of such order.

28 U.S.C. § 1292(d)(2). Accordingly, this Court may certify its June 26 order for interlocutory review by the court of appeals by amending the order to state expressly that (1) the order involves "a controlling question of law"; (2) "with respect to which there is a substantial ground for difference of opinion"; and (3) "an immediate appeal from that order may materially advance the ultimate termination of the litigation." *Id.*

This Court has explained that "courts generally treat [the three elements for interlocutory appeal] as a unitary requirement." *Ellamae Phillips Co. v. United States*, No. 04-1544L, 2007 U.S. Claims LEXIS 426, at *7 (Dec. 21, 2007) (unpublished). "Thus the three factors should be viewed together as the statutory language equivalent of a direction to consider the probable gains and losses of an immediate appeal." *AT&T Co. v. United States*, 33 Fed. Cl. 540,

3

541 (1995) (internal citation omitted); *see also Aleut Tribe v. United States*, 702 F.2d 1015, 1019 (Fed. Cir. 1983). Whether to grant certification is entrusted to the discretion of the Court. *Nebraska Public Power Dist. v. United States*, 74 Fed. Cl. 762, 763 (2006).

Accordingly, this Court has certified a question for interlocutory appeal upon determination that "much can be gained by having the court of appeals address the controlling questions . . . on an interlocutory basis rather than at the conclusion of what could otherwise prove to be a much protracted lawsuit." *AT&T*, 33 Fed. Cl. at 541; *see also Nebraska Public Power*, 74 Fed. Cl. at 763 (certification can "avoid unnecessary delay and expense") (citing legislative history of section 1292(d)). The Court also may consider factors such as "[t]he difficulty and general importance of the question presented, the probability of reversal, the significance of the gains from reversal, and the hardship on the parties in their particular circumstances." 16 C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3930, at 442 (2d ed. 1996).

## II. Certification Under Section 1292(d)(2) Is Warranted

The United States respectfully requests that the Court certify its June 26 order for immediate interlocutory review of the following question: whether Starr may assert its takings and illegal exaction claims as direct shareholder claims under Delaware law and the Constitution, or whether instead those claims are exclusively derivative in nature. As we explain below, that question controls the remainder of this litigation; the Court has already recognized that there is substantial ground for difference of opinion on the matter; and an immediate appeal would materially advance the ultimate termination of the case. Certification is therefore warranted.

### A. Whether Starr's Remaining Claims Are Direct Or Derivative Is A Controlling Question Of Law

First, whether Starr's takings and illegal exactions claims are direct or derivative is plainly a "controlling question of law" in this case. Indeed, every remaining ruling the Court will enter in this litigation – and the extensive discovery, pre-trial motions, and trial preparation the parties will undertake in anticipation of those decisions – will ultimately rest on the premise that Starr may assert direct claims against the United States under the Fifth Amendment. It is difficult to imagine a question more suitable for interlocutory review under Section 1292(d)(2). *See Nebraska Public Power*, 74 Fed. Cl. at 763 ("Questions of law are 'controlling' when they 'materially affect issues remaining to be decided in the trial court.'") (quotation omitted).

This Court's June 26 order crystallized the importance of the question. In a comprehensive opinion, the Court analyzed whether Starr may overcome the business judgment rule and assert derivative claims against the United States on behalf of American International Group, Inc. (AIG). After weighing and rejecting Starr's myriad challenges to the process by which the AIG board of directors considered Starr's demand, the Court found that AIG's board acted in "an informed, transparent, rational, and exemplary fashion" in rejecting Starr's demand that the corporation sue the United States. *Starr Int'l Co., Inc. v. United States*, No. 11-779C (Dkt. # 126), __ Fed. Cl. __, 2013 WL 3286244, at *17 (June 26, 2013) (*Starr IV*). Accordingly, the Court declared that "[t]he Board's decision to refuse Starr's demand is entitled to the presumption of the business judgment rule, and will not be disturbed by this Court." *Id.*

Starr's ability to proceed with this litigation therefore rises and falls on the premise that Delaware courts would treat Starr's remaining claims as direct rather than derivative in nature. If those claims are direct, as this Court has concluded, the "informed, transparent, rational, and exemplary" rejection of Starr's demand by the AIG board of directors, *Starr IV*, 2013 WL

5

3286244, at *17, does not foreclose Starr from litigating its takings and illegal exaction claims against the United States. But if those claims properly belong to the corporation, as the United States has argued, then this Court's June 26 order refusing to disturb the business judgment of the AIG board effectively resolves the litigation.[1] That is the epitome of a controlling question of law. *See, e.g.*, *Vereda, Ltda. v. United States*, 46 Fed. Cl. 569, 570 (2000).

It is also a question of substantial public importance, given the many actual and prospective claimants who may seek damages from the United States on a similar theory if this Court's ruling is correct. In fact, the Court has recognized the urgency of a final resolution of questions – like those raised here – related to the applicability of takings theories to Government assistance to failing institutions and has certified such issues for interlocutory appeal. *Colonial Chevrolet Co., Inc. v. United States*, 106 Fed. Cl. 619, 621 (2012); *Alley's of Kingsport, Inc. v. United States*, 106 Fed. Cl. 762, 763 (2012). By holding that AIG shareholders such as Starr have standing to assert direct claims against the United States under the Fifth Amendment based on alleged diminution in the value and voting power of their shares, the Court's decision expands the universe of shareholder plaintiffs who have standing to seek relief from the Treasury based on alleged injuries to a corporation. Following this Court's rulings, several large class actions have been filed by shareholders of Fannie Mae and Freddie Mac asserting direct claims for diminution in value of their investments based upon the Government's rescue of those

---

[1] Although a ruling on the certified question may not directly dispose of Starr's claim related to the June 2009 reverse stock split, that claim is likely untenable in the absence of a viable claim concerning the September 2008 rescue, *cf. Marriott Int'l Resorts, L.P. v. United States*, 122 F. App'x 490, 491-92 (Fed. Cir. 2005) (unpublished) (accepting certification where, "although disposition of the issue would not dispose of the litigation . . . review of the issue might simplify the litigation"), and in any event is a minor part of this litigation – limited in its temporal scope, its substantive scope, and in the scope of potential damages, *cf. Johnson v. Burken*, 930 F.2d 1202, 1205-06 (7th Cir. 1991) (Posner, J.) ("Controlling . . . means serious to the conduct of the litigation, either practically or legally. . . . [A] question is controlling, even though its decision might not lead to reversal on appeal, if interlocutory reversal might save time for the district court, and time and expense for the litigants.") (quotations omitted).

enterprises.[2] This Court has recognized that one factor favoring certification of a question for interlocutory appeal under Section 1292(d)(2) is whether appellate review would have precedential value in a large number of cases. *Hermes Consol., Inc. v. United States*, 58 Fed. Cl. 409, 419-20 (2003), *rev'd on other grounds*, *Tesoro Hawaii Corp. v. United States*, 405 F.3d 1339 (Fed. Cir. 2005); *Marriott Int'l Resorts*, 122 F. App'x at 491. By that guidepost as well, certification is warranted here.

### B. There Is Substantial Ground for Difference of Opinion

There is also substantial ground for difference of opinion regarding the proper characterization of Starr's claims. In a series of opinions, this Court has concluded that Starr may proceed directly against the United States under a variant of the "controlling shareholder" exception recognized by Delaware law, notwithstanding that (1) the United States was not a shareholder in AIG at the time the alleged dilution occurred, and (2) the alleged injury was shared by all AIG shareholders on a *pro rata* basis. *See Starr Int'l Co., Inc. v. United States*, 106 Fed. Cl. 50, 64-65 (2012) (*Starr I*); *Starr IV*, 2013 WL 3286244, at *18-*19. But this Court's opinions have also candidly recognized that the characterization of Starr's claims under Delaware law is not free from doubt. The Court has acknowledged that Delaware law normally treats "corporate overpayment" claims of the type alleged in Starr's complaint as "exclusively derivative." *Starr I*, 106 Fed. Cl. at 62. And the Court has recognized that the "controlling shareholder" exception on which Starr relies rests on a handful of Delaware authorities that involved "circumstances . . . distinguishable from those here." *Id.* at 65.

---

[2] *See Washington Federal et al. v. United States*, No. 1:13-CV-385-MMS (Fed. Cl.) (filed June 10, 2013); *Cacciapelle et al. v. United States*, No. 1:13-CV-466-MMS (Fed. Cl.) (filed July 10, 2013); *American European Ins. Co. v. United States*, No. 1:13-CV-496-MMS (Fed. Cl.) (filed July 19, 2013); *Dennis v. United States*, No. 1:13-CV-542-MMS (Fed. Cl.) (filed Aug. 5, 2013); *see also Fairholme Funds, Inc. et al. v. United States*, No. 1:13-CV-465-MMS (Fed. Cl.) (filed July 9, 2013) (raising similar claims on behalf of 12 investment and insurance company shareholders).

Indeed, neither the parties nor the Court has identified any previous case involving a takings claim or an illegal exaction claim that was allowed to proceed under a similar theory of Delaware law. To the contrary, this Court has generally held that shareholders *lack* standing to assert takings claims on behalf of the corporations in which they have invested. *See*, *e.g.*, *Bailey v. United States*, 53 Fed. Cl. 251, 257 (2002) (no standing for shareholder to assert direct takings claim); *Page v. United States*, 49 Fed. Cl. 521, 528 (2001) (same); *cf. Johnson v. United States*, 49 Fed. Cl. 648, 651 (2001). Nor has either party or the Court identified an instance in which Delaware courts applied the "controlling shareholder" exception in circumstances in which the alleged wrongdoer was not, in fact, a controlling shareholder (or a shareholder at all) at the time of the alleged dilution. *Cf. In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808, 818 (Del. Ch. 2005) ("controlling shareholder" exception applies only where the party allegedly responsible for the dilution was itself a controlling shareholder when the dilution occurred). The Court's holding – that Starr had standing to assert a direct claim, notwithstanding *J.P. Morgan Chase* and the Court's own recognition that, "even under Starr's rendition of the facts, the Government was not a stockholder when the initial dilution purportedly occurred," *Starr I*, 106 Fed. Cl. at 65 – thus breaks new legal ground. *Starr IV*, 2013 WL 3286244, at *18-*19. Whatever its merits, there is no serious dispute that the viability of this theory of direct liability is a matter of first impression in this Court and the Federal Circuit – precisely the sort of question for which Congress created the certified-question procedure in Section 1292(d)(2).

Likewise, this Court's conclusion that the Fifth Amendment imposes duties on the Government "sufficiently analogous" to the fiduciary obligations of majority shareholders under Delaware law to warrant applying the "controlling shareholder" exception in these circumstances, *Starr I*, 106 Fed Cl. at 65, is a matter of first impression in this Court and the

8

Federal Circuit.  The implication of that holding appears to be that the United States may owe compensation under the Constitution directly to corporate shareholders when the corporation makes an overpayment to the Government that diminishes the value of their shares, even where the United States was not itself a shareholder in the corporation and even when the corporation's board determines in the good-faith exercise of its business judgment that a claim against the government is unwarranted.  The Court cited no case law from the Federal Circuit or any other court in support of that proposition, which does not fit within any theory of takings liability previously recognized by the Federal Circuit.  *Cf., e.g.*, *Cain v. United States*, 350 F.3d 1309, 1315 (Fed. Cir. 2003) (Government exercise of a regulatory authority – such as authorizing a financial institution's regulatory treatment – does not extend to the institution's shareholders any contractual right); *Fed. Deposit Ins. Corp. v. United States*, 342 F.3d 1313, 1319 (Fed. Cir. 2003) (same).  Again, whatever the merits, there is clearly substantial ground for difference of opinion on the question.

### C. Immediate Appeal Would Materially Advance The Ultimate Termination Of The Litigation

Finally, it would materially advance the ultimate termination of this litigation to obtain a ruling from the Federal Circuit on the proper characterization of Starr's takings and illegal exaction claims.  Whether an interlocutory appeal will materially advance the litigation's completion "depends in large part on considerations of 'judicial economy' and the need to avoid unnecessary delay and expense' and 'piecemeal litigation.'"  *Coast Fed. Bank FSB v. United States*, 49 Fed. Cl. 11, 14 (2001) (quoting *Northrop Corp. v. United States,* 27 Fed. Cl. 795, 800-01 (1993)).  Here, immediate interlocutory appeal would permit the parties and the Court to obtain an authoritative determination of the legal viability of Starr's multi-billion dollar claims before embarking on the time-consuming and expensive process of litigating those claims to

9

judgment. If the Federal Circuit reverses, this Court's certification decision will have aided the parties and the Court by avoiding the expense and delay of an unnecessary trial. If the Federal Circuit affirms, by contrast, the path forward will be clear: by certifying the interlocutory appeal, the Court will have obtained confirmation of its legal rulings on the Government's dispositive motions, clarified the scope of the claims going forward, and cleared the way for a resolution on the merits. Either outcome is preferable to risking an appellate reversal after months or years of unnecessary effort, expense, and inconvenience to the parties, class members, the Court, as well as the many third-party witnesses whose testimony may be needed at trial. *See Colonial Chevrolet*, 106 Fed. Cl. at 621 ("Should the Appeals Court agree with the Government that plaintiffs have not presented sufficient legal arguments to support their unique takings theory, an appellate decision on point could preempt broad discovery by large numbers of plaintiffs.").

Indeed, an immediate interlocutory appeal is particularly appropriate in this case because Starr intends to depose, and will likely seek to examine at trial, current and former officials from the highest levels of the Federal Government. As the Court is aware, the parties' dispute over Starr's intent to depose the Chairman of the Board of Governors of the Federal Reserve System has already resulted in extensive ancillary litigation; indeed, we anticipate a petition for a writ of mandamus in the Federal Circuit will be filed on or about the same day as this motion. Additional disputes over the testimony of such high-level Government officials, including related privilege claims, are not difficult to foresee. Certification under Section 1292(d)(2) provides a useful mechanism for the Court to pretermit unnecessary satellite litigation over such matters by obtaining a prompt appellate resolution of the viability of Starr's remaining claims. *See Colonial Chevrolet*, 106 Fed. Cl. at 621 (basing decision to certify order for interlocutory appeal, in part,

upon plaintiffs' stated desire "to depose many high-level government officials in discovery"); *see also Alley's*, 106 Fed. Cl. at 764 (same); *Burt on Behalf of McDonnell Douglas Corp. v. Danforth*, 742 F. Supp. 1043, 1054 (E.D. Mo. 1990) (noting that interlocutory appeal could prevent "extensive and intrusive discovery demands" related to a district court decision that might be reversed upon appeal).

Nor will any party be prejudiced by certification. Starr does not (and could not) seek any form of provisional or temporary relief in this Court such that an immediate appeal would work an injustice. Starr simply seeks just compensation under the Fifth Amendment, and if Starr ultimately prevails in the litigation, it will be entitled to full compensation, including interest, for the value of its lost property interest. There is, accordingly, no reason for the parties and the Court to undertake months or years of additional litigation and expend millions of dollars in trial preparation without first permitting the Federal Circuit to consider the threshold legal question of whether Starr's claims are direct or derivative.

## **CONCLUSION**

The Court should grant the United States' motion to certify its June 26, 2013 order for interlocutory appeal and amend the order to include the following express finding under 28 U.S.C. § 1292(d)(2):

> The Court finds that this order involves a controlling question of law with respect to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation.

|  | Respectfully submitted, |
|---|---|
|  | JOYCE R. BRANDA<br>Deputy Assistant Attorney General |
|  | /s/ Jeanne E. Davidson<br>JEANNE E. DAVIDSON<br>Director |
| OF COUNSEL:<br>BETH BRINKMANN<br>Deputy Assistant Attorney General<br>DOUGLAS LETTER<br>Director<br>MARK B. STERN<br>Senior Litigation Counsel<br>MARK R. FREEMAN<br>JEFFREY E. SANDBERG<br>Attorneys<br>Appellate Staff<br>Civil Division | /s/ Brian A. Mizoguchi<br>BRIAN A. MIZOGUCHI<br>Assistant Director<br>SCOTT D. AUSTIN<br>Assistant Director<br>TIMOTHY P. MCILMAIL<br>Senior Trial Counsel<br>AMANDA L. TANTUM<br>BENJAMIN J. ZEITLIN<br>Trial Attorneys<br>Commercial Litigation Branch<br>Civil Division<br>Department of Justice<br>P.O. Box 480<br>Ben Franklin Station<br>Washington, D.C. 20044<br>Tele: (202) 305-3319<br>Fax: (202) 514-7644<br>Email:brian.mizoguchi@usdoj.gov |

August 16, 2013