**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

-----------------------------------------------------X

STARR INTERNATIONAL COMPANY,
INC., on its behalf and on behalf of a      :
Class of others similarly situated,

                                :

                Plaintiff,

                                :

       v.

                                :

THE UNITED STATES OF AMERICA,        No. 11-00779C (TCW)

                                :

                Defendant.        Judge Thomas C. Wheeler

                                :

                                :

-----------------------------------------------------X

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY THE
COURT'S JUNE 26, 2013 ORDER FOR INTERLOCUTORY APPEAL**

                              BOIES, SCHILLER & FLEXNER LLP
                              David Boies
                              Attorney of Record

OF COUNSEL:                        333 Main Street
                              Armonk, NY 10504
BOIES, SCHILLER & FLEXNER LLP     Tel. (914) 749-8200
Robert J. Dwyer                    Fax (914) 749-8300
Alanna C. Rutherford             Email: dboies@bsfllp.com
Julia C. Hamilton
Hamish P. M. Hume
Samuel C. Kaplan

                              *Attorneys for Starr International,*
SKADDEN, ARPS, SLATE, MEAGHER    *Company, Inc. and for the Plaintiff Class*
& FLOM LLP
John L. Gardiner

August 30, 2013

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO CERTIFY THE COURT'S JUNE 26, 2013 ORDER FOR INTERLOCUTORY APPEAL**

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

STANDARD OF REVIEW ........................................................................................ 1

ARGUMENT .............................................................................................................. 2

I.   The Government's Motion Is Untimely ............................................................... 2

II.  The Government Has Not Raised An Issue For Which There Is A Substantial
     Ground For Difference of Opinion ..................................................................... 4

III. The Government Has Not Raised A "Controlling Question Of Law" That
     Would Be Dispositive Of The Entire Case At This Stage ................................ 12

     A. An Appeal In This Case Is More Appropriately Addressed And Informed
        Within The Context Of A Complete Fact Record ....................................... 12

     B. The Illegal Exaction Claim Does Not Turn On Whether The Claim Is
        Direct Or Derivative .................................................................................... 14

IV.  Certification Of The Delaware Law Question To The Federal Circuit Will
     Waste Judicial Resources Without Providing An Ultimate Resolution To This
     Case ................................................................................................................... 17

CONCLUSION .......................................................................................................... 20

# TABLE OF AUTHORITIES

## Cases

*120 Delaware Ave., LLC v. United States*,
95 Fed. Cl. 627 (2010) ................................................................................................ 13

*Abbey v. United States*,
89 Fed. Cl. 425 (2009) ................................................................................ 1, 2, 4, 18

*Aerolineas Argentinas v. United States*,
77 F.3d 1564 (Fed. Cir. 1996) ................................................................................ 15

*Alley's of Kingsport, Inc. v. United States*,
103 Fed. Cl. 449 (2012) ...................................................................................... 13, 19

*Am. Capital Corp. v. FDIC*,
472 F.3d 859 (Fed. Cir. 2006) ................................................................................ 15

*Ash Grove Cement Co. v. Liberty Mutual Insurance Co.*,
2011 WL 96679 (D. Or. Jan. 10, 2011) .................................................................. 18

*Bailey v. United States*,
53 Fed. Cl. 251 (2002) .............................................................................................. 10

*Brown v. Hain Celestial Grp., Inc.*,
2012 WL 4364588 (N.D. Cal. Sept. 24, 2012) ...................................................... 20

*Casa de Cambio Comdiv S.A. de C.V. v. United States*,
48 Fed. Cl. 137 (2000) .............................................................................................. 15

*Colonial Chevrolet Co. v. United States*,
103 Fed. Cl. 570 (2012) ...................................................................................... 13, 19

*Couch v. Telescope, Inc.*,
611 F.3d 629 (9th Cir. 2010) .................................................................................... 19

*Cummins v. EG & G Sealol, Inc.*,
697 F. Supp. 64 (D.R.I. 1988) ................................................................................ 17

*Eastport S.S. Corp. v. United States*,
372 F.2d 1002 (Ct. Cl. 1967) .................................................................................. 15

*Erb v. Alliance Capital Mgmt., L.P.*,
423 F.3d 647 (7th Cir. 2005) .................................................................................... 3

*Ferraro v. Sec'y of Health and Human Servs.*,
780 F. Supp. 978 (E.D.N.Y. 1992) .......................................................................... 2

*FTC v. Minneapolis-Honeywell Regulator Co.*,
   334 U.S. 206 (1952) ............................................................................. 4

*Gatz v. Ponsoldt*,
   925 A.2d 1265 (Del. 2007) ....................................................... 7, 8, 9, 16

*Gentile v. Rossette*,
   906 A.2d 91 (Del. 2006) ............................................................. 6, 7, 8, 9

*Green v. City of New York*,
   2006 WL 3335051 (E.D.N.Y. Oct. 23, 2006) ............................................ 2

*Hulmes v. Honda Motor Co., Ltd.*,
   936 F. Supp. 195 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998) ....... 19

*In re J.P. Morgan Chase & Co. Shareholder Litig.*,
   906 A.2d 808 (Del. Ch. 2005) ............................................................. 11

*In re Tri-Star Pictures, Inc. Litig.*,
   634 A.2d 319 (Del. 1993) .................................................... 5, 7, 8, 11

*Jaynes v. United States*,
   69 Fed. Cl. 450 (2006) ...................................................................... 1

*Johnson v. United States*,
   49 Fed. Cl. 648 (2001) .................................................................... 10

*Kaiser Aetna v. United States*,
   444 U.S. 164 (1979) ......................................................................... 13

*Lipton v. News Int'l, Plc.*,
   514 A.2d 1075 (Del. 1986) .................................................................. 6

*Loretta Fabricant v. Sears Roebuck & Co.*,
   2001 WL 883303 (S.D. Fla. Jan. 29, 2001) ............................................. 2

*Loretto v. Teleprompter Manhattan CATV Corp.*,
   458 U.S. 419 (1982) ......................................................................... 13

*Marriott Int'l Resorts, L.P. v. United States*,
   122 F. App'x 490 (Fed. Cir. 2005) ....................................................... 12

*Moran v. Household Int'l, Inc.*,
   490 A.2d 1059 (Del. Ch.), *aff'd*, 500 A.2d 1346 (Del. 1985)..................... 6

*Page v. United States*,
   49 Fed. Cl. 521 (2001) .................................................................... 10

iv

*Penn Central Transp. Co. v. City of New York*,
    438 U.S. 104 (1978)..................................................................... 13

*Rhodes v. Silkroad Equity, LLC*,
    2007 WL 2058736 (Del. Ch. July 11, 2007) ............................... 16

*Richardson Elecs., Ltd v. Panache Broad. of Penn., Inc.*,
    202 F.3d 957 (7th Cir. 2000) ........................................................ 2

*Rowe v. Bankers Life & Cas. Co.*,
    2008 WL 5156077 (D. Ariz. Dec. 9, 2008) ............................... 18

*S. Cal. Fed. Sav. & Loan Ass'n. v. United States*,
    422 F.3d 1319 (Fed. Cir. 2005) .................................................. 15

*Tooley v. Donaldson, Lufkin & Jenrette, Inc.*,
    845 A.2d 1031 (Del. 2004) .......................................................... 11

*Vereda, Ltda v. United States*,
    46 Fed. Cl. 569 (2000) ................................................................ 12

*Weir v. Propst*,
    915 F.2d 283 (7th Cir. 1990) ........................................................ 2

*Wolfchild v. United States*,
    78 Fed. Cl. 472 (2007) ................................................................ 20

## Statutes

12 U.S.C. § 343(A) ..................................................................... 16

28 U.S.C. § 1292(d)(2) ......................................................... 1, 2, 18

28 U.S.C. § 1292(d)(3) ................................................................ 20

## Rules

Fed. R. App. P. 4............................................................................ 2

## INTRODUCTION

The Government now attempts to appeal an issue that this Court has already thrice ruled upon – "whether Starr may assert its takings and illegal exaction claims as direct shareholder claims under Delaware law and the Constitution, or whether instead those claims are exclusively derivative in nature." Br. at 4. It comes too late – 14 months after this Court first decided the Government's argument concerning direct claims on its motions to dismiss. Certification of the issue for interlocutory appeal should be denied because the Government's motion is untimely. The motion also fails to meet the standards under 28 U.S.C. § 1292(d)(2) for certification of an order for interlocutory appeal.

## STANDARD OF REVIEW

Courts have long held that "[i]nterlocutory appeals under [28 U.S.C. § 1292] are reserved for exceptional or rare cases and should be authorized only with great care as to avoid unnecessary and piecemeal litigation." *Jaynes v. United States*, 69 Fed. Cl. 450, 460 (2006). 28 U.S.C. § 1292(d)(2) establishes a three-pronged test for granting motions for interlocutory appeal: (1) a controlling question of law; (2) on which there is a substantial ground for difference of opinion; (3) for which an immediate appeal may materially advance the ultimate termination of the litigation. Whether to grant interlocutory appeal under this standard lies largely in the discretion of the trial judge. *Abbey v. United States*, 89 Fed. Cl. 425, 429 (2009). The burdens of continued litigation must be so high as to warrant interlocutory relief, which is granted sparingly. *Id*. The Government has failed to satisfy these requirements and has also unreasonably delayed its request for certification.

## ARGUMENT

## I.    The Government's Motion Is Untimely

The Government fails to address a precursor to the three-part statutory test for certifying an interlocutory appeal under 28 U.S.C. § 1292(d)(2), namely, the timeliness of the request for certification.  As previously held by the CFC, "'Prior to applying the three-part statutory test, however, in this instance a threshold requirement for certification must be addressed.  Any such request for certification must be timely.'"  *Abbey*, 89 Fed. Cl. at 429 (refusing to grant certification after "inexcusable delay" of 12 months).

With respect to final, dispositive judgments in a litigation, a notice of appeal must be made within 30 days after entry of the judgment or order.  Fed. R. App. P. 4(a)(1)(A). Notices of appeal in cases in which one of the parties is the United States are given as long as 60 days.  *Id.* 4(a)(1)(B).  Delays are permissible, but only if there is an acceptable reason for the delay.  *Weir v. Propst*, 915 F.2d 283, 287 (7th Cir. 1990).  Comporting with Rule 4, courts have consistently found delays as short as two months in seeking an interlocutory appeal to be impermissible.[1]

There is no acceptable reason for the Government's belated request at this stage of the litigation.  The issue for which the Government seeks appeal was presented in the Government's motion to dismiss filed 18 months ago.  *See* Def.'s Mot. to Dismiss (Mar. 1, 2012) (Dkt. No. 30).  The Court comprehensively addressed the issue in its ruling 14

---

[1] *See, e.g., id.*; *Richardson Elecs., Ltd v. Panache Broad. of Penn., Inc.*, 202 F.3d 957, 958 (7th Cir. 2000); *Loretta Fabricant v. Sears Roebuck & Co.*, 2001 WL 883303, at *2 (S.D. Fla. Jan. 29, 2001); *Green v. City of New York*, 2006 WL 3335051, at *2 (E.D.N.Y. Oct. 23, 2006); *Ferraro v. Sec'y of Health and Human Servs.*, 780 F. Supp. 978, 979 (E.D.N.Y. 1992).

months ago.  *See* Order (July 2, 2012) (Dkt. No. 50).  As this Court noted in denying the

Government's subsequent motion for reconsideration on the very same topic:

> The Government communicated these same sentiments in its motion to
> dismiss and at oral argument.  *See* Def's Mot. to Dismiss 15-18; June 1,
> 2012 Oral Arg. Tr. 17-19.  The Court carefully considered the
> Government's position and provided its opinion on the matter.  *See Starr
> Int'l*, 106 Fed. Cl. at 61-65.  The Government has not asserted any
> "intervening change of legal authority," nor has it demonstrated that the
> Court's decision would work a "manifest injustice."

Order (Sept. 17, 2012) (Dkt. No. 68).  Moreover, over 5 months ago (on March 22,

2013), this Court affirmed that it had already reviewed and rejected the Government's

motion to dismiss the direct claims and that "the Court will not entertain any arguments

that have been previously rejected," specifically noting that arguments the Government

proposed to raise, such as dismissal of the illegal exaction claim and direct claims, had

already been heard.  Scheduling Order (Dkt. No. 107) at 2.  Yet, the Government

proceeded to make redundant arguments concerning the direct claims a third time.  Once

again, in its order of June 26, 2013, this Court rejected the idea that any of the asserted

arguments by the Government were "new material facts" that would lead to

reconsideration of the two prior decisions rejecting the motions to dismiss the direct

claims.  Order (June 26, 2013) (Dkt. No. 126) at 26-28.

If the Government truly believed it had a meritorious basis for interlocutory

appeal (as opposed to the belated attempt to further delay this action), it would have filed

a motion to certify an interlocutory appeal of this Court's Orders of 14 or 11 months ago.

When "nothing of significance" has changed since the first order regarding a material

issue, courts will not permit a belated attempt to seek review.  *Erb v. Alliance Capital

Mgmt., L.P.*, 423 F.3d 647, 650-51 (7th Cir. 2005) ("Unless the circumstances have

changed significantly since the entry of the original order, we will deem the notice of an

appeal from that order, even though it may designate a later order as the order being appealed."). This Court rejected the Government's position with regard to Starr's direct claims in the first two Orders issued 14 and 11 months ago. The Government's failure to seek interlocutory review over that 14-month period constitutes an unjustified and unreasonable delay. *See FTC v. Minneapolis-Honeywell Regulator Co.*, 344 U.S. 206, 211-12 (1952) ("the mere fact that a judgment previously entered has been reentered or revised in an immaterial way does not toll the time within which review must be sought. Only when the lower court changes matters of substance or resolves a genuine ambiguity, in a judgment previously rendered should the period within which an appeal must be taken or a petition for certiorari filed begin to run anew.").

For this reason alone, the Government's motion to certify the interlocutory appeal should be denied as untimely.[2]

## II. The Government Has Not Raised An Issue For Which There Is A Substantial Ground For Difference of Opinion

The only question for which the Government seeks certification is "whether Starr's takings and illegal exaction claims are direct or derivative" – an argument which it contends turns on Delaware law. Br. at 5. The Government has not raised an argument

---

[2] Although it is hard to imagine an acceptable justification for a 14-month delay, the Government has not even attempted to justify its delay in filing the motion. In this Court's leading case on the issue, the Court rejected the Government's two purported justifications for its delay – the lengthy internal approval process for the Government to file an appeal and a change in administration. *See Abbey*, 89 Fed. Cl. at 432. Here, there has been no change in administration and the lengthy internal approval process for filing the appeal could have easily begun 14 months ago with the issuance of the first Order denying the Government's motion to dismiss the direct claims or at any intervening point since. Moreover, denial of the certification motion will not burden the Government in any way. The only burden referenced by the Government is that depositions of several "high-ranking officials" are scheduled but that purported burden is already the subject of the Government's separate writ of mandamus. *See* Br. at 10-11.

with respect to this issue, however, for which there is a substantial ground for difference of opinion.  *See* Def.'s Mot. for Recons. (Aug. 5, 2012) (Dkt. No. 55) at 8 ("Under Delaware law, a direct dilution claim may arise only from the conduct of a majority or controlling shareholder, when 'the public shareholders are harmed, uniquely and individually.'"); *see also* Dkt. No. 30 at 17-18; Def.'s 2nd Mot. to Dismiss (Apr. 5, 2013) (Dkt. No. 111) at 4-5.   Indeed, this Court based its three previous motion to dismiss decisions on well-settled law set forth and repeatedly reaffirmed by the Delaware Supreme Court, which the Government has never adequately distinguished or addressed. As such, no substantial ground for difference of opinion exists under the prevailing law.

Delaware case law has already resolved that classes of public shareholders have direct claims when they can establish that they have suffered injury distinct from the corporation or from those controlling the corporation.  In *In re Tri-Star Pictures, Inc., Litigation*, 634 A.2d 319 (Del. 1993) (overruled in part on other grounds), the Delaware Supreme Court reversed the dismissal of several claims against a corporation's board of directors by a class consisting of the corporation's minority shareholders.  Defendants moved for dismissal of the claims on the grounds that plaintiffs' theory and evidence of damages were inadequate as a matter of law and that the merger of the corporation extinguished plaintiffs' ability to bring claims that were not derivative.  *Id.* at 325-26. Plaintiffs alleged that the merger that occurred was a result of self-dealing that disproportionately affected the interests of minority shareholders resulting in an injury of "selective diminution in the value of the minority stockholders' shares and a total evisceration of their right to make an informed vote on corporate affairs."  *Id.* at 326-27. Similar to the Government's arguments here, defendants in *Tri-Star* alleged that "because

an injury suffered through waste of corporate assets falls equally upon all stockholders, defendants contend that any recovery may only be sought derivatively on behalf of the corporation injured." *Id.* at 327. The court disagreed, stating that "[i]t is well settled that the test used to distinguish between derivative and individual harm is whether the plaintiff suffered 'special injury.'" *Id.* at 330 (citing *Lipton v. News Int'l, Plc.*, 514 A.2d 1075, 1078 (Del. 1986); *Moran v. Household Int'l, Inc.*, 490 A.2d 1059, 1070 (Del. Ch. 1985)). "A special injury is established where there is a wrong suffered by plaintiff that was not suffered by all stockholders generally or where the wrong involves a contractual right of the stockholders, such as the right to vote. Although it is true that claims of waste are derivative, a claim of stock dilution and a corresponding reduction in a stockholder's voting power is an individual claim." *Id.* (citations omitted).

In *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006), minority shareholders brought fiduciary duty claims against the corporation's directors and CEO/controlling shareholder for approving a transaction in which the CEO forgave corporate debt owed to him in exchange for stock of greater value. *Id.* at 93. Plaintiffs alleged that "[t]he transaction . . . wrongfully reduced the cash-value and the voting power of the public stockholders' minority interest, and increased correspondingly the value and voting power of the controller's majority interest." *Id.* Denying the defendant's argument that the breach of fiduciary duty claim "was *exclusively* derivative in character," *id.* at 97, the Delaware Supreme Court held that a direct injury and hence a direct claim exists where "the end result of this type of transaction is an improper transfer—or expropriation—of economic value and voting power from the public shareholders to the majority or controlling stockholder." *Id.* at 100.

Similarly, in *Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007), plaintiffs, who became minority shareholders as a result of a recapitalization, brought fiduciary claims against the corporation's directors and prior and current controlling shareholders. *Id*. at 1267. The transaction occurred pursuant to a two-step process, in which a minority shareholder who exercised *de facto* control over the company, simultaneously increased his stock ownership to an absolute majority interest and sold that majority stake to a third party in exchange for cash. *Id*. at 1268. On aggregate, these transactions caused the plaintiffs, who were previously the majority shareholders in the first corporation, to become minority shareholders in the new corporation. *Id*. This case was potentially distinguishable from prior precedent of *Tri-Star* and *Rossette* because "to the extent that the Recapitalization resulted in a dilution or expropriation of value and voting power of the shares held by the [ ] public stockholders, that expropriation did not redound directly (and correspondingly) to the benefit of [the] controlling stockholder . . . . Rather, the direct beneficiary of any alleged expropriation of that voting power and economic value was *a third party . . . which owned no [ ] stock before the Recapitalization*." *Id*. at 1278-79 (emphasis added). Specifically, like the Government, the *Gatz* defendants urged that the court reach a different result "because even if the Recapitalization reduced the value and voting power of the outstanding shares owned by Regency's public shareholders, there was no corresponding increase in the value or voting power of the shares held by the corporation's controlling stockholder." *Id*. at 1274. As a result, defendants' contended that only derivative claims existed. *Id*. The Supreme Court rejected defendants' efforts to distinguish their facts from *Tri-Star* and *Rossette*, finding that any distinction existed only by defendant's incorrect portrayal of the Recapitalization as a

"unitary transaction in which (1) majority control is transferred in an arms' length exchange from the public shareholders to a non-fiduciary third party having no previous stock ownership in the corporation, and (2) the (former) controlling stockholder receives no corresponding benefit." *Id*. at 1279. "Looking through the form of the transaction to its substance," however, the *Gatz* court broke down the challenged Recapitalization into two separate transactions, the first of which constituted an expropriation by and to the controlling (but minority) shareholder, and the second a simultaneous transfer of the benefits to a third party. *Id*. at 1279-80. The court then reasoned that if plaintiffs' allegations are true, "then this transaction clearly falls within the ambit of *Tri-Star/Rossette*, and any claim for redress by [the] public stockholders could be brought directly." *Id*. at 1279. The court concluded:

> It is the very nature of equity to look beyond form to the substance of an arrangement. 'Equity will not permit one to evade the law by dressing what is prohibited in substance in the form of that which is permissible.' So too, equity will not permit a fiduciary to deprive his beneficiaries of their entitlement to seek direct redress for fiduciary misconduct by structuring a transaction so as to obscure that entitlement.

*Id.* at 1280. Thus, Delaware appellate courts have long recognized that irrespective of how a transaction is structured – a Credit Agreement followed by a Trust Agreement, Stock Purchase Agreement, and Reverse Stock Split – or what means are used to obscure the nature of the benefit (such as a sham Trust), what matters is who was directly injured as a result of the transaction.

Consistent with Delaware law, this Court has previously held that Plaintiff has a direct claim because "the Government extracted from the public shareholders, and redistributed to itself, 'a portion of the economic value and voting power embodied in the minority interest'" and the Government owed a duty directly to that Class "not to take

private property without paying just compensation." Dkt. No. 50 at 17-18. In other words, the Class has a direct claim because the Government *took property owned by that Class*, and the Government owed a duty directly to the Class to pay just compensation. This Court also found that a direct claim by minority shareholders under Delaware law depends upon the existence of a duty, irrespective of whether that duty was derived from the fact that a defendant is a controlling shareholder or lender who received a benefit that caused harm to those minority shareholders triggering a fiduciary duty or from other pre-existing duties such as the Government's obligations under the Fifth Amendment. *Id.*; *see* Compl. ¶¶ 68-88 (alleging that the Government also exercised *de facto* control as a controlling lender). The Court also correctly rejected the Government's repeated argument that the *Gatz-Rossette* line of cases did not apply "because the Government was not a stockholder, nor did it have majority or effective control of AIG, when the purported dilution occurred," *see* Dkt. No. 50 at 16, properly concluding that "[a]s in *Gatz* and *Rossette*, the Government had an obligation not to appropriate the minority shareholders' property interests—irrespective of whether the Government was a stockholder when the purported dilution occurred." *Id.* at 17-18. "Whether styled as a takings claim or a breach of fiduciary duty claim, the Plaintiffs here, like those in *Gatz* and *Rossette*, seek compensation for the improper extraction of the economic value and voting power associated with their shares of stock." *Id.*; *see also Gatz*, 925 A.2d 1265 (permitting direct claims to proceed against corporation's new controlling shareholder who previously did not hold stock). The Government proffers no basis for revisiting this ruling and, indeed, fails to even distinguish the key Delaware cases that support it.

Instead, in support of its argument that the courts in this Circuit have "generally held that shareholders *lack* standing to assert takings claims on behalf of the corporations in which they have invested," Br. at 8, the Government cites to four cases that hold no such thing. First, the Government cites *Bailey v. United States*, 53 Fed. Cl. 251, 257 (2002), which was decided under Mississippi corporate law and found that there was no property interest with which to assert a takings claim in a failed savings and loan that was liquidated prior to the proceedings at issue. Similarly, in *Page v. United States*, 49 Fed. Cl. 521, 531 (2001), applying the Illinois corporate survival statute to a dissolved corporation, Judge Hewitt found that there had been no assignment of the claims from the corporation to the two individual plaintiffs and that they could bring their claims only in the names of the real party of interest in the matter – the corporation.

The Government also cites to *Johnson v. United States*, 49 Fed. Cl. 648 (2001), where the issue was what claims were barred based on collateral proceedings in the Fifth Circuit. Judge Firestone found that the "Fifth Circuit plainly held that [sic] Johnson could not bring an action with respect to corporate assets as an individual, but did not reach the same conclusion with respect to his ability to bring a claim as a shareholder. . . . Collateral estoppel does not bar Johnson from litigating this takings claim as a shareholder on behalf of his corporation." *Id.* at 652. What ultimately barred Johnson from proceeding in his takings case as the sole shareholder of his company was that his shares in the company had been cancelled when the company was placed in receivership as a result of violations of a consent decree and filing for bankruptcy. *Id.* at 649-50. Because there was no evidence that the bankruptcy receiver had abandoned any claims held by the company and because the appointment of a receiver to ensure compliance

with a consent decree did not, by itself, implicate the takings clause, Johnson was found not to have standing. *Id.* at 653-54, *aff'd*, 317 F.3d 1331, 1334 (Fed. Cir. 2003) (affirming that shareholder lacked standing to bring takings claim because his shares were cancelled under a bankruptcy reorganization plan).

In the only case under Delaware law cited by the Government, *In re J.P. Morgan Chase & Co. Shareholder Litig.*, 906 A.2d 808 (Del. Ch. 2005), the Delaware Chancery Court held that a shareholder claim that JPMC paid too much to acquire Bank One in a merger is solely a derivative claim because the harm, if any, only accrued to JPMC:

> The only economic injury the plaintiffs claim to have suffered is the loss of the opportunity for JPMC to have acquired Bank One on more favorable terms. That injury, if there is one, is to the corporation. Moreover, JPMC stockholders' voting rights were unaffected by the merger. Although there are now more JPMC shares outstanding and a greater number of stockholders, control of the corporation remains unchanged. Thus, the sort of 'injury to voting interests' described in *Tri-Star* is absent.

*Id.* at 826, *aff'd*, 906 A.2d 766, 771-72 (Del. 2006). Thus, the case affirms the continued viability of *Tri-Star* and its progeny.

Unlike *J.P. Morgan*, Plaintiff and the Classes have pled a direct injury in which the voting and economic interests of the minority shareholders were disproportionately affected to the benefit of the Government through a series of transactions and agreements between AIG and the Government. This is sufficient to establish a direct claim under Delaware law. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). The Court's rulings have been consistent with this precedent and the Government has failed to cite any law that would cast doubt or provide a substantial ground for difference of opinion on the issue.

**III.    The Government Has Not Raised A "Controlling Question Of Law" That Would Be Dispositive Of The Entire Case At This Stage**

By the Government's own admission, the issue of "whether Starr's takings and illegal exaction claims are direct or derivative," Br. at 5, will not dispose of this case in the entirety. *See id*. at 6, n.1 (conceding that "a ruling on the certified question may not directly dispose of Starr's claim related to the June 2009 reverse stock split").[3] Moreover, certification of the question is inappropriate at this stage because consideration of the matter at issue will be better informed by a complete fact record and the illegal exaction claim does not turn on the direct/derivative challenge raised by the Government.

**A.    An Appeal In This Case Is More Appropriately Addressed And Informed Within The Context Of A Complete Fact Record**

The ultimate question that the Government seeks to answer through the certification of the Delaware law question – whether Starr has alleged a valid takings claim – will not be resolved through certification at this stage in the case.  The U.S. Supreme Court has made clear concerning Fifth Amendment takings claims, "whether a particular restriction will be rendered invalid by the government's failure to pay for any losses proximately caused by it depends largely 'upon the particular circumstances [in that] case'" and "this Court, quite simply, has been unable to develop any 'set formula'

---

[3] The Government cites to *Vereda, Ltda. v. United States*, 46 Fed. Cl. 569 (2000) for the proposition that whether or not Starr's claims belong "exclusively" to the corporation is the "epitome of a controlling question of law."  Br. at 6.  In *Vereda*, however, the Government's motion was <u>unopposed</u> and the takings claim was "the only remaining count in plaintiff's case" and if dismissed for want of jurisdiction the entire lawsuit would be dismissed.  46 Fed. Cl. at 570.  Here, the Government concedes that a ruling on the certified question may not be dispositive.  Similarly, the Government cites to *Marriott Int'l Resorts, L.P. v. United States*, for the proposition that the Federal Circuit will certify an interlocutory appeal if it will "simplify the litigation."  *Id.*  However, the court certified the question based on inter- and intra-circuit splits and not the Government's contention that it would "simplify the litigation".  122 F. App'x 490, 492 (Fed. Cir. 2005) (unpublished).

for determining when 'justice and fairness' require that economic injuries caused by public action be compensated by the government, rather than remain disproportionately concentrated on a few persons." *Penn Central Transp. Co. v. City of New York*, 438 U.S. 104, 123–24 (1978) (citations omitted); *see also Kaiser Aetna v. United States*, 444 U.S. 164, 175 (1979). Thus, the Supreme Court has stressed the importance of considering takings arguments according to surrounding events and circumstances. *See Loretto v. Teleprompter Manhattan CATV Corp.*, 458 U.S. 419, 426 (1982) (courts "must engage in 'essentially ad hoc, factual inquiries'" to determine whether a unique takings case has arisen); *Alley's of Kingsport, Inc. v. United States*, 103 Fed. Cl. 449, 454 (2012) ("Plaintiffs should have the opportunity to develop a case that may turn out to be unique. Neither the Supreme Court nor the Court of Appeals for the Federal Circuit has limited takings cases to strict or formulaic theories at the pleading stage. Plaintiffs may discover evidence pretrial that helps to develop a previously unknown taking theory of the type the Supreme Court urged us to consider 'ad hoc,' and apply 'the particular circumstances [of that] case.'"); *120 Delaware Ave., LLC v. United States*, 95 Fed. Cl. 627, 632 (2010) ("The novelty of these issues and the divergence of possible analytical approaches are further reasons for allowing Plaintiff to pursue this action beyond the pleading stage"); *Colonial Chevrolet Co. v. United States*, 103 Fed. Cl. 570, 575 (2012) ("The [Supreme] Court's language implies that a trial court's review of taking complaints may disclose unique allegations, and in turn, unique findings. Plaintiffs should have the opportunity to develop a case that may turn out to be unique").

The appellate court should address this case only with the benefit of a complete fact record. The limited discovery taken to date already has revealed a number of facts

wholly inconsistent with prior representations made by the Government to this Court in its filings on the very question at issue here. For example, the Government previously represented that it reached a binding agreement with AIG for 79.9% equity on September 16, 2008. *See* Dkt. No. 50 at 16.[4] Discovery has revealed, however, that the United States understood that there was no binding agreement between AIG and the Government until September 22, 2008. United States 30(b)(6) (Alvarez) Dep. at 20:10-21:15. Moreover, the Government has represented that no illegal exaction could have occurred because the Federal Reserve Board approved the terms of the 13(3) loan. *See* Def.'s Reply in Supp. of Mot. to Dismiss Am. Complaint (Dkt. No. 46) at 32-33. As discovered in the recent deposition of former Vice Chairman of the Federal Reserve Donald Kohn, the Term Sheet presented to and approved by the Board differed in material ways from the terms ultimately implemented by FRBNY in the Credit Agreement. *See* D. Kohn Dep. at 294-98; PX 69. In short, a more comprehensive fact record can only assist in understanding and analyzing the relevant legal issues for which certification is sought.

**B.      The Illegal Exaction Claim Does Not Turn On Whether The Claim Is Direct Or Derivative**

An illegal exaction claim turns on whether the proximate cause for the loss of money is Government action "'in contravention of the Constitution, a statute, or regulation.'" *Casa de Cambio Comdiv S.A. de C.V. v. United States*, 48 Fed. Cl. 137, 143

---

[4] *Id.* ("Key to the Government's position is its assertion that any alleged dilution occurred on September 16, 2008, when AIG agreed to transfer a 79.9% equity interest to the Government in exchange for the $85 billion loan. *Id.* (citing Compl. ¶ 4); Tr. 17 (Todor). In the Government's view, the subsequent events—the issuance of the Series C Preferred Stock to the Trust, the reverse stock split, and the conversion of the preferred stock into common stock—were merely implementations of the September 16 agreement. *See* Tr. 17-18 (Todor).").

(2000) (quoting *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1007-08 (Ct. Cl. 1967)).  The issue is ownership of the property being taken not how the exaction was effected.  *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1573 (Fed. Cir. 1996) (holding that standing to bring an illegal exaction claim turns on whether the plaintiff must show that the money (or property) was "exacted" from it, either "directly or in effect.").

Under this legal standard set forth by the Federal Circuit, Plaintiff has alleged an illegal exaction claim.  *See* Order (Dkt. No. 68) at 4 ("Starr alleges that the FRBNY exceeded its authority under Section 13(3), resulting in an illegal exaction.  Illegal exactions create substantive rights conferring standing.  Accordingly, provided that Starr has validly asserted an illegal exaction claim, standing is established."); Compl. ¶¶ 71-88, 148-65 (alleging that the Government under color of Federal Reserve Act Section 13(3) took from Plaintiff and the Classes economic and voting interests in their AIG stock without any legal authority).  Thus, the direct/derivative question does not apply to the illegal exactions theory of recovery.

Furthermore, the direct/derivative distinction is largely made to prevent the potential "double recovery" of damages both directly and indirectly by shareholders.  *See Am. Capital Corp. v. FDIC*, 472 F.3d 859, 866 (Fed. Cir. 2006) (holding that where a shareholder had "a direct, personal interest in a cause of action," it would be granted standing in a breach of contract case against the government); *S. Cal. Fed. Sav. & Loan Ass'n v. United States*, 422 F.3d 1319, 1332-33 (Fed. Cir. 2005).  Here, there is a defined amount of stock that belonged to Plaintiff and the Classes during the relevant period, there are equity and voting rights associated with those stock holdings, and the

Government expropriated those equity and voting rights purportedly based on its

authority under Section 13(3) of the Federal Reserve Act. This Court held in both its

original ruling and in its ruling on the motion for reconsideration that Starr has valid

standing to address this exaction of shareholders' equity and voting rights – property

interests defined by Delaware law – and the Government presents no valid argument as to

why the Court's reasoned determination turns on the "direct/derivative" issue or in any

manner warrants interlocutory appeal at this untimely stage. *See* Dkt. No. 50 at 42-45;

Dkt. No. 68 at 3-6.[5] Thus, it has been clear for at least 11 months that whether Starr and

the Classes have standing to bring the illegal exaction claim directly does not turn on

whether that claim is direct or derivative. Certification of the question will not change

the previous rulings of this Circuit.[6]

---

[5] To the extent the Government's argument depends on both shareholders and the corporation being injured, Delaware courts have never prohibited direct actions by shareholders in which the transactions complained of harmed harm both the corporation and its shareholders. *See Rhodes v. Silkroad Equity, LLC*, 2007 WL 2058736, at *5 (Del. Ch. July 11, 2007) ("There are, however, circumstances which may form the basis for both direct claims and derivative claims . . . . Although the corporation may be harmed, there are times when the consequences of that harm fall disproportionately upon minority stockholders."); *Gatz*, 925 A.2d at 1280-81.

[6] The Government's own filings in this case have made the illegal exaction claim even more central to the case, as the Government has: (1) challenged whether AIG was solvent at the time of the loan, despite the fact that if AIG was insolvent, the Federal Reserve could not have authorized a 13(3) loan, *see* 12 U.S.C. § 343(A) (requiring the Fed loan to be "secured to the satisfaction of the Federal reserve bank"); (2) challenged whether the Federal Reserve or its regional banks is authorized to hold equity in a company, despite the clear indications to the contrary in the language of Section 13(3) and in statements by both the Chairman and the General Counsel of the Federal Reserve, *see, e.g.*, Brookfield 003132–34 at 33; FRBNY-TOWNS-R3-001899; and (3) put the knowledge of the illegality of its conduct at issue by asserting as part of the Government's affirmative defense that it did not know its actions were illegal, Answer ¶ 241 (July 31, 2013) (Dkt. No. 143); *see also* Compl. ¶¶ 82-93, 118-65 (Starr's allegations of the sham trust).

**IV.  Certification Of The Delaware Law Question To The Federal Circuit Will Waste Judicial Resources Without Providing An Ultimate Resolution To This Case**

Several federal courts have questioned the wisdom of granting certification where the ultimate question to be decided turns on state law.  This is especially true in the posture of a motion to dismiss, where the fact record, which may help determine the resolution of the legal question, has not been developed.  Moreover, to the extent that certification of the question to the Federal Circuit would lead to subsequent certification to the Delaware Supreme Court (the only definitive source to answer the Government's question), it is unclear whether the Delaware Supreme Court would accept review of the issue.  Such circuitous certification of appeal would simply add delay upon delay without any guarantee that a resolution to the question would ultimately be either helpful or controlling in this case.  Without any evidence that immediate appeal will materially advance the ultimate termination of the litigation, as other courts have held, the question should not be certified.

For example, in *Cummins v. EG & G Sealol, Inc.*, 697 F. Supp. 64 (D.R.I. 1988), the defendant sought interlocutory review of the court's decision to permit the addition of a cause of action based in tort to plaintiff's complaint, because it was unclear as to whether Rhode Island recognized the cause of action in question.  *Id*. at 65.  The court held that "it is improper to certify a question of state law to the United States Court of Appeals for interlocutory review" because:

> the First Circuit Court would find itself in no better position to make a determination concerning state law than this Court now finds itself.  In fact, it is quite likely that the Court of Appeals, should it accept the interlocutory appeal, would feel compelled to itself certify the state law issue to the Rhode Island Supreme Court. *The delay that would be caused by such a circuitous certification route, of an issue that may become moot, would be inefficient for the courts involved and unfair to the litigants.*

*Id.* at 70 (emphasis added). As such, "delaying certification to state court until after trial is the best course to take because it will provide the Rhode Island Supreme Court with a fully developed factual basis upon which to rule, and avoids the danger of certifying a question which may be rendered moot through further litigation." *Id.*[7]

In *Rowe v. Bankers Life & Casualty Co.*, the court rejected defendant's argument that a substantial ground for difference in opinion existed based on the fact that the case involved "a matter of statutory first impression." 2008 WL 5156077, at *3 (D. Ariz. Dec. 9, 2008). The matter of first impression was "only with respect to state law" and "every case cited by Defendants to support this argument concerns federal statutory law." *Id.* The court further held that if defendants "intended to seek guidance on the coverage issues from an appellate court, rather than moving for interlocutory appeal in the Ninth Circuit, they should have made a timely attempt to seek certification from the Arizona Supreme Court, the institution that is charged with the task of being the final arbiter of state insurance and contract law." *Id.*

Likewise, the court in *Ash Grove Cement Co. v. Liberty Mutual Insurance Co.*, denied defendant's interlocutory appeal of a state law issue, reasoning that requiring "another federal court" to interpret a state law issue "would not materially advance the ultimate termination of the litigation." 2011 WL 96679, at *2 (D. Or. Jan. 10, 2011). "Federal rulings on state law issues generally do not affect the state's law, because state courts are not bound by the decisions of the lower federal courts." *Id.* ("certification 'merely trades one federal forum for another.'"); *see Couch v. Telescope, Inc.*, 611 F.3d

---

[7] "Because the operative language is identical, the legislative history and case law governing the interpretation of section 1292(b) is persuasive in reviewing motions for interlocutory appeal under section 1292(d)(2)." *Abbey*, 89 Fed.Cl. at 429.

629, 634 (9th Cir. 2010) ("Federal rulings on state-law issues generally don't affect the state's law"); *Hulmes v. Honda Motor Co., Ltd.*, 936 F. Supp. 195, 210-11 (D.N.J. 1996), *aff'd*, 141 F.3d 1154 (3d Cir. 1998) (denying certification, noting that New Jersey courts have no certification procedure and the Third Circuit was "in no better position to make such a prediction than is this court").

It is unclear that the delay and effort inherent in the certification process will ultimately resolve the issues in this case. Because this case is still only at the beginning of fact discovery and the appeal would be from a denial of the motion to dismiss, the certifying court, whether it be the Federal Circuit or ultimately the Delaware Supreme Court, will have no evidentiary record upon which to define the contours of their opinion or provide any helpful precedential analysis. As a result, any opinion offered may not ultimately resolve the issues in this case.

Contrary to the Government's assertion, the recent certification for interlocutory appeal of two TARP cases sheds no light on this issue. *See* Br. at 6. Although takings cases, both cases raised questions purely of federal law and part of the issue certified for appeal was whether there was actually any property taken. *See Alley's*, 103 Fed. Cl. at 452-53 (unclear whether there was a property interest to be taken because the franchise agreements at issue were unsecured in the bankruptcy proceeding); *Colonial Chevrolet*, 103 Fed. Cl. at 573-74 (same). Here, the Delaware courts have already made clear that expropriation of economic and voting rights in stock is property that can be taken.

Further, the Government's claim that there are various subsequently filed cases involving shareholders of Fannie Mae and Freddie Mac that could benefit from established precedent in this case, Br. at 6-7, is misleading. Those cases, involving

Government-sponsored entities, do not involve the same question of state law that the Government alleges exists here.  *See id*. at 7.

Finally, the Government concludes because there is a risk of appellate reversal of the case, that the case should not proceed to trial at this juncture.  *Id.* at 10.  The Government's assertion is unfounded and irrelevant to the standard for certifying an interlocutory appeal.

Because the Government cannot meet the requirements for certification of interlocutory appeal, its motion should be denied.[8]

## **CONCLUSION**

For the foregoing reasons, Defendant's Motion to Certify the Court's June 26, 2013 Order for Interlocutory Appeal should be denied.

---

[8] Even if the Court certifies the Government's question, Plaintiff respectfully requests that the Court permit discovery to continue pursuant to 28 U.S.C. § 1292(d)(3) ("Neither the application for nor the granting of an appeal under this subsection shall stay proceedings . . . in the Court of Federal Claims . . . unless a stay is ordered by a judge" in either the CFC or Federal Circuit).  The Government has already twice flouted this Court's discovery orders by failing to complete document production on either the July 15, 2013 or August 15, 2013 deadlines set by the Court.  It should not be further rewarded with a stay of all discovery in this case.  *See, e.g.*, *Wolfchild v. United States*, 78 Fed. Cl. 472, 484 (2007) ("the government's motion to certify orders is in many respects untimely, and because the parties have expended substantial resources in developing and addressing the party-related issues as a preamble to reaching this point, the court will not stay proceedings while the government petitions the court of appeals to grant interlocutory appeal of the two certified questions."); *Brown v. Hain Celestial Grp., Inc.*, 2012 WL 4364588 (N.D. Cal. Sept. 24, 2012) (denying defendant's request to stay discovery pending interlocutory appeal, even though the issue on appeal could result in dismissal of the entire case, because defendant had already extensively delayed discovery, and because plaintiff's discovery requests were generally reasonable).

Dated:  New York, New York
       August 30, 2013

                     BOIES, SCHILLER & FLEXNER LLP


                 By       /s/ David Boies
                       David Boies
                       Attorney of Record
                       333 Main Street
                       Armonk, NY 10504
                       Tel. (914) 749-8200
                       Fax (914) 749-8300
                       Email: dboies@bsfllp.com

                       *Counsel for Plaintiff Starr International,*
                       *Company, Inc. and for the Plaintiff Classes*


OF COUNSEL:

                   BOIES, SCHILLER & FLEXNER LLP

                       Robert J. Dwyer
                       Alanna C. Rutherford
                       Julia C. Hamilton
                       575 Lexington Avenue
                       New York, NY 10022
                       Telephone:  (212) 446-2300

                       Hamish P. M. Hume
                       Samuel C. Kaplan
                       5301 Wisconsin Avenue, NW
                       Washington, DC 20015
                       Telephone:  (202) 237-2727

                   SKADDEN, ARPS, SLATE, MEAGHER & FLOM
                   LLP

                       John L. Gardiner
                       Four Times Square
                       New York, NY 10036
                       Telephone:  (212) 735-3000