IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

STARR INTERNATIONAL COMPANY,
INC., on its behalf and on behalf of a class of
others similarly situated,

                       Plaintiff,

         v.

THE UNITED STATES,                              No.  11-00779C (TCW)

                       Defendant,

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES
AND TO COMPEL THE PRODUCTION OF DOCUMENTS**

                                    BOIES, SCHILLER & FLEXNER LLP
                                    David Boies
                                    Attorney of Record
OF COUNSEL:                          333 Main Street
                                    Armonk, NY 10504
BOIES, SCHILLER & FLEXNER LLP    Tel. (914) 749-8200
Robert J. Dwyer                       Fax (914) 749-8300
Alanna C. Rutherford               Email: dboies@bsfllp.com
Julia C. Hamilton
Hamish P. M. Hume
Samuel C. Kaplan

SKADDEN, ARPS, SLATE, MEAGHER   *Attorneys for Starr International Company,*
& FLOM LLP                        *Inc. and for the Plaintiff Class*
John L. Gardiner

September 11, 2013

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ...................................................................................... 1

ARGUMENT ................................................................................................................. 3

I.      The Affirmative Defenses Of Payment, Contingent Offset/Recoupment,
        Hold Harmless, And Severability Are Unavailable Against Plaintiff And
        Must Be Stricken.................................................................................................. 4

        A.      Plaintiff Has Direct Claims Against The Government To Which
                Affirmative Defenses Against AIG Are Inapplicable....................................... 5

        B.      This Court Has Previously Found That The Affirmative Defense Of
                Payment Does Not Bar Plaintiff's Direct Claims ........................................... 6

        C.      The Contingent Offset/Recoupment Defense Is Only Available
                Against AIG ................................................................................................... 7

        D.      The Contractual Remedies Of Hold Harmless And Severability Are
                Not Applicable To Plaintiff, Which Was Not A Party To The Credit
                Agreement ..................................................................................................... 8

II.     The Affirmative Defenses Of Equitable Estoppel, Laches, And Waiver
        Are Insufficient As A Matter Of Law ................................................................... 9

        A.      The Defenses Are Irrelevant Because AIG's Knowledge Cannot Be
                Imputed To Plaintiff....................................................................................... 9

        B.      The Affirmative Defenses of Equitable Estoppel and Laches Are Also
                Insufficient As A Matter Of Law Because The Government Fails To
                Allege Material Prejudice ............................................................................ 10

III.    The Government Has Waived Any Claim Of Privilege By Putting Its
        Intent And Understanding Of The Scope Of Its Authority At Issue..................... 12

        CONCLUSION.................................................................................................. 15

# TABLE OF AUTHORITIES

## Cases

*Chou v. Univ. of Chicago*,
254 F.3d 1347 (Fed. Cir. 2001) .................................................................................. 3

*Coach, Inc. v. Kmart Corps.*,
756 F. Supp. 2d 421 (S.D.N.Y. 2010) ................................................................. 11, 12

*Confidential Informant 59-05071 v. United States*,
108 Fed. Cl. 121 (2012) ............................................................................... 13, 14

*EEOC v. Citizens Bank & Trust Co. of Md.*,
117 F.R.D. 366 (E.D. Md. 1987) .............................................................................. 14

*Estee Lauder, Inc. v. Fragrance Counter, Inc.*,
189 F.RD. 269 (S.D.N.Y. 1999) ................................................................................ 3

*FDIC v. Eckert Seamans Cherin & Mellott*,
754 F.Supp. 22 (E.D.N.Y. 1990) .............................................................................. 3

*FDIC v. Ornstein*,
73 F.Supp.2d 277 (E.D.N.Y. 1999) ........................................................................ 3

*FDIC v. Pelletreau & Pelletreau*,
965 F. Supp. 381 (E.D.N.Y. 1997) .......................................................................... 7

*Gasser Chair Co., Inc. v. Infanti Chair Mfg. Corp.*,
60 F.3d 770 (Fed. Cir. 1995) ............................................................................. 11, 12

*Gatz v. Ponsoldt*,
925 A.2d 1265 (Del. 2007) ...................................................................................... 6

*Gentile v. Rossette*,
906 A.2d 91 (Del. 2006) .......................................................................................... 6

*Global Poly Inc. v. Fred's Inc.*,
No. 03 C 4561, 2004 WL 532844 (N.D. Ill. Mar. 11, 2004) .................................... 12

*In re Kochan*,
No. 12-00191, 2012 WL 5384199 (Bkrtcy. D. Dist. Cl. Nov. 1, 2012) .................... 11

*In re Salomon Inc. Shareholders' Derivative Litig.*,
No. 91 Civ. 5500 (RPP), 1994 WL 533595 (S.D.N.Y. Sept. 30, 1994) ..................... 5

*In re Soulbury Ltd.*,
554 F.3d 123 (D.D.C. 2009) .................................................................................... 10

*In re Splash Tech. Holdings, Inc. Secs. Litig.*,
   No. C 99-00109 SBA, 2000 WL 1727405 (N.D. Cal. Sept. 29, 2000)...................... 10

*In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*,
   145 F.3d 1422 (D.C. Cir. 1998) ........................................................................ 14, 15

*Intex Recreation Corp. v. Team Worldwide Corp.*,
   390 F. Supp. 2d 21 (D.D.C. 2005) ................................................................................ 5

*Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.*,
   971 F.2d 732 (Fed. Cir. 1992)...................................................................................... 10

*Nat'l Acceptance Co. of America v. Regal Prods., Inc.*,
   155 F.R.D. 631 (E.D. Wis. 1994) ................................................................................ 11

*Ogden Dev. Corp. v. Fed. Ins. Co.*,
   508 F.2d 583 (2d Cir. 1974).......................................................................................... 9

*Pacetti v. United States*,
   50 Fed. Cl. 239 (2001) .................................................................................................. 8

*Robo Wash, Inc. v. United States*,
   223 Ct. Cl. 693 (1980) .................................................................................................. 9

*S.E.R., Jobs for Progress, Inc. v. United States*,
   759 F.2d 1 (Fed. Cir. 1985)......................................................................................... 11

*Schleiff v. Baltimore & Ohio Railroad Co.*,
   130 A.2d 321 (Del. Ch. 1955)....................................................................................... 5

*Schoon v. Smith*,
   953 A.2d 196 (Del. 2008) .............................................................................................. 5

*Scott v. Bd. of Educ. of City of E. Orange*,
   219 F.R.D. 333 (D.N.J. 2004)...................................................................................... 14

*SEC v. Nat'l Student Mktg. Corp.*,
   No. 225-72(CA), 1974 WL 439 (D.D.C. Aug. 23, 1974)............................................. 3

*Sidney-Vinstein v. A.H. Robins Co.*,
   697 F.2d 880 (9th Cir. 1983) ........................................................................................ 6

*Sikorsky Aircraft Corp. v. United States*,
   106 Fed. Cl. 571 (2012) .............................................................................................. 13

*Simmonds Precision Prods., Inc. v. United States*,
   546 F.2d 886 (Ct. Cl. 1976) ........................................................................................ 10

*Southern Railway Co. v. United States,*
  228 Ct. Cl. 712 (1981) ............................................................................................ 11

*Specialty Minerals, Inc. v. Pluess-Staufer AG,*
  395 F. Supp. 2d 109 (S.D.N.Y. 2005).................................................................... 4

*Suffolk Cty. v. Long Island Lighting Co.,*
  728 F.2d 52 (2d Cir. 1984)................................................................................. 2, 8

*United States v. Kane Co.,*
  668 F. Supp. 2d 146 (D.D.C. 2009) ....................................................................... 4

*United States v. Lot 65 Pine Meadow,*
  976 F.2d 1155 (8th Cir. 1992) ................................................................................ 3

*United States v. Wang,*
  404 F. Supp. 2d 1155 (N.D. Cal. 2005) ................................................................. 6

*Williams v. Jader Fuel Co. Inc.,*
  944 F.2d 1388 (7th Cir. 1991) ................................................................................ 3

## Other Authorities

5A Charles Alan Wright & Arthur A. Miller,
  *Fed. Prac. & Proced.* § 1380 (2d. ed. 1990) ......................................................... 3

Plaintiff Starr International Company, Inc. ("Plaintiff" or "Starr") submits this memorandum of law in support of its motion to strike the affirmative defenses asserted by the Government in its Answer to Plaintiff's Second Amended Verified Class Action Complaint [Dkt. 143] ("Answer") and to compel the production of documents withheld by the Government relating to its intent and understanding regarding the scope of its authority under Section 13(3) of the Federal Reserve Act in connection with the loan commitment to American International Group, Inc. ("AIG").

## PRELIMINARY STATEMENT

Rule 12(f) of the Rules of the Court of Federal Claims provides that when an affirmative defense is unsupportable as a matter of law, it should be stricken to avoid unnecessary litigation on the question. The Government here asserts seven affirmative defenses that are inapplicable to Plaintiff's claims in this action and that fail to meet the pleading requirements under the Rules of the United States Court of Federal Claims. The defenses must therefore be stricken to prevent the unnecessary expenditure of time and resources to litigate the invalid defenses.

First, the affirmative defenses of (1) Payment, (2) Contingent Offset/Recoupment, (3) Hold Harmless, and (4) Severability are irrelevant because they are available only against AIG – which is not a party to this action. Because this case consists solely of Plaintiff and the Classes' direct claims against the Government that are separate and independent from those of AIG, the affirmative defenses of payment and contingent offset/recoupment, which concern consideration AIG received and potential offsets available to AIG, are insufficient as a matter of law and should be stricken.

Similarly, the affirmative defenses of hold harmless and severability are based upon express provisions contained in the Credit Agreement, dated as of September 22, 2008, between

1

AIG and the Federal Reserve Bank of New York (the "Credit Agreement"), to which Plaintiff

was not a party.  It is black letter law that contractual remedies are only available to those parties

who are in privity of contract.  *See Suffolk Cty. v. Long Island Lighting Co.*, 728 F.2d 52, 63 (2d

Cir. 1984).  Because Plaintiff is neither a party to nor intended beneficiary of the Credit

Agreement, affirmative defenses based on the contractual remedies of hold harmless and

severability are not enforceable against Plaintiff and the Classes.  Therefore, those defenses must

be stricken.

Second, the three affirmative defenses of equitable estoppel, laches, and waiver are

insufficient as a matter of law because they are based on knowledge and actions attributable to

AIG that cannot be imputed to Plaintiff.  Indeed, the Government fails to make any allegation as

to how AIG's knowledge and actions can be imputed to Plaintiff.  The Government also does not

allege any material prejudice, which is a required element for both equitable estoppel and laches,

rendering those defenses insufficient as a matter of law.   Moreover, even if AIG was a party or

its knowledge could be attributable to Plaintiff, the Government has failed to make any

allegations concerning the relevance of such knowledge to the allegations of the Complaint.

Thus, the affirmative defenses of equitable estoppel, laches, and waiver fail as a matter of law.

Finally, in asserting the affirmative defenses of equitable estoppel, laches, and waiver, the

Government alleges that at the time it entered into the loan commitment with AIG, it did not

believe that the commitment was contrary to law or exceeded the scope of its authority.  *See*

Answer ¶ 241.  The Government has thereby waived the deliberative process privilege or any

other privilege with respect to documents relating to its intent or understanding of the scope of its

authority in connection with the loan commitment, and those documents must be disclosed to

Plaintiff.  As a result, Plaintiff separately moves to compel production of all documents related to

the Government's knowledge of or communications regarding its authority to take equity

pursuant to Section 13(3) of the Federal Reserve Act.

## ARGUMENT

Under Rule 12(f)(1) the Rules of the United States Court of Federal Claims, the Court

"may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or

scandalous matter . . . on its own initiative" at any time.[1] *See Chou v. Univ. of Chicago*, 254

F.3d 1347, 1366 (Fed. Cir. 2001) (affirming motion to strike "redundant and immaterial"

allegations from pleading).  "When an affirmative defense is unsupportable as a matter of law, it

should be stricken in order to avoid unnecessary litigation on the question." *FDIC v. Ornstein*,

73 F.Supp.2d 277, 279-80 (E.D.N.Y. 1999); *FDIC v. Eckert Seamans Cherin & Mellott*, 754

F.Supp. 22, 23 (E.D.N.Y. 1990) (striking insufficient affirmative defenses where pre-trial

discovery of defenses would take many months and extra cost and delay in bringing the case to

trial was substantial).

---

[1] "Courts have read Rule 12(f) to allow a district court to consider a motion to strike at any point in a case, reasoning that it is considering the issue of its own accord despite the fact that its attention was prompted by an untimely filed motion." *Williams v. Jader Fuel Co. Inc.*, 944 F.2d 1388, 1399 (7th Cir. 1991) (collecting cases) (considering motion to strike affirmative defenses filed more than one year after service of answer); *see also United States v. Lot 65 Pine Meadow*, 976 F.2d 1155, 1157 (8th Cir. 1992) (affirming district court grant of untimely motion to strike affirmative defenses, finding that "the time limitations in Rule 12(f) should not be applied strictly when the motion seems to have merit") (citing 5A Charles Alan Wright & Arthur A. Miller, *Fed. Prac. & Proced.* § 1380, at 652-54 (2d. ed. 1990)); *Nat'l Acceptance Co. of America v. Regal Prods., Inc.*, 155 F.R.D. 631, 634-38 (E.D. Wis. 1994) (granting, in part, motion to strike affirmative defenses filed more than six months after service of answer); *United States v. Wang*, 404 F.Supp.2d 1155, 1157 (N.D. Cal. 2005) (granting, in part, untimely motion to strike affirmative defenses, finding that "courts in other jurisdictions have held that 'a party has the right to challenge the legal sufficiency of a defense at any time' and therefore a court can consider the merits of an untimely motion to strike") (citations omitted) (collecting cases); *Estee Lauder v. Fragrance Counter, Inc.*, 189 F.R.D. 269, 271 (S.D.N.Y. 1999) (considering motion to strike affirmative defenses filed more than three months after service of answer); *SEC v. Nat'l Student Mktg. Corp.*, No. 225-72(CA), 1974 WL 439, *1 (D.D.C. Aug. 23, 1974) (granting motion to strike defenses filed more than one year after service of answer).

Here, Plaintiff will be prejudiced by the inclusion of the insufficient and irrelevant

affirmative defenses asserted in the Government's Answer due to unnecessary delay and expense

in litigating the invalid defenses of which it has no knowledge.  For example, the Government

now seeks discovery from Plaintiff on the Government's own defenses.  *See* Defendant's

30(b)(6) Notice to Plaintiff (Aug. 9, 2013), Topic 9 (seeking 30(b)(6) deposition testimony from

Plaintiff concerning "the indemnification AIG agreed to provide the FRBNY as described in

paragraphs 251 through 254 of the United States' Answer to Starr's Second Amended

Complaint.").   Based both on the irrelevance of the defenses as applied to Plaintiff and the

Government's recent attempts to obtain frivolous discovery from Plaintiff concerning these

defenses, Plaintiff requests that the Court strike the deficient affirmative defenses.  *See Specialty*

*Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 114-15 (S.D.N.Y. 2005) (striking

insufficient affirmative defense where plaintiff would be prejudiced by additional discovery and

length and scope of trial would be expanded); *United States v. Kane Co.*, 668 F. Supp. 2d 146,

150 (D.D.C. 2009) (A motion to strike a defense as insufficient "should be granted where it is

clear that the affirmative defense is irrelevant and frivolous and its removal from the case would

avoid wasting unnecessary time and money litigating the invalid defense.") (citation and

quotations omitted).

I.     **The Affirmative Defenses Of Payment, Contingent Offset/Recoupment, Hold Harmless, And Severability Are Unavailable Against Plaintiff And Must Be Stricken**

The Government asserts four affirmative defenses: payment, contingent

offset/recoupment, hold harmless, and severability.  *See* Answer ¶¶ 240, 251-63.  These defenses

are only available against AIG, which is not a party to this action.  The defense of payment

concerns alleged consideration that AIG received, which does not bar Plaintiff from receiving

compensation for its expropriation claims.  *See id.* ¶ 240.  Similarly, the defense of contingent

4

offset/recoupment concerns potential offsets against AIG, not Plaintiff.  *Id.* ¶¶ 258-63.  The defenses of hold harmless and severability are contractual remedies under the Credit Agreement, to which Plaintiff was not a party and is not enforceable against Plaintiff.  *Id.* ¶¶ 251-57.  These defenses are therefore inapplicable to Plaintiff as a matter of law and must be stricken as they are irrelevant.  *See, e.g.*, *Intex Recreation Corp. v. Team Worldwide Corp.*, 390 F. Supp. 2d 21, 24 (D.D.C. 2005) ("a motion to strike a defense as insufficient should be granted where it is clear that the affirmative defense is irrelevant and frivolous and its removal from the case would avoid wasting unnecessary time and money litigating the invalid defense") (citations and quotations omitted) (collecting cases).

### A.   Plaintiff Has Direct Claims Against The Government To Which Affirmative Defenses Against AIG Are Inapplicable

As the Government is aware, this action is not a derivative action.  *See* Order (June 26, 2013) (Dkt. No. 126) at 25.  In a derivative suit, a shareholder plaintiff asserts claims on behalf of a corporation, and any defense available against the corporation is also available against the shareholder plaintiff.  *See, e.g.*, *Schleiff v. Baltimore & Ohio Railroad Co.*, 130 A.2d 321, 327 (Del. Ch. 1955); *In re Salomon Inc. Shareholders' Derivative Litig.*, No. 91 Civ. 5500 (RPP), 1994 WL 533595, at *4 (S.D.N.Y. Sept. 30, 1994) ("'Stockholders in a derivative action stand in the shoes of the corporation and are subject to the same defenses as are available against the corporation.'") (citations omitted).  This is because a derivative action serves "as a vehicle to enforce a corporate right."  *Schoon v. Smith*, 953 A.2d 196, 202 (Del. 2008); *In re Salomon*, 1994 WL 533595, at *4 (shareholder plaintiffs, "standing in the shoes of the corporation have no rights greater than those of the corporation, nor can those they choose to sue be deprived of defenses they could assert against the corporation's claims.") (quotations omitted).

In contrast, in this action, Plaintiff has brought direct claims against the Government, which are wholly independent of and separate from any claims of AIG.  *See* Order (July 2, 2012) (Dkt. No. 50) at 13 ("the Court finds that Starr has pled facts sufficiently alleging a harm to the suing stockholders *independent of any harm to AIG* and as such, has standing to advance its expropriation claim *directly*") (emphasis added).  The distinction between direct and derivative claims is firmly established.  *See Gatz v. Ponsoldt*, 925 A.2d 1265 (Del. 2007); *Gentile v. Rossette*, 906 A.2d 91 (Del. 2006).  Plaintiff's direct interests in this litigation do not derive from AIG's interests.  Plaintiff has not stepped into the shoes of AIG in bringing this action.  Thus, the affirmative defenses available against AIG do not apply to Plaintiff.  Accordingly, these defenses must be stricken from the Answer so that the parties do not needlessly expend time or resources litigating the irrelevant defenses.  *See United States v. Wang*, 404 F. Supp. 2d 1155, 1157 (N.D. Cal. 2005) (quoting *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983)) ("'the function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial.'").

### B.    This Court Has Previously Found That The Affirmative Defense Of Payment Does Not Bar Plaintiff's Direct Claims

In its Answer, the Government asserts the affirmative defense of payment, claiming that because "AIG received $500,000, plus the lending commitment of the FRBNY, in consideration for 100,000 shares of Series C convertible preferred stock that AIG issued to AIG Credit Facility Trust," Plaintiff and the Classes are not entitled to any additional compensation.  Answer ¶ 240.

The Government asserted substantially the same defense in its Motion to Dismiss, arguing that Plaintiff could not assert a takings claim against the Government because AIG had voluntarily accepted the Government's financing commitment in consideration for the exchange of 79.9% equity interest in AIG stock.  *See* Defendant's Motion to Dismiss, (March 1, 2012)

(Dkt. 30) at 26-30.  Thus, the Government argued there had been no expropriation of property, and no taking as a result.  *Id.*  That is the same defense the Government asserts here – *i.e.*, because AIG purportedly received consideration for the 79.9% interest in AIG stock that the Government held, Plaintiff and the shareholder Classes are not entitled to compensation.

As this Court recognized, however, the expropriation for which Plaintiff is seeking compensation is separate and independent from any alleged AIG's overpayment for the financing commitment from the Government.  *See* Order (July 2, 2012) (Dkt. No. 50) at 14-18.  Plaintiff's claim concerns the expropriation from the Classes of AIG shareholders, and a redistribution to the Government, of a portion of the economic value and voting power embodied in the shareholder Classes' interest of AIG stock.  *See id.* at 18.  This harm is independent from any harm to AIG relating to the overpayment, *see id.* at 14, and is unaffected by any defense that could be asserted against AIG.  The expropriation occurred without any vote (*e.g.,* voluntary acceptance) by the Classes of AIG shareholders and in derogation of their rights.  This harm was unique and individual to the shareholder Classes.  *Id.* at 18.  Thus, any claim of purported consideration received by AIG is irrelevant to Plaintiff's claims.

Because the defense of payment has already been determined by this Court to be irrelevant to Plaintiff's direct claims in this litigation, it must be stricken.  *See FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 390 (E.D.N.Y. 1997) ("An affirmative defense which previously has been rejected on a defendant's motion to dismiss is thereupon insufficient as a matter of law and must be stricken.") (citation omitted).

### C.     The Contingent Offset/Recoupment Defense Is Only Available Against AIG

Similarly, the affirmative defense of contingent offset/recoupment is irrelevant to Plaintiff's direct claims and must also be stricken.  *See* Answer ¶¶ 258-63.  The Government alleges but for its own actions, AIG would have either been taken over by a private consortium

7

or gone bankrupt, which would have resulted in AIG losing a tax benefit called net operating loss carryforwards ("NOLs").  *Id.* ¶ 258.  As stated elsewhere in the affirmative defense, the NOLs belonged to AIG, *id.* ¶ 261, thus the beneficiary of the tax rule changes was AIG.  Plaintiff's direct claims against the Government are unaffected by any offset/recoupment claim potentially available against AIG.  As discussed above, the harm for which Plaintiff and the shareholder Classes are seeking recovery is separate and independent from any harm to AIG.  Thus, any potential offset/recoupment available to AIG is irrelevant to Plaintiff's claims in this action, and must be stricken.

### D.    The Contractual Remedies Of Hold Harmless And Severability Are Not Applicable To Plaintiff, Which Was Not A Party To The Credit Agreement

It is black letter law that contractual remedies are not applicable to a party who is not a party to the contract.  *See Suffolk*, 728 F.2d at 63 ("absent a contractual relationship there can be no contractual remedy") (citation omitted);  *see, e.g., Pacetti v. United States*, 50 Fed. Cl. 239, 244-45 (2001) (officer of corporation, who was not personally a party to the contract, could not seek contractual remedies).[2]

The Government has not alleged any contractual relationship with Plaintiff, but nonetheless asserts the contractual defenses of hold harmless and severability against Plaintiff. These affirmative defenses are expressly based on provisions of the Credit Agreement, to which AIG and the Government – not Plaintiff – were parties.  *See* Credit Agreement §§ 8.05, 8.12. Any purported benefit Plaintiff received as a result of the Credit Agreement was purely incidental as Plaintiff was not an intended beneficiary of the Credit Agreement.  *See Suffolk*

---

[2] Section 8.07 of the Credit Agreement provides: "THIS AGREEMENT AND THE OTHER LOAN DOCUMENTS SHALL BE CONSTRUED IN ACCORDANCE WITH AND GOVERNED BY THE LAWS OF THE STATE OF NEW YORK."  Accordingly, the availability of contractual remedies under the Credit Agreement will be analyzed under New York law.

*Cty.,* 728 F.2d at 63 ("It is ancient law in New York that to succeed on a third party beneficiary theory, a non-party must be the intended beneficiary of the contract, not an incidental beneficiary to whom no duty is owed."); *Ogden Dev. Corp. v. Fed. Ins. Co.*, 508 F.2d 583, 588 (2d Cir. 1974) ("a contract is to be enforced only by those who are parties to it and by those who are its direct beneficiaries").

As Plaintiff owes no duty under the Credit Agreement to indemnify the Government or hold the Government harmless and the severability provision of the Credit Agreement is not enforceable against Plaintiff. *See Robo Wash, Inc. v. United States*, 223 Ct. Cl. 693, 697-98 (1980) (finding no privity of contract between stockholder and the government, where contract was between corporation and the government and stockholder was not a party to the contract). The affirmative defenses of hold harmless and severability are therefore insufficient as a matter of law and must be stricken from the Answer.

## II.     The Affirmative Defenses Of Equitable Estoppel, Laches, And Waiver Are Insufficient As A Matter Of Law

### A.     The Defenses Are Irrelevant Because AIG's Knowledge Cannot Be Imputed To Plaintiff

The affirmative defenses of equitable estoppel, laches, and waiver asserted by the Government are insufficient as a matter of law because they rely upon AIG's knowledge and AIG's actions. *See* Answer ¶¶ 241-50.  In particular, the Government alleges that Plaintiff and the Classes have no claim because: (1) AIG knew that it was obligated to provide 79.9% equity in exchange for obtaining the financing commitment from the Government, *id.* ¶ 242; (2) AIG knew that by agreeing to the contractual terms with the Government, it would proceed with the financing commitment, *id.* ¶ 244; (3) AIG did not object to the terms of the contractual agreement with the Government, *id.* ¶¶ 245-46, 249; and (4) AIG performed under the contractual agreement with the Government and accepted the Government's performance under

the agreement.  *Id.* ¶ 247.  Actions by and knowledge attributable to AIG cannot be imputed to Plaintiff, however.

As discussed above, Plaintiff was not a party to the contractual agreement between AIG and the Government.  Moreover, there is no allegation that Plaintiff controlled AIG or directed AIG's actions.  *See In re Splash Tech. Holdings, Inc. Secs. Litig.*, No. C 99-00109 SBA, 2000 WL 1727405, *9-11 (N.D. Cal. Sept. 29, 2000) (declining to impute knowledge of corporation to minority shareholder who was not an officer of the corporation nor a corporate insider).  Nor did a principal-agent relationship exist between Plaintiff and AIG, whereby AIG acted as Plaintiff's agent in entering into the financing commitment.  *See In re Soulbury Ltd.*, 554 F.3d 123, 129 (D.D.C. 2009) (where corporation did not act as shareholder's agent, corporation's knowledge could not be imputed to shareholder "on the principle that notice to an agent is imputed to the principal").  Thus, the knowledge and actions of AIG alleged by the Government in support of the affirmative defenses of equitable estoppel, laches, and waiver must be stricken as they are irrelevant to Plaintiff's claims and actions.

**B.      The Affirmative Defenses of Equitable Estoppel and Laches Are Also Insufficient As A Matter Of Law Because The Government Fails To Allege Material Prejudice**

Although laches and estoppel are separate defenses, the Government relies on the same allegations to support both defenses.  *See* Answer ¶¶ 241-50.  To assert either equitable estoppel or laches defenses, a party "must introduce evidence of some damage or prejudice suffered by it as a direct result of the [alleged delay in asserting a claim]."  *Simmonds Precision Prods., Inc. v. United States*, 546 F.2d 886, 892 (Ct. Cl. 1976) (rejecting affirmative defense of equitable estoppel where party presented no evidence of damage or prejudice suffered by it); *Lincoln Logs Ltd. v. Lincoln Pre-Cut Log Homes, Inc.,* 971 F.2d 732, 734 (Fed. Cir. 1992) (material prejudice is required element to assert equitable estoppel and for laches); *Southern Railway Co. v. United*

*States,* 228 Ct. Cl. 712, 715 n.3 (1981) (To assert equitable estoppel defense, a party provided

with a false statement or from whom material facts were concealed must establish that it "relied

on or acted on [the information] to his prejudice."); *Gasser Chair Co., Inc. v. Infanti Chair Mfg.*

*Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995) (In laches defense, defendant must establish that "(1)

that the plaintiff delayed filing suit an unreasonable and inexcusable length of time after the

plaintiff knew or reasonably should have known of its claim against the defendant; and (2) the

delay resulted in material prejudice or injury to the defendant." ); *S.E.R., Jobs for Progress, Inc.*

*v. United States*, 759 F.2d 1, 5-6 (Fed. Cir. 1985) (a showing of prejudice to the party asserting

laches is a required element of the defense).

　　　"[A]n affirmative defense must include either direct or inferential allegations respecting

all elements of the claim asserted, and bare legal conclusions do not suffice." *In re Kochan*, No.

12-00191, 2012 WL 5384199, *1-2 (Bkrtcy. D. Dist. Cl. Nov. 1, 2012) (striking defenses that

were "no more than bare legal conclusions" that did not "suffice to put the plaintiffs on notice of

the affirmative defenses"); *Nat'l Acceptance Co. of America v. Regal Prods., Inc.*, 155 F.R.D.

631, 637 (E.D. Wis. 1994) (holding that affirmative defenses will be struck if "they 'are

conclusory and fail to state any facts upon which they are based'");[3] *Coach, Inc. v. Kmart*

*Corps.*, 756 F. Supp. 2d 421, 425 (S.D.N.Y. 2010) ("conclusory assertions, absent any

supporting factual allegations are insufficient as a matter of law and fail to provide a plaintiff

with any notice as to how the defense applies to the plaintiff's claims"); *see also* R.C.F.C.

8(b)(1)(A) ("a party must state in short and plain terms its defenses").

---

[3] *Id.* ("Affirmative defenses are pleadings and must comport to the rules of pleadings.  Thus, in pleading its affirmative defense, [defendant] is obligated to set forth ''a short and plain statement' of the nature of the offense.'  Asserting mere conclusions of law without supporting facts does not satisfy this obligation.") (citations omitted).

Here, the Government has not only failed to allege Plaintiff's knowledge and actions – rather than AIG's – but the Government has also not alleged any prejudice other than a conclusory assertion that "Starr's failure to complain in a timely fashion . . . prejudiced the Financing Entities and the Government."  Answer ¶ 250.  Not only is this assertion insufficient to provide Plaintiff with notice as to the basis of the Government's defense, but the Government has made no allegations of any resulting harm to it from the purported prejudice.  *See Gasser Chair,* 60 F.3d at 776 (finding conclusory assertion of reliance insufficient for defense of equitable estoppel); *Global Poly Inc. v. Fred's Inc.*, No. 03 C 4561, 2004 WL 532844, *5 (N.D. Ill. Mar. 11, 2004) ("An affirmative defense must notify the plaintiff of the nature of the defense.").  The Government's failure to proffer a single fact in support of its defenses that evidences prejudice is fatal to those defenses.  *See Coach*, 756 F.Supp.2d at 426-27 (striking estoppel defense where there was "no indication that the Defendants relied, to their detriment or otherwise, on any conduct by the Plaintiffs").

Because the Government has not asserted any facts or conduct attributable to Plaintiff and the Classes and has made no allegations concerning prejudice based on Plaintiff's conduct, its affirmative defenses of equitable estoppel, laches, and waiver cannot stand.

### III.  The Government Has Waived Any Claim Of Privilege By Putting Its Intent And Understanding Of The Scope Of Its Authority At Issue

In asserting the affirmative defenses of equitable estoppel, laches, and waiver, the Government avers that at the time it entered into the contractual agreement with AIG, it "did not believe that the terms of AIG's rescue constituted a taking of property without just compensation or an illegal exaction."  Answer ¶ 242.  This directly puts the Government's knowledge of the legality or illegality of its asserted Federal Reserve Act § 13(3) authority at issue.  By putting its intent and its understanding of the scope of its authority at issue, the Government has waived

deliberative process and attorney-client privilege over documents concerning the Government's knowledge of its authority to take 79.9% equity in AIG or to propound the Term Sheet and Credit Agreement, including, among other things, any discussion of whether the Government could receive equity; the insertion of terms related to the equity interest in the Term Sheet and Credit Agreement; and any advice, discussion, or other communication by, amongst, or between lawyers and/or non-lawyers concerning such authority.  These documents are also relevant to Plaintiff's claims of illegal exaction, which turn on the illegality of the Government's conduct. Yet, the Government continues to prevent documents concerning the Government's knowledge of the legality of its conduct from production in this case through the blanket assertion of deliberative process privilege.

The deliberative process privilege protects "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Confidential Informant 59-05071 v. United States*, 108 Fed. Cl. 121, 131 (2012) (citation and quotations omitted).  "[T]he burden is on the government to show that the privilege protects the documents that it seeks to withhold from discovery." *Id.* (citation omitted).  "[C]ourts have noted that when the government is a party and asserts the privilege, the '[g]overnment's stake in [the] litigation means that its invocation of the deliberative process privilege must be carefully scrutinized to ensure that the privilege retains its proper narrow scope.'" *Sikorsky Aircraft Corp. v. United States*, 106 Fed. Cl. 571, 579 (2012) (citation omitted) (alterations in original).

By affirmatively choosing to put the Government's knowledge of its own authority at issue, questions of the Government's intent and understanding of the scope of its authority to enter into the loan commitment with AIG and documents relating to those questions become

directly relevant to this litigation.  *See, e.g., id.* at 579-80 ("The government may waive the deliberative process privilege . . . by placing a portion of [the] privileged material at issue while self-servingly retaining the rest").  The Government cannot selectively assert its defense of lack of knowledge without providing any means for that defense to be tested.  *See Scott v. Bd. of Educ. of City of E. Orange*, 219 F.R.D. 333, 337 (D.N.J. 2004) ("when the deliberations of a government agency are at issue, the Privilege is not available to bar disclosure of such deliberations"); *see also In re Subpoena Duces Tecum Served on the Office of the Comptroller of the Currency*, 145 F.3d 1422, 1424 (D.C. Cir. 1998) ("If the plaintiff's cause of action is directed at the government's intent, however, it makes no sense to permit the government to use the privilege as a shield.").

Any potential for harm to the Government due to disclosure of the documents is minimal. The Government voluntarily undertook to put its own knowledge of its actions at issue.  The documents are subject to the March 18, 2013 Amended Protective Order entered in this action and will not be publicly disclosed.  In addition, the documents are specific to Plaintiff's claims and the defenses of the Government in this action, and concern matters that occurred five years ago.  As a result, disclosure is unlikely to cause any public confusion or lead to additional challenges to the Government's authority to enter into the financing commitment with AIG. Accordingly, the Government should be compelled to disclose those documents to Plaintiff. "[W]hen the Government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over, thus allowing the government to 'play with defendant's hole card upturned and its hole card down under any claim of governmental or executive privilege.'"  *EEOC v. Citizens Bank & Trust Co. of Md.*, 117 F.R.D. 366, 366 (E.D. Md. 1987) (citation omitted); *see Confidential Informant*, 108 Fed. Cl. at

142 (finding that deliberative process privilege did not shield documents directly relevant to the case); *In re Subpoena Duces Tecum*, 145 F.3d at 1424, *reh'g granted*, 156 F.3d 1279 (D.C. Cir. 1998) (holding that deliberative process privilege could not be asserted by Federal Reserve Board and Office of the Comptroller of Currency "when cause of action turns on the government's intent").

Accordingly, the Government should be compelled to disclose any documents concerning the scope of its authority to make the loan commitment to AIG or to demand equity as a condition to the loan as embodied in the Term Sheet and Credit Agreement, as well as any changes to the Government's understanding of its authority.  Such discovery is necessary both for the Government to prove its affirmative defense and for Plaintiff to rebut it.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that its motion to strike all of the Government's affirmative defenses and to compel production of documents withheld by the Government relating to its intent and understanding regarding the scope of its authority in connection with the loan commitment to AIG be granted.

Dated: September 11, 2013
         New York, New York


                              Respectfully submitted,

                              BOIES, SCHILLER & FLEXNER LLP


                    By      /s/ David Boies
                            David Boies
                            Attorney of Record
                            333 Main Street
                            Armonk, NY 10504
                            Tel. (914) 749-8200

15

Fax (914) 749-8300
Email: dboies@bsfllp.com

*Counsel for Plaintiff Starr International Company,*
*Inc. and for the Plaintiff Class*

OF COUNSEL:

BOIES, SCHILLER & FLEXNER LLP

Robert J. Dwyer
Alanna C. Rutherford
Julia C. Hamilton
575 Lexington Avenue
New York, NY 10022
Telephone:  (212) 446-2300

Hamish P. M. Hume
Samuel C. Kaplan
5301 Wisconsin Avenue, NW
Washington, DC 20015
Telephone:  (202) 237-2727

SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

John L. Gardiner
Four Times Square
New York, NY 10036
Telephone:  (212) 735-3000