# In the United States Court of Federal Claims

No. 11-779C

(Filed: November 6, 2013)

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

|  |  |
|---|---|
| STARR INTERNATIONAL COMPANY, INC., on its behalf and on behalf of a class of others similarly situated, | \* \* \* \* |
| | \* |
| Plaintiff, | \* |
| | \* |
| v. | \* |
| | \* |
| THE UNITED STATES, | \* |
| | \* |
| Defendant. | \* |
| | \* |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

## DISCOVERY ORDER NO. 6

On October 16-17, 2013, pursuant to special procedures adopted in this case, Plaintiff Starr International Company, Inc. ("Starr") and the United States filed two joint status reports ("JSRs") raising discovery issues to be resolved by the Court.  Starr also filed a similar JSR with non-party Federal Reserve Bank of New York ("FRBNY") on October 16, 2013 raising discovery disputes between those two entities.  Relatedly, Starr filed a motion to compel on September 11, 2013 arguing that the Government had waived the attorney-client and deliberative process privileges to the extent that the Government has put its knowledge of the legality of its own actions at issue.  This discovery order addresses all remaining discovery disputes raised in the JSRs as well as Starr's motion to compel, except that Starr's motion to strike Defendant's affirmative defenses will be covered in a separate order.

According to an October 25, 2013 submission from Defendant (Dkt. No. 177), the Government has withheld or redacted during discovery approximately 9,000 documents under claims of the attorney-client privilege and over 2,600 documents based on the deliberative process privilege.  Given this volume of withheld or redacted documents, the Court cannot make document-by-document privilege determinations, and the parties have not requested such determinations.  Instead, the Court is providing guidance on the

disputes raised by the parties with the intention that the parties will be able to reach agreement on most disputed documents and minimize or eliminate the need for *in camera* review.

      I.      <u>The Government's Assertion of the Attorney-Client Privilege</u>

          A.  <u>The Government Waived the Attorney-Client Privilege to the Extent that it Has Raised the Legality of its Actions as an Affirmative Defense.</u>

      Starr seeks to compel disclosure of documents under the "at-issue" implied waiver that was first articulated in <u>Hearn v. Rhay</u>, 68 F.R.D. 574, 581 (E.D. Wash. 1975), and applied in several decisions of our Court. <u>See</u> <u>Eden Isle Marina, Inc. v. United States</u>, 89 Fed. Cl. 480, 521–23 (2009); <u>Blue Lake Forest Prods., Inc. v. United States</u>, 75 Fed. Cl. 779, 782–86 (2007). Under this doctrine, an implied waiver of the attorney-client privilege occurs when: (1) assertion of the privilege was the result of some affirmative act; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would deny the opposing party access to information vital to his claim or defense. <u>Hearn</u>, 68 F.R.D. at 581. Here, the <u>Hearn</u> test has been met. The Government took an affirmative act when it raised the following defense:

> At the time the FRBNY entered into a contractual rescue of AIG, the FRBNY, the Board of Governors of the Federal Reserve System, and the Department of the Treasury (collectively referenced for purposes of pleading defenses as "Financing Entities") did not believe that the terms of AIG's rescue constituted a taking of property without just compensation or an illegal exaction.

Answer ¶ 241. By choosing to put the Government's knowledge of its own authority under Section 13(3) of the Federal Reserve Act[1] at issue, questions of the Government's intent and understanding of the scope of its authority to enter into the loan commitment are directly relevant to this litigation. Such information is important to Starr's claim, and Starr must be allowed to examine the privileged communications to assess the validity of the Government's defense.

      Accordingly, the Government has waived the attorney-client privilege as to communications that discuss the Government's authority under the Federal Reserve Act to rescue AIG under Section 13(3). The Government must produce documents relating to its intent or understanding of its authority to bail out and take equity in AIG. This

---

[1] 12 U.S.C. § 343 (amended 2010).

includes: (1) the Government's knowledge of its authority to take 79.9% equity in AIG; (2) the Government's knowledge of its authority to propound the Term Sheet and Credit Agreement, including any discussion of whether the Government could receive equity; and (3) discussion about the provisions related to the equity interest in the Term Sheet and Credit Agreement.

This finding does not amount to a blanket waiver of the attorney-client privilege covering all communications. The Court recognizes that there are communications made for the purpose of obtaining legal advice on relevant issues other than the Government's authority under Section 13(3). The following sections provide guidance on the remaining attorney-client and work product privilege disputes between the parties.

   B.   The Government Properly Asserted the Attorney-Client Privilege as to Draft Talking Points and Draft Questions and Answers.

The Government has withheld communications with lawyers concerning draft talking points, draft press releases, draft questions and answers ("Q&As"), and draft responses to press inquiries. Starr argues that the Government waived the attorney-client privilege over such documents when it failed to assert the privilege in a separate proceeding, Fox News Network, LLC v. United States Department of the Treasury, 739 F. Supp. 2d 515, 542 (S.D.N.Y. 2010). In Fox News, the plaintiff sought records from the Government under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA") related to the intervention of the federal Government in 2008 to prevent the impending financial collapse of AIG and Citigroup, Inc. Id. The district court determined that three specific emails were not covered by the deliberative process privilege and ordered that the emails be produced. The Government determined that these emails did not contain legal advice, and so the Government did not invoke the attorney-client privilege. The fact that those particular emails did not contain legal advice does not mean that the Government cannot assert the attorney-client privilege for similar emails that do contain legal advice. Such draft talking points and draft Q&As are like any other communication, and are protected by the attorney-client privilege if the documents seek, reflect, or are made for the purpose of requesting or providing legal advice. See, e.g., Chevron U.S.A., Inc. v. United States, 83 Fed. Cl. 313, App'x (2008). Therefore, the Court finds that the attorney-client privilege was properly applied to such communications as Ex. 12, Entry 4946 (communication between FRBNY Chief of Staff and Treasury advisor reflecting legal advice concerning draft press release on "transaction structure") unless otherwise waived.

   C.   The Common Interest Doctrine Covers Communications among Treasury, Board of Governors, and FRBNY Counsel and Employees.

The common interest doctrine is an exception to the general rule that the attorney-client privilege does not apply to communications that are made to or in the presence of third parties. The common interest doctrine has the effect of widening the circle of

persons to whom clients may disclose privileged information.  However, the doctrine is limited to persons or entities that share a common legal interest.  In re Regents of Univ. of California, 101 F.3d 1386, 1389 (Fed. Cir. 1996) (recognizing the protection of communications among persons or corporations allied in a common legal cause).  The doctrine does not cover persons or entities that merely share a common economic, financial, or commercial interest.  Duplan Corp. v. Deering Milliken, 397 F.Supp. 1146, 1164 (D.S.C. 1974) (common interest exists among persons where they have an identical legal interest with respect to the subject matter of a communication between an attorney and a client concerning legal advice).

Here, the Government asserts that communications among Treasury, the Board of Governors, and FRBNY fall under the common interest doctrine.  Starr maintains that the interest was purely commercial and so the doctrine does not apply.  The Court however finds that these entities shared a common legal interest.  The Government's rescue of AIG involved several complex transactions over a multiyear period, and these entities shared many legal interests over that time including the legal goal of utilizing statutory authority to stabilize the economy.  The court in Fox News reached the same conclusion when it found that Treasury and FRBNY shared a common legal interest based on their coordinated legal strategy.  Fox News, 739 F. Supp. 2d at 563.  As a result, the Court finds that the common interest doctrine applies to communications among Treasury, the Board of Governors, and FRBNY.  For instance, documents such as Ex. 32 (FRB018-01171545 (communication between Board counsel and Treasury counsel containing legal advice "regarding Treasury actions in restructuring aid to AIG") will be privileged unless waived on other grounds.

> D. The Attorney-Client Privilege is Waived for Documents Disclosed to Congressional or Investigative Panels.

The next issue is whether the Government waived the attorney-client privilege with respect to documents it produced to Congress under a subpoena, given that the Government did not at that time contest the disclosure by invoking the attorney-client privilege.  Starr contends that permitting the Government to invoke the attorney-client privilege to prevent disclosure here would amount to permitting a selective waiver.  The Court agrees.

A party waives the attorney-client privilege for any document it has voluntarily produced to a third party.  Genetech, Inc. v. United States Intern. Trade Com'n, 122 F.3d 1409, 1416 (Fed. Cir. 1997).  Once waived, the privilege "is generally lost for all purposes and in all forums."  Id. at 1416.  This Court has previously held that a federal agency's voluntary submission of allegedly privileged material to Congress, even when required by law, waives the attorney-client privilege with respect to all attorney-client communications concerning the same subject that were exchanged prior to those submissions.  First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 319 (2000).

Whether the Government is under a subpoena, as here, or a statutory requirement, as in First Heights, the Government cannot assert attorney-client privilege over documents it has voluntarily submitted to Congress. The submissions at issue here were voluntary because the Government could have invoked the attorney-client privilege to contest the subpoena, but did not. Further, the Government could have redacted its submissions to protect the confidentiality of the attorney-client communications, but did not. The Government therefore waived the attorney-client privilege with respect to those communications. Thus, all documents on the Government's August 30, 2013 Congressional Oversight Panel Privilege Log, as well as any other withheld or redacted documents provided to Congressional investigators or the Financial Crisis Inquiry Commission must be produced.

> E.  Sharing Privileged Communications with Consultants Did Not Waive the Attorney-Client Privilege.

Some confidential communications exchanged between a third-party Government consultant and the Government are entitled to the protection of the attorney-client privilege. Id. Importantly, the attorney-client privilege protects only those communications that are indispensable to the provision of legal counsel. Id. at 426-427 (quoting Louisiana Municipal Police Employees Retirement Sys. v. Sealed Air Corp., 253 F.R.D. 300, 312 (D.N.J. 2008)). Such confidential communications, even those between a sub-consultant and a Government consultant, are considered "intra-agency" communications and thus subject to the attorney-client privilege. See Fox News, 739 F. Supp. 2d at 540 (citing Tigue v. United States Dept. of Justice, 312 F.3d 70, 80 (2d Cir. 2002)). Therefore, unless otherwise waived, the attorney-client privilege protects from disclosure those communications with Government consultants made for the purpose of providing legal services.

While the attorney-client privilege attaches to certain confidential communications between the Government and its consultants and sub-consultants, it is necessary to determine whether in this case there was such a relationship and, if so, when the relationship was established. With respect to Morgan Stanley, Starr and the Government disagree as to when, if at all, the working relationship triggering the attorney-client privilege was established. Emphasizing the formalities of privity, Starr contends that the relationship could not have been established until October 16, 2008, when Morgan Stanley and FRBNY entered into a formal retainer agreement. The Government counters that the relationship was initiated in September 2008 when Morgan Stanley was "'on site' at AIG . . . to inform Treasury officials about AIG's situation." Fox News, 739 F. Supp 2d at 552. In this capacity, Morgan Stanley "functioned" as a consultant to FRBNY, which, in turn, functioned as a consultant to the Treasury. Id. at 540 & n.5. The Court agrees that formal privity is not a precondition for the protection of the attorney-client privilege. "[W]hat matters is the nature of the relationships between the consultant and the agency, not the formalities observed." Nat'l Inst. of Military Justice v. U.S. Dep't of

Def., 512 F.3d 677, 687 (D.C. Cir. 2008).  As the Supreme Court held in Klamath, the "consultant corollary" is intended to protect communications in which the Government consultant "functions just as an employee would be expected to do." Dep't of Interior v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 11 (2001).  Accordingly, the attorney-client privilege covers communications between Morgan Stanley and the Government in which Morgan Stanley functioned as a consultant for the purpose of enabling the provision of legal advice.

Starr asserts that the Government overreached in its interpretation of the scope of the attorney-client privilege as it pertains to communications involving Government consultants, particularly Morgan Stanley.  On this subject, the Court is mindful that of the five documents Starr enumerated as not falling within the attorney-client privilege, the Government conceded that all five were not privileged.  It therefore bears repeating that the attorney-client privilege protects no more than those third-party communications identified by the Government involving the requesting or receiving of legal advice.

II.     The Government's Assertion of the Deliberative Process Privilege

A.  The Deliberative Process Privilege is Unavailable to the Extent that the Government's Decision-Making Process and Intent is the Subject of the Litigation.

The deliberative process privilege is a shield which the executive branch may use to deflect public scrutiny away from its internal decision making process.  The privilege encourages candid discussions of policy options within Government agencies and protects against the premature disclosure of proposed policies.  NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151 (1975).

However, the deliberative process privilege is unavailable to the Government when a plaintiff's cause of action is directed at an agency's subjective motivation.  In re Subpoena Duces Tecum Served on Office of Comptroller of Currency, 156 F.3d 1279 (D.C. Cir. 1998).  Here, the Government's decision-making process and intent is the subject of the litigation.  Starr's taking and illegal exaction claims are based on a theory that the Government coerced AIG into accepting the terms of the bailout.  Starr further alleges that the Government did not have the legal authority to take an equity stake in AIG.  The Government responds to Starr's allegations by raising the affirmative defense that the Government did not believe that the terms of AIG's rescue constituted a taking of property without just compensation or an illegal exaction.  Thus, the theory of Starr's claim, and the affirmative defense raised by the Government, places at issue the knowledge of the relevant Government representatives and precisely what was discussed among them concerning the legality of the AIG bailout.  When a plaintiff's cause of action is directed at the Government's intent, as it is here, the Government cannot use the privilege as a shield.

Accordingly, the Court finds that the Government has waived the deliberative process privilege over deliberations that address the following topics: (1) the scope of the Government's authority to make the loan commitment to AIG; (2) the Government's authority to demand equity as a condition to the loan as embodied in the Term Sheet and Credit Agreement; (3) changes to the Government's understanding of its authority under Section 13(3); and (4) discussions on whether the Government intended for the terms of the bailout to be punitive.

This conclusion does not amount to a blanket waiver of the deliberative-process privilege over all communications. Indeed, courts have declined to find a blanket waiver of the deliberative process privilege even in cases where the Government's intent is relevant. See, e.g., First Heights Bank, FSB v. United States, 46 Fed. Cl. 312, 321 (2000) (citing Zenith Radio Corp. v. United States, 764 F.2d 1577, 1580 (Fed.Cir.1985)). Even though the Government has waived the deliberative process privilege for topics 1-4 above, it may still assert the privilege for Government decision-making documents that are "collateral" to Starr's claim. In re Subpoena Duces Tecum, 156 F.3d at 1279 (recognizing that the privilege is not defeated when the governmental decision-making is collateral to the plaintiffs' suit).

Since the Government can still raise the privilege over collateral deliberations, the Court's findings in Section II.A above may not resolve all outstanding discovery disputes. Accordingly, the following sections will provide further guidance on the outstanding disputes relating to the deliberative process privilege.

B. The Government has Provided Sufficient Detail in the Privilege Log.

The Government has the burden to prove for each document or redaction that the deliberative process privilege applies. Vaughn v. Rosen, 523 F.2d 1136, 1144-47 (D.C. Cir. 1975). In order to meet the requirements of Vaughn, the withholding party must provide a log with descriptions of withheld documents, so that a court and the challenging party have a measure of access without exposing the withheld information. Elec. Frontier Found. v. U.S. Dep't of Justice, 826 F. Supp. 2d 157, 164 (D.D.C. 2011). Furthermore, RCFC 26(b)(5)(A) requires that the log must "describe the nature of the documents, communications, or tangible things not produced or disclosed – and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." The Court finds that this standard has been met here.

Starr argues that the Government's assertions of the deliberative process privilege in the privilege log lack sufficient detail. There is no set formula for such a log. Rather, it is the function, not the form, that is important. Vaughn v. United States, 936 F.2d 862, 867 (6th Cir. 1991). Here, the Government has provided a privilege log along with a declaration from the Treasury Department's Executive Secretary, Rebecca Ewing ("Ewing Declaration") and an accompanying appendix. When read in conjunction with

the Ewing Declaration, the appendix connects logged documents to policy decisions.  The Court finds that taken together, these documents provide sufficient detail (the date, source, recipient, subject matter and nature of each document) to permit Starr to argue effectively against the privilege, and for the Court to assess the applicability of the privilege.

Starr also alleges that the Ewing Declaration was untimely because it was not provided along with the first document productions.  The fact that the Ewing Declaration was produced after the first privilege log is not enough to defeat the Government's claim of the deliberative process privilege.  Pac. Gas & Elec. Co. v. United States, 71 Fed. Cl. 205, 208-210 (2006) (holding that the privilege was supported by an affidavit executed after the documents had been identified and withheld).  Starr also claims that the Government failed to meet its burden of establishing what deliberative process is involved, and the role played by the documents at issue in the course of that process.  This criticism is not valid.  This Court has held that the agency invoking the privilege over a document does not need to identify a specific policy decision for which a document was prepared.  Dairyland Power Co-op. v. United States, 77 Fed. Cl. 330, 337 (2007).  See also, NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 153 n. 18, (1975) ("Agencies are, and properly should be, engaged in a continuing process of examining their policies; this process will generate memoranda containing recommendations which do not ripen into agency decisions; and the lower courts should be wary of interfering with this process.").  For these reasons, the Court finds that the Government's privilege log is sufficient.

C.  The Government May Only Assert the Deliberative Process Privilege where the Strict Requirements for the Assertion of the Privilege have been Met.

To invoke the deliberative process privilege, the Government must first meet two prerequisites—the communication it seeks to protect must be (1) predecisional and (2) deliberative.  Jordan v. U.S. Dept. of Justice, 591 F.2d 753, 774 (D.C. Cir. 1978).  Material is pre-decisional if it addresses activities "antecedent to the adoption of an agency policy," and material is deliberative if it addresses "a direct part of the deliberative process in that it makes recommendations or expresses opinions on legal or policy matters."  Walsky Constr. Co. v. United States, 20 Cl. Ct. 317, 320 (1990).

The information contained in the privilege logs suggests that the Government has invoked this privilege over documents that do not meet the strict requirements.  For instance, the Government has asserted the deliberative process privilege for a chronology of events drafted as an aide-memoire for former Treasury Secretary Timothy Geithner's forthcoming book about the financial crisis.  Such a timeline is not protected by the privilege because it is not a pre-decisional document, nor is it part of the give-and-take of

the deliberative process.  Vaughn, 523 F.2d at 1143.  The Government cannot invoke the privilege for documents that fail to meet the privilege's strict requirements.

The Government has also invoked the deliberative process privilege for a number of draft press releases.  Ultimately, such privilege determinations need to be made on a document-by-document basis, but it strikes the Court that the Government may have been overbroad in its privilege designations.  Such documents are only properly withheld if their release would reveal the status of "internal deliberations on substantive policy matters."  Fox News, 739 F. Supp. 2d at 545.  The Government suggests that all draft press releases are "pre-decisional" because the drafts are created prior to the issuance of an official press release.  However, edits to garden-variety press releases do not qualify as deliberations because the question of how to communicate the Government's policies is not itself a policy decision.  Likewise, communications regarding how to present agency policies to Congress or the Government Accountability Office ('GAO') "typically do not relate to the type of substantive policy decisions Congress intended to enhance through frank discussion."  Id.

The Government should only invoke the privilege for deliberations on substantive policy decisions.  Id.  For instance, in Fox News the court found that a draft of a press release was properly privileged when its release would reveal how Treasury's deliberations with respect to the underlying substantive policy progressed over the course of several days.  Id.  Only documents containing deliberations on substantive policy decisions may be privileged, and any others must be released in full.

### D.  The Government's Communications Involved Policy Considerations.

Starr argues that predecisional deliberations about the AIG bailout involved commercial issues and were not policy considerations worthy of the deliberative process privilege.  But the bailout of AIG was not a commonplace commercial transaction.  Excerpts from the Ewing Declaration confirm that the Government's transaction with AIG contained commercial elements, but also that this transaction took place amid a vigorous policy debate surrounding the Government's response to an historic financial crisis.

The Court therefore agrees with the finding in Fox News that "[a]lthough decisions about the terms of a financial transaction may not be typical of those made by a federal agency, the decisions that Treasury made regarding the use of TARP monies" are clearly "policy decisions."  Fox News, 739 F. Supp. 2d at 542.  Thus, the fact that these transactions had a commercial element does not mean that the privilege is waived.  Nonetheless, the Court believes that many of the deliberations about the details of the AIG bailout likely touch on the topics listed in Section II.A above and would be subject to a waiver.

E. The Public Scrutiny of the Government's Decision to Rescue AIG does not
   Negate the Deliberative Process Privilege.

Starr also claims that the Government's invocation of the deliberative process privilege is unrealistic given the intense public scrutiny to which the Government's decisions and conduct at issue in this case have been subjected.  It is true that the Government's decision to rescue AIG has received significant public attention. Government officials have testified before Congress, given speeches, and are writing books purporting to reveal the full story about the financial crisis.  Just because the public has insight into some deliberations does not result in a blanket waiver of the deliberative process privilege.  As the Government rightly notes, there is no subject-matter waiver associated with the deliberative process privilege.  Ford Motor Co. v. United States, 94 Fed. Cl. 211, 218 (2010). The Government's release of a document waives the privilege only for the document specifically released, not for related materials.

F. The Government must Demonstrate that it took Reasonable Steps to Protect
   the Privilege Over the "Treasury Docs".

Starr requests documents in Mr. Geithner's possession from his time as Secretary of the Treasury ("Treasury Docs") that the United States seeks to protect from disclosure based on the deliberative process privilege.  Mr. Geithner has shared the contents of the documents with the journalists assisting him on his book.  Yet the deliberative process privilege belongs to the United States and not to Mr. Geithner. The question then is whether the United States took reasonable steps to protect the privilege.  See United States v. de la Jara, 973 F.2d 746, 750 (9th Cir. 1992) (finding that the privilege is waived if the privilege holder failed to make efforts "reasonably designed" to protect and preserve the privilege). According to the Government, the Treasury provided the Treasury Docs to Mr. Geithner pursuant to a confidentiality agreement.  Based on the record before the Court, it is not clear when the Government learned that Mr. Geithner had shared the Treasury Docs with a third party, nor is it clear what steps the Government took upon learning that these documents had been disclosed. The Government will need to provide such information in order to invoke the deliberative process privilege over the Treasury Docs.

G. The Deliberative Process Privilege may Apply to Government
   Deliberations Subsequent to the Initial Rescue of AIG.

Starr asserts that the Government cannot invoke the deliberative process privilege for communications post-dating the initial September 2008 rescue of AIG.  While Starr is right that the Government cannot withhold post-decisional documents that are designed to explain Government decisions that have already been made, NLRB v. Sears, Roebuck & Co., 421 U.S. 132, 151-52 (1975), the Government can withhold documents created

after a decision which recount pre-decisional deliberations. <u>Ford Motor</u>, 94 Fed. Cl. at 223. As such, communications about pre-adoption deliberations on a proposed action are privileged unless that privilege has been waived for other purposes. Conversely, documents that simply explain decisions that have already been made must be produced to Starr. If specific documents contain communications about both pre-decisional and post-decisional deliberations, then the Government should redact the privileged material and produce the material that is not privileged.

> H.   <u>The Ewing Declaration's Assertions of the Deliberative Process Privilege over FRBNY Deliberations are Procedurally Sound.</u>

According to Starr, Treasury's attempt to assert the deliberative process privilege for documents generated by other entities, such as FRBNY, is procedurally defective. To invoke the deliberative process privilege, the party resisting discovery must meet several procedural requirements: first, the head of the agency that has control over the requested document must assert the privilege after personal consideration, or alternatively, the head of an agency can delegate authority to invoke the deliberative process privilege on the agency's behalf; and second, the party seeking protection must state with particularity what information is subject to the privilege. <u>Pac. Gas & Elec. Co. v. United States</u>, 70 Fed. Cl. 128 *modified on reconsideration*, 71 Fed. Cl. 205 (2006). Here, Treasury has met the basic requirements. Secretary of the Treasury Jacob Lew delegated authority to invoke the deliberative process privilege on Treasury's behalf to Executive Secretary of the Treasury Rebecca Ewing. The Ewing Declaration provides detailed criteria for claiming the deliberative process privilege.

Further, Starr cites no authority for the proposition that Treasury may not invoke the deliberative process privilege over documents in Treasury's control that reflect FRBNY's internal deliberations. The Government finds support in <u>Fox News</u> where the district court found that Treasury could assert the privilege over documents reflecting deliberations of the Federal Reserve Board. <u>Fox News</u>, 739 F. Supp. 2d at 554. Thus, the Court finds that the Ewing Declaration's assertions of the deliberative process privilege over FRBNY deliberations are procedurally sound.

> I.   <u>The Government did Not Waive the Deliberative Process Privilege when it Shared Documents with FRBNY, but it did Waive the Privilege when It Shared the Documents with other Third Parties.</u>

The deliberative process privilege protects only inter-agency or intra-agency documents. Disclosure to a non-agency third party waives the privilege. <u>See</u> <u>Klamath</u>, 532 U.S. at 8-9. (finding that communication between an Indian Tribe and the Department of the Interior was not intra-agency). However, courts have recognized the "consultant corollary" to the intra-agency definition, which treats documents exchanged with agency consultants as intra-agency. In <u>Klamath</u>, the Supreme Court noted that

consultants may be "enough like" the agency's own personnel to justify calling their communications intra-agency.  Id. at 3.

Here, the Court agrees with the finding in Fox News that FRBNY employees functioned "enough like" Treasury's own personnel that communications between FRBNY and Treasury were intra-agency communications. As the court in Fox News explained, "NYFRB and Treasury worked side-by-side in developing the terms of these transactions, and . . . the fundamental concern of both entities was stabilizing the economy."  739 F. Supp. 2d at 540.   Accordingly, the deliberative process privilege protects these documents from disclosure.

On the other hand, communications with Congress or communications disclosed to Congress are not protected by the deliberative process privilege because Congress is not a Government agency.  Dow Jones & Co., Inc. v. Dep't of Justice, 917 F.2d 571, 574 (D.C. Cir. 1990).  Likewise, communications disclosed to the GAO are not protected because the GAO is an independent agency in the legislative branch.

III.    The Application of the United States' Waiver of Privilege to FRBNY

As described in Section I.A above, the Government waived the attorney-client privilege by raising the legality of its actions as an affirmative defense.  Starr further contends that this waiver extends to FRBNY.  In response, FRBNY argues that the United States has no authority to waive FRBNY's attorney-client privilege because FRBNY is a separate legal entity from the United States.

FRBNY and the other Federal Reserve district banks are uniquely structured to act simultaneously as public and private entities.  On the one hand, the banks are authorized by statute to act as fiscal agents of the Government.  See Scott v. Fed. Reserve Bank of Kansas City, 406 F.3d 532, 535 (8th Cir. 2005) (citing 12 U.S.C. § 391).  Moreover, any profit earned by the banks ultimately goes to the Government's purse.  Id.  On the other hand, the banks are independent corporations, the day-to-day commercial operations of which are overseen by a board of directors whose majority is controlled by private commercial banks sitting in their districts.  Id. at 536-37.

In responding to the 2008 financial crisis, FRBNY was undoubtedly acting in its public capacity as an agent of the Government.  An agency relationship is created when a principal authorizes an agent (a) to act on the principal's behalf, (b) subject to the principal's control, and (c) the agent consents to so act. See B & G Enterprises, Ltd. V. United States, 220 F.3d 1318 (Fed. Cir. 2000) (quoting Restatement (Second) of Agency § 1(1)) accord Restatement (Third) of Agency § 1.01 (2006).  FRBNY executed the AIG "bailout" pursuant to Section 13(3) of the Federal Reserve Act.  Under Section 13(3), FRBNY was required to obtain the authorization of at least five members of the Board of Governors before transacting the rescue of AIG.  12 U.S.C. § 343.  The Government

therefore authorized FRBNY to rescue AIG.  Section 13(3) also stipulated that the terms of the transaction were "subject to such limitations, restrictions, and regulations as the Board of Governors of the Federal Reserve System may prescribe." Id.  Thus, FRBNY's actions were subject to the Government's control.  Finally, FRBNY proceeded to act in implementing the transaction in accordance with the Government's authorization.  When FRBNY acted to implement the transaction for which it had gained authorization from the Board of Governors, FRBNY acted as the agent of the United States.

Due to the absence of controlling precedent, it is helpful to analogize to the principle that "a corporation may unilaterally waive the attorney-client privilege with respect to any communications made by a corporate officer in his corporate capacity . . . ." In re Grand Jury Subpoena, 274 F.3d 563, 573 (1st Cir. 2001).  Accordingly, unless the attorney-client communications "*[do] not* concern matters within" the scope of the affairs of the principal, then an agent is obligated to produce attorney-client communications necessary to a judicial inquiry into the liability of the principal. Id. (quoting In re Bevill, Bresler & Shulman Asset Mgmt. Corp., 805 F.2d 120, 123 (3d Cir. 1983)) (emphasis in original).  While functioning as an agent for the Government, FRBNY communicated with counsel regarding FRBNY's authority to conduct a rescue of AIG pursuant to Section 13(3) of the Federal Reserve Act.  To the extent the Government now asserts that Treasury and FRBNY believed their actions were legal, the Government has waived the attorney-client privilege that would normally attach to FRBNY's communications with counsel on the subject of its authority under Section 13(3).  Such an affirmative defense "waives the attorney-client privilege to all . . . communications regarding the same subject matter." In re EchoStar Communications Corp., 448 F.3d 1294, 1301 (Fed. Cir. 2006).

Furthermore, it would be manifestly unfair to Starr to allow the Government to assert this affirmative defense and to allow FRBNY to invoke the attorney-client privilege to preclude Starr from obtaining the information necessary to establish their claim.  Accordingly, FRBNY must produce all communications that discuss what authority FRBNY had under the Federal Reserve Act to make the Section 13(3) loan to AIG.

Using the above privilege guidelines from the Court, the parties and FRBNY should determine whether any privileged document disputes remain, and notify the Court whether any *in camera* review is desired.  Upon receiving such a notice, the Court will issue a further order regarding the procedures for *in camera* review.

IT IS SO ORDERED.

s/ Thomas C. Wheeler
THOMAS C. WHEELER
Judge

13