## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

```
-----------------------------------------------------X
STARR INTERNATIONAL COMPANY,
INC., Individually and on Behalf of A          :
Class of Others Similarly Situated,
                                               :
                       Plaintiff,
                                               :
           v.
                                               :
THE UNITED STATES OF AMERICA,                         No. 11-00779C (TCW)
                                               :
                       Defendant.
                                               :

                                               :
-----------------------------------------------------X
```

### PLAINTIFF STARR INTERNATIONAL COMPANY, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO COMPEL DOCUMENTS AND DEPOSITION TESTIMONY FROM MORGAN STANLEY & CO. LLC

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ....................................................................................... 1

FACTUAL BACKGROUND ........................................................................................... 3

     A.    Morgan Stanley Significantly Delayed Document Production and
           Has Refused To Produce More Than 346 Documents Despite Its
           Four Years of Intensive Work for the Government on AIG ....................... 3

     B.    Morgan Stanley Refused to Schedule Its Deposition For Four
           Months And Continues To Play Games With The Deposition Date .......... 4

     C.    Despite Prior Agreement, Morgan Stanley Now Refuses to
           Produce Documents on the Company's Valuation of AIG's
           Businesses ................................................................................................. 8

     D.    Morgan Stanley Refuses to Provide 30(b)(6) Deposition Testimony
           on Starr's Noticed Topics or to Identify Its Testifying Witnesses ............. 9

STANDARD OF REVIEW ........................................................................................... 12

ARGUMENT ................................................................................................................ 13

     I.     Morgan Stanley Should Be Compelled To Produce Its Highly
           Relevant Valuation Documents ............................................................... 13

     II.    Morgan Stanley Should Be Compelled to Provide 30(b)(6)
           Deposition Testimony on Starr's Noticed Topics and to Identify
           the Testifying Witnesses ......................................................................... 14

CONCLUSION ............................................................................................................ 17

Plaintiff Starr International Co., Inc. ("Starr") brings this motion under Rule 37 of the Rules of the United States Court of Federal Claims to compel deposition testimony and the production of certain documents from Morgan Stanley & Co. LLC ("Morgan Stanley") pursuant to Starr's June 21, 2013 document subpoena and Starr's October 28, 2013 Rule 30(b)(6) deposition subpoena.

## PRELIMINARY STATEMENT

This motion arises from Morgan Stanley's unnecessary and counterproductive efforts to avoid compliance with Starr's two subpoenas, which have been outstanding for three and seven months respectively.  Morgan Stanley has made Starr's efforts to obtain crucial discovery needlessly difficult by utilizing obstructionist tactics at every step in the process. Morgan Stanley's recalcitrance is especially troubling given the company's intimate involvement in nearly every aspect of the Government's interactions with AIG over four years and also in light of Starr's willingness to provide Morgan Stanley extensive leeway throughout discovery.

Starr served Morgan Stanley with document production and RCFC 30(b)(6) deposition subpoenas in this action in June and October 2013, respectively, based on Morgan Stanley's central role in the events underlying Starr's claims.  Morgan Stanley's pivotal role in this case, and the importance of discovery from Morgan Stanley, is well established.  On September 15, 2008, Morgan Stanley was brought in by the Government to advise them on the private-sector consortium's efforts to provide a loan to AIG.  In that capacity, Morgan Stanley had frequent communications with top officials at the Federal Reserve Bank of New York ("FRBNY") and the Treasury Department during the critical mid-September period.  Evidence unearthed in discovery also suggests that Morgan Stanley was intimately involved in the transition from a private-sector solution to

1

a Government takeover, as well as drafting and revising the September 16, 2008 term sheet presented to AIG. Morgan Stanley then worked closely with the Government in structuring the Revolving Credit Facility and the Credit Agreement and later in restructuring the company including the sale of various AIG businesses.

Among other tasks, Morgan Stanley played a critical role in advising FRBNY on the valuation of AIG's collateral. Following the finalization of the Credit Agreement, Morgan Stanley began a multi-year engagement with FRBNY from 2008 through 2011. Under that engagement, Morgan Stanley served as FRBNY's primary advisor on the November 2008 and March 2009 restructuring of the loan to AIG, guided AIG's corporate restructuring and asset disposition process, conducted periodic valuations of AIG and its subsidiaries, and provided input into the Maiden Lane II and Maiden Lane III transactions. *See* Ex. A [MS_0001256 at 58, 60, a Morgan Stanley presentation describing its work for FRBNY]. In short, the breadth and depth of Morgan Stanley's involvement in this case exceeds that of any other non-party.

Because of Morgan Stanley's importance, Starr has gone to great lengths to obtain critical, highly relevant documents and testimony from Morgan Stanley, engaging in an ongoing dialogue including numerous deficiency letters, emails, and meet and confers spanning the course of seven months. Starr has worked diligently and in good faith towards accommodating Morgan Stanley with the hopes of avoiding unnecessary motion practice, but Morgan Stanley has refused to produce certain discrete documents or to provide 30(b)(6) testimony that bears on important issues in this case. Accordingly, Starr respectfully submits this motion to compel Morgan Stanley to: (1) produce any documents that describe Morgan Stanley's valuation of AIG's businesses; (2) provide

30(b)(6) testimony for all the topics noticed in Starr's October 28, 2013 subpoena; and

(3) identify the witnesses that will be Morgan Stanley's 30(b)(6) deposition designees.[1]

## FACTUAL BACKGROUND

A.   **Morgan Stanley Significantly Delayed Document Production and Has Refused To Produce More Than 346 Documents Despite Its Four Years of Intensive Work for the Government on AIG**

Starr first subpoenaed documents from Morgan Stanley on June 21, 2013.  *See* Ex. B [6/21/13 Subpoena].  Thereafter, Starr engaged in extensive conversations with Morgan Stanley, first, agreeing to delay Morgan Stanley's response to Starr's discovery requests to accommodate their counsel's trial schedule and later agreeing to limit the scope of its document production.  Starr's June 21, 2013 subpoena requested twelve different categories of documents held by any Morgan Stanley custodian.  After conferring with Morgan Stanley, however, Starr agreed to several limitations on the production both in an attempt to obtain the production quickly and hopefully to reduce the burden on Morgan Stanley by focusing on salient documents that could not be obtained from other sources.

Despite granting substantial accommodations to Morgan Stanley, Starr did not receive any documents from Morgan Stanley until October 29, 2013, in a production of 198 documents amounting to fewer than two thousand pages.  *See* Ex. C [10/29/13 production letter].  On October 31, 2013, Morgan Stanley produced 28 additional

---

[1] Pursuant to RCFC Rule 37(a)(5), costs and fees should also be awarded due to the significant burdens Plaintiff has had to endure over the seven months of delays Morgan Stanley has imposed and the disruption to the fact and expert discovery schedule caused not only by Morgan Stanley's delay in document production and scheduling of the deposition but also in having to undertake filing this motion.  *See Council for Tribal Employment Rights v. United States*, 110 Fed. Cl. 244, 248 (2013) (Rule 37 "is designed to encourage or secure compliance with the discovery rules" by creating "a presumption that sanctions should be awarded" when a party is required to file a motion to compel discovery) (quotations and citation omitted); *see also Covad Comm'ns Co. v. Revonet, Inc.*, 262 F.R.D. 1, 4 (D.D.C. 2009) (awarding expenses where Revonet "was forced to seek court intervention to obtain relief against baseless objections and the process resulted in Revonet incurring legal fees and costs and in a delay in the progress of discovery").

documents, totaling approximately 100 pages. *See* Ex. D [10/31/13 production letter]. These documents, however, were responsive to only a limited subset of Starr's document requests.

In an effort to obtain the remaining responsive documents, Starr once again agreed to limit the scope of its document requests. Starr initially requested all final presentations containing certain search terms that were collected from the email accounts of 21 Morgan Stanley custodians. *See* Ex. E [11/8/13 3:19pm Rutherford email]. After conferring with Morgan Stanley, Starr agreed to reduce the custodian list to four. *Id.* During these discussions, however, Starr expressly reserved its right to request responsive documents that appeared to be missing from Morgan Stanley's production. *See id.* [11/08/13 5:13pm Rutherford email]. In an email sent on November 18, Morgan Stanley agreed to Starr's request. *See id.* [11/18/13 2:05pm email from Rhys Davies]. Starr received no further documents from Morgan Stanley until mid-December, when Morgan Stanley produced another 120 documents. *See* Exs. F, G [12/10/13 and 12/13/13 production letters]. Although Morgan Stanley worked on AIG-related work for the Government from 2008 through 2011, and was involved in almost all aspects of FRBNY's management and control of AIG, Morgan Stanley produced only 346 documents responsive to Starr's document requests.

**B.      Morgan Stanley Refused to Schedule Its Deposition For Four Months And Continues To Play Games With The Deposition Date**

On October 28, 2013, Starr also issued a subpoena for 30(b)(6) deposition testimony from Morgan Stanley on the following topics:

> 1.  Morgan Stanley's involvement in negotiations and other efforts concerning a private sector solution for AIG in September 2008, including Morgan Stanley's knowledge of a potential private sector term sheet for AIG and the Term Sheet presented by FRBNY.

4

2.  Morgan Stanley's access to any loan facilities or other financing or financial assistance provided by the Government to it in 2008, including Morgan Stanley's conversion into a bank holding company, assistance through the Primary Dealer Credit Facility, the Discount Window and TARP.

3.  AIG's restructuring and/or disposition of corporate assets after September 16, 2008, including the role Morgan Stanley played and the information and recommendations it provided to the Government and/or AIG concerning Maiden Lane III, Project Independence, and Project Destiny.

4.  Morgan Stanley's communications and discussions with Andrew Ross Sorkin concerning AIG for Mr. Sorkin's book "Too Big To Fail," including the statement attributed to Ruth Porat stating: "We're worried that these guys are going to try to steal the business." A. Sorkin, Too Big to Fail, at 390 (Penguin Books 2011).

5.  Morgan Stanley's engagements with the Government from 2008 through 2011 in matters concerning or related to AIG, including the role Morgan Stanley played with respect to any matters or issues, the engagement agreements, and the terms of the engagements.

*See* Ex. H [10/28/13 subpoena].

In a November 8, 2013 email, Starr proposed a range of deposition dates between December 12 and 18, 2013. *See* Ex. E [11/08/13 3:19pm Rutherford email]. Upon receiving no response from Morgan Stanley, Starr sent a follow-up email on November 18, 2013, noting that deposition dates were quickly filling up, and proposing a deposition date of December 16, 2013. *See id.* After once again receiving no response from Morgan Stanley, Starr sent an email on November 22, 2013, inquiring whether Morgan Stanley intended to produce documents in time for a December 16, 2013 deposition. *See id.* On November 25, 2013, Morgan Stanley responded via email but neither confirmed a December 16, 2013 deposition date nor proposed an alternate date. Instead, despite the fact that Morgan Stanley had not yet completed a large portion of its document

production, Morgan Stanley requested that Starr send Morgan Stanley "the documents you intend to ask about so that we can factor them into the timing and prep." *See id.*

On December 9, 2013, having still failed to produce any more documents, Morgan Stanley wrote that "it's clear at this point that it's not going to be practicable to schedule the Morgan Stanley deposition before December 20, and that we will need instead to schedule it for next month." Morgan Stanley also reiterated its request that Starr "let us know which documents you intend to focus on so that we can work with the witness ahead of time." *See* Ex. I [12/9/13 4:38pm email from Rhys Davies]. Starr responded later that day, noting that: "If we are rolling over this deposition into January, we will need to seek permission of the Court. If you could provide a name or names of the deponents and a date in January that they will be available, I will coordinate with Ms. Acevedo [from DOJ] and then file a motion with the Court to have the deposition taken out of time." *Id.* On December 11, 2013, Starr once again asked Morgan Stanley to provide a January date for the deposition. *See* Ex. J. [12/11/13 4:00pm Rutherford email]. Morgan Stanley responded on December 13, saying that if Starr agreed to provide a set of the documents that it planned to use at the deposition, Morgan Stanley "can commit to scheduling the deposition on a mutually convenient date in January." *Id.* [12/13/13 5:22pm Rhys Davies email].

On December 20, 2013, upon finally receiving the last of Morgan Stanley's documents—first requested six months prior—Starr sent a letter to Morgan Stanley requesting that they "provide as soon as possible a date for the Morgan Stanley 30(b)(6) deposition. In light of other deadlines in this case and the fact that we have agreed with the United States and sought permission from the Court to hold this deposition after the

scheduled December 20, 2013 fact discovery deadline, we request that you work with us to find a mutually agreeable date between now and February 3, 2014 to hold the deposition." Ex. K. [12/20/13 Rutherford letter]. Morgan Stanley did not respond to this letter for over two weeks. On January 6, 2014, despite its earlier commitment to scheduling the deposition in January, Morgan Stanley informed Starr that its anticipated witness had no availability for the entire month of January. *See* Ex. L [1/6/14 Rhys Davies letter]. Starr also accommodated Morgan Stanley by quickly providing Morgan Stanley with a set of the documents Starr intended to focus on at the 30(b)(6) deposition that same day. On January 8, 2014, Starr reiterated its request for a deposition date prior to February 3, 2014 and the name of Morgan Stanley's designated witness. *See* Ex. M. [1/8/14 Rutherford letter]. Following Morgan Stanley's staunch refusal to provide a witness prior to February 3, Starr agreed to accommodate Morgan Stanley by accepting a February 7 deposition date. Although Morgan Stanley has now confirmed who its witness will be for topics 1, 3, and 5, it still has not confirmed its witness or witnesses for topics 2 and 4.

Despite being committed to a February 7 deposition date for several weeks, on the evening of January 29th, nine days before the scheduled deposition date, Morgan Stanley suddenly and without warning informed Starr that one of its 30(b)(6) witnesses now had a "work commitment" such that "he has to be out of town on February 7 for something that cannot be moved." Ex. N [Rhys Davies 1/29/14 7:47pm email]. Counsel then proposed delaying the deposition until February 18 or 19.[2] As Morgan Stanley is aware from the

---

[2] On the morning of January 30, 2014, Starr accepted February 18 as the alternative date for the deposition on the condition that all of Morgan Stanley's witnesses be produced on that date for deposition. Morgan Stanley has averred that it will present witnesses for all five topics on that date. Starr respectfully requests that briefing and any necessary argument be completed on a schedule that would permit the deposition to

parties' repeated conversations, the sudden change further complicates an extraordinarily busy month of discovery involving numerous other fact depositions and the submission of Starr's expert reports. This is especially true in light of Morgan Stanley's refusal to provide full and complete 30(b)(6) testimony from its witnesses and its apparent failure to identify witnesses for two of the five topics in the October 2013 deposition notice.

**C.   Despite Prior Agreement, Morgan Stanley Now Refuses to Produce Documents on the Company's Valuation of AIG's Businesses**

Starr agreed to accept Morgan Stanley's narrow search parameters for document production only "on the condition that if it becomes obvious that there are clearly key documents missing from the search collection, we will come back to you with a list of specific documents that we believe to be responsive that are missing." Ex. E. Morgan Stanley thereafter agreed that it would "search for a specific document if it's clear from other evidence that such a document exists but for some reason it isn't produced as a result of the review we are about to begin." *Id.*

Pursuant to this agreement, on January 8, 2014, Starr informed Morgan Stanley that it had been unable to find a final presentation or other document describing how Morgan Stanley valued AIG's collateral, despite the fact that several documents produced by Morgan Stanley referenced the company's extensive involvement in AIG collateral valuation. *See* Ex. M. Given Morgan Stanley's agreement to search for and produce responsive documents identified by Starr that were not produced by its limited search terms, Starr requested that Morgan Stanley "either identify any documents in the

---

take place on February 18 or shortly thereafter. *See Adelphia Recovery Trust v. Bank of Am., N.A.,* No. 4:09-MC-00139, 2009 WL 42689892, at *1 (M.D. Pa. Nov. 4, 2009) (noting that the court granted expedited briefing for a motion to compel "in light of a number of approaching deadlines"); *Karmolinski v. Equifax Info. Servs., LLC,* MISC. 06-29, 2006 WL 1997443, at *1 (D.S.D. July 17, 2006) (ordering expedited briefing on a motion to compel in light of an upcoming discovery deadline).

production that describe how Morgan Stanley valued AIG's collateral, or otherwise produce them." *Id*. Later, Starr also provided a list of documents that indicate that presentations concerning the AIG collateral and business valuations existed. In a letter dated January 10, 2014, Morgan Stanley ignored Starr's request, noting only that its search criteria "did not locate evidence of any document of the kind you reference." *See* Ex. O [1/10/14 Rhys Davies letter]. Since January 10, Starr has repeatedly requested that Morgan Stanley produce any responsive documents regarding Morgan Stanley's valuation of AIG's collateral, and has directed Morgan Stanley to substantial evidence confirming that such valuations exist. *See* Ex. P [thread with 1/14/14 10:26am Rutherford email; 1/15/14 4:48pm Rutherford email; and 1/22/14 5:03pm Rutherford email]; and Ex. Q [1/27/14 Rutherford letter]. To date, however, Morgan Stanley has refused to produce these documents, with its latest letter indicating only that Morgan Stanley will meet with its designated witness and "ask whether he is aware of any final valuation presentation." Ex. R [1/29/14 Rhys Davies letter].

### D.     Morgan Stanley Refuses to Provide 30(b)(6) Deposition Testimony on Starr's Noticed Topics or to Identify Its Testifying Witnesses

On November 8, 2013, Starr memorialized the parties' agreement on the scope of the 30(b)(6) deposition as follows: "With respect to the 30(b)(6) subpoena, we agreed to discuss the scope of topics 1, 3, and 5 following the receipt of documents. With respect to topic 2, we are willing to provide you a limited set of points/questions that we seek to resolve on the topic. You will let us know whether you still intend to object to the topic following receipt. With respect to topic 4, we are willing to accept a sworn declaration from Ruth Porat in lieu of 30(b)(6) testimony on the topic." *See* Ex. E [11/08/13 3:19pm

Rutherford email].  Morgan Stanley offered no objections or corrections to the agreement as summarized by Starr.

On January 13, 2014, Starr issued a revised 30(b)(6) deposition for Morgan Stanley, scheduling the deposition for Morgan Stanley's preferred date, February 7, 2014. Upon receipt of the revised notice, however, Morgan Stanley insisted that Starr modify topics 1, 3, and 5 "to conform to the agreed scope of the document production." *See* Ex. P [1/13/14 6:49pm Rhys Davies email].  Specifically, Morgan Stanley requested that Starr drastically limit the scope of topics 1, 3, and 5 to: "Morgan Stanley's communications with the Federal Reserve Bank of New York from September 14, 2008 through September 25, 2008 relating to the $85bn loan to AIG entered into on September 22, 2008, including the security taken for that loan" and "Morgan Stanley's final valuation presentations to the Federal Reserve Bank of New York in connection with Project Destiny and Project Independence over the period of October 1, 2008 through December 31, 2011." *Id*. [1/15/14 1:36pm Rhys Davies email]. Morgan Stanley also added the belated condition that it would "be preparing the witness to testify as a corporate representative *using only the documents we produced to you*." *Id.* (emphasis supplied) [1/19/14 4:41pm Rhys Davies email].

Starr responded by pointing out that no such agreement was reached with respect to topics 1, 3, and 5, and requested that Morgan Stanley identify who it would be designating to testify and agree that its witnesses would testify as 30(b)(6) corporate representatives to all Morgan Stanley documents placed before them, whether or not those documents were specifically produced by Morgan Stanley. *Id*. In a January 24, 2014 letter, however, Morgan Stanley reiterated its position with respect to the 30(b)(6)

10

deposition, and threatened to "reduce, hour-for-hour, the time available to prepare for the deposition" should Morgan Stanley have to respond to a motion to compel. Ex. S [1/24/14 Rhys Davies letter]. On January 27, Starr informed Morgan Stanley that it intended to file a motion to compel unless Morgan Stanley agreed to produce any final AIG valuation presentations, identify who will be testifying to Starr's noticed topics, and provide 30(b)(6) testimony on all the topics in the RCFC 30(b)(6) notice. Ex. Q [1/27/14 Rutherford letter]. On January 29, Morgan Stanley responded by once again referencing, without any documentary evidence, its belief that the substance of the deposition should be "consistent with the substantive scope of Morgan Stanley's document production." Morgan Stanley also insisted, contrary to its stated reason for the delay in scheduling the deposition, that it "had not yet determined" who will provide certain 30(b)(6) testimony. Ex. R [1/29/14 Rhys Davies letter]. Therefore, as of the filing of this motion, Morgan Stanley has not complied with any of Starr's requests.

As illustrated above, Starr has endeavored to resolve this matter without Court intervention over the last seven months but the parties have now reached an impasse. After several attempts to confer in good faith to resolve the dispute pursuant to RCFC 37(a)(1), and having provided reasonable notice that Starr would apply for such an order, a motion to compel Morgan Stanley to comply with the terms of the subpoena and the parties' agreement thereunder is necessary.[3] *See* Exs. R, N [1/30/14 10:48am Rutherford email].

---

[3] Starr has already subpoenaed documents from and deposed 24 non-party witnesses in either their individual or 30(b)(6) capacity without any difficulty, and will be deposing five more in addition to Morgan Stanley. (This figure excludes the numerous former Government employees already deposed as witnesses in this case).

## STANDARD OF REVIEW

Courts have compelled document production from non-parties when, as here, the non-party played a significant role in the events at issue in the case. *JZ Buckingham Investments, LLC v. United States*, 78 Fed. Cl. 15, 34-36 (2007) (denying a non-party's motion to quash and granting plaintiff's motion to compel production, in substantive part because the non-party "was not a complete stranger to the litigation and was in fact a major player in the transactions at stake."); *see also U.S. ex rel. Tiesinga v. Dianon Sys., Inc.*, No. 3:02CV1573, 2006 WL 2926795, *1 (D. Conn. Sept. 14, 2006) (granting a motion to compel against a non-party where "it appears that there is no other source for these documents and that they are relevant to this lawsuit"); *Rhone-Poulenc Rorer, Inc. v. Home Indem. Co.*, CIV. A. 88-9752, 1993 WL 304047, *2 (E.D. Pa. Aug. 6, 1993) (affirming a magistrate judge's ruling granting a motion to compel against a non-party where "the information contained in the requested documents is directly relevant"). Notably, courts have also determined that a non-party document request is not burdensome where, as here, other non-parties in the same case have responded "to similar document requests." *Tiesinga*, 2006 WL 2926795, at *1.

For a RCFC 30(b)(6) deposition, "[t]he persons designated must testify about information known or reasonably available to the organization." The corporate deponent "has an affirmative duty to make available persons will be able to give complete, knowledgeable and binding answers on its behalf." *AG-Innovations, Inc. v. United States*, 82 Fed Cl. 69, 80 (2008) (quotations omitted); *see also Reilly v. NatWest Mkts. Group, Inc.*, 181 F.3d 253, 268 (2d Cir. 1999) (same); *Dairyland Power Coop v. United States*, 79 Fed. Cl. 709, 714 (2007) (same). The deponent also "has an affirmative duty to produce a representative who can answer questions that are both within the scope of

the matters described in the notice and are known or reasonably available to the corporation." *AG-Innovations*, 82 Fed. Cl. at 80 (quotations omitted). "Thus, RCFC 30(b)(6) implicitly requires the designated representative to review all matters known or reasonably available to it in preparation for the Rule 30(b)(6) deposition. This interpretation is necessary in order to make the deposition a meaningful one and to prevent a half-hearted inquiry." *Id*. (quotations omitted).

## ARGUMENT

### I.      Morgan Stanley Should Be Compelled To Produce Its Highly Relevant Valuation Documents

Starr significantly reduced its requests to Morgan Stanley to just a few key items both in attempt to expedite production and reduce the burdens on a non-party. Starr has now sought production of what could be no more than one to two dozen additional documents that pertain to Morgan Stanley's valuation of AIG's businesses as both collateral to the Revolving Credit Facility provided by FRBNY in September and October 2008 and then independently as businesses targeted for sale and dissolution by the Government in March 2009. These documents are extremely relevant, as they bear on such critical issues such as: (1) whether the Government's loan to AIG was fully secured; and (2) the value of AIG at the time of the Government's first taking, on September 22, 2008. Since these documents were created by Morgan Stanley and have not been produced by any other party, Starr has no other way of obtaining the documents. Moreover, this request is not unduly burdensome as it involves a very narrow subset of documents, and Starr has already provided Morgan Stanley with evidence that such documents exist, along with the time-range in which such documents are likely to be found. *See* Ex. Q [1/27/14 letter].

Far from asking Morgan Stanley to conduct a broad-ranging, amorphous search, Starr merely requests that Morgan Stanley conduct a targeted search based on set criteria. Further, assuming Morgan Stanley keeps its business records in some orderly fashion, there should be a file available either electronically or in hard copy that the business could access for these documents. Moreover, given the fact that Morgan Stanley has only produced 346 responsive documents—a fraction of the documents produced by other third parties with far less involvement in the key events of this case—Morgan Stanley cannot plausibly claim that conducting one additional search would be an undue burden for the company. *See Tiesinga*, 2006 WL 2926795, at *1.

## II. Morgan Stanley Should Be Compelled to Provide 30(b)(6) Deposition Testimony on Starr's Noticed Topics and to Identify the Testifying Witnesses

Starr has endeavored at every turn to cooperate with Morgan Stanley's requests, but Morgan Stanley has no justification to avoid providing 30(b)(6) testimony on Starr's noticed topics based simply on the limited scope of Morgan Stanley's document production. This is especially true when the scope of Morgan Stanley's production was so limited in negotiations based on: (1) materials provided by other parties to the litigation; (2) an understanding that Starr would provide Morgan Stanley with a list of documents (whether produced by Morgan Stanley or another party) that it was likely to ask questions about in deposition; and (3) an agreement that any other discussions concerning the scope of the deposition could be had following receipt of the document production.

Rather than abide by this agreement, Morgan Stanley unilaterally rewrote the agreement after Starr's compliance by falsely contending that there was an agreement to limit deposition questioning to the scope of document production. However, Morgan

Stanley's belated invention of a purported oral agreement flies in the face of both the written communications between the parties and is inconsistent with the actions undertaken by the parties. Clearly Morgan Stanley understood that the scope of the 30(b)(6) questioning would not be so limited, or it would not have requested that Starr provide advance copies of documents Starr already had from the Government that Starr intends to ask about at the deposition. *See* Exs. E, I, J.

Morgan Stanley's proposal to drastically and unilaterally limit Starr's 30(b)(6) deposition examination is without basis or legal justification. Starr's willingness to not burden Morgan Stanley with duplicative and unnecessary document requests does not hinder Starr's ability to inquire about the topics noticed in its separate 30(b)(6) deposition subpoena. Indeed, Morgan Stanley's position would create a perverse incentive for Starr to bombard Morgan Stanley with overbroad document requests so as to ensure that any 30(b)(6) questioning falls within the scope of documents produced by Morgan Stanley.

Morgan Stanley's vague reference to a memory of some agreement "that topics 1, 3, and 5 would be modified to track the agreed scope of the document production," versus the fact of a written, unquestioned agreement to discuss the topics at some later date should that become necessary are clearly inapposite. *Compare* Ex. P [1/15/14 1:36pm Rhys Davies email] *with* Ex. E [11/8/13 3:19pm Rutherford email]. Moreover, the limitations that Morgan Stanley seeks to impose would prevent Starr from seeking highly relevant information on such critical issues as: Morgan Stanley's involvement in the private-sector efforts to provide a loan to AIG; Morgan Stanley's communications with non-FRBNY government officials, including Treasury officials, regarding the September 16, 2008 term sheet presented to AIG; Morgan Stanley's communications

15

with non-FRBNY government officials regarding the structuring and terms of the Revolving Credit Facility and Credit Agreement; Maiden Lane III; and various other communications and work Morgan Stanley engaged in on behalf of the Government during the time period of September 2008 through January 2011.

Starr agreed to limit the scope of its document production requests as a courtesy to Morgan Stanley, with the understanding that any necessary additional agreements would follow the completion of Morgan Stanley's document production. Starr also agreed, at Morgan Stanley's request, to provide Morgan Stanley with copies of any non-Morgan Stanley produced documents that Starr may seek to ask about, so as to limit the preparation for Morgan Stanley's 30(b)(6) designees. Now Morgan Stanley seeks to turn Starr's accommodation on its head, by arguing that it would be "impossible" to prepare a witness for testimony outside of "the substantive scope of Morgan Stanley's document production." Ex. R [1/29/14 Rhys Davies letter]. But courts have rejected Morgan Stanley's position, noting that the burden of preparing for a 30(b)(6) deposition "is justified since a corporation can only act through its employees." *AG-Innovation*, 82 Fed. Cl. at 81 (quotations omitted); *see also ICE Corp. v. Hamilton Sunstrand Corp.*, No. 05-4135-JAR, 2007 WL 1732369, at *4 (D. Kan. June 11, 2007) (same).

Numerous other non-parties—including non-parties with far less involvement in the key events underlying Starr's claims—have adequately prepared 30(b)(6) testimony in this case without the restrictions that Morgan Stanley belatedly seeks to impose. There is absolutely no reason why Morgan Stanley cannot do the same.

**CONCLUSION**

For the aforementioned reasons, and pursuant to RCFC 37(a)(3), Starr respectfully requests that the Court grant Starr's motion to compel Morgan Stanley to: (1) produce any documents that describe Morgan Stanley's valuation of AIG's businesses; (2) provide full and complete 30(b)(6) testimony on February 18, 2014 for all the noticed deposition topics; (3) identify as soon as practicable, but no later than February 7, 2014, all the witnesses that will represent Morgan Stanley at Morgan Stanley's 30(b)(6) deposition; and (4) award Starr costs and fees related to this motion.

Dated:  New York, New York
　　　　January 30, 2014

BOIES, SCHILLER & FLEXNER LLP


By      /s/ David Boies
　　　　David Boies
　　　　Attorney of Record
　　　　333 Main Street
　　　　Armonk, NY 10504
　　　　Tel. (914) 749-8200
　　　　Fax (914) 749-8300
　　　　Email: dboies@bsfllp.com

　　　　*Counsel for Plaintiff Starr International,*
　　　　*Company, Inc. and for the Plaintiff Class*


OF COUNSEL:

BOIES, SCHILLER & FLEXNER LLP

　　　　Robert J. Dwyer
　　　　Alanna C. Rutherford
　　　　Julia C. Hamilton
　　　　575 Lexington Avenue
　　　　New York, NY 10022
　　　　Telephone: (212) 446-2300

Hamish  P. M. Hume
Samuel  C. Kaplan
5301 Wisconsin  Avenue,  NW
Washington,  DC 20015
Telephone:   (202) 237-2727

### CERTIFICATE  OF SERVICE

I hereby certify that on January 30, 2014, I caused a true and correct copy of the

foregoing "Plaintiff Starr International Company, Inc.'s Memorandum of Law in Support of Its

Motion to Compel Documents and Deposition Testimony from Morgan Stanley & Co. LLC" to

be served via hand-delivery on each of the following:


**Morgan Stanley & Co. LLC**

       Andrew Rhys Davies
       Allen & Overy LLP
       1221 Avenue of the Americas
       New York, New York 10020


                            /s/ Erica Spevack
                            Erica Spevack