**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**

No. 11-779 C

| | |
|---|---|
| STARR INTERNATIONAL COMPANY, INC., individually and on behalf of a class of others similarly situated, | ) ) ) ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

**MEMORANDUM OF LAW OF NON-PARTY MORGAN STANLEY & CO. LLC IN OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL DOCUMENTS AND DEPOSITION TESTIMONY AND IN SUPPORT OF MORGAN STANLEY'S CROSS-MOTION TO QUASH THE DEPOSITION SUBPOENA**

ALLEN & OVERY LLP
Andrew Rhys Davies
1221 Avenue of the Americas
New York, New York  10020
Tel: (212) 610-6300

*Attorneys for Non-Party Morgan Stanley & Co. LLC*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

PRELIMINARY STATEMENT ................................................................................1

STATEMENT OF FACTS ........................................................................................4

      A.     Morgan Stanley And Starr Agree On A Scope Of Document Production
            To Satisfy Fully Morgan Stanley's Document Production Obligations;
            Morgan Stanley Performs Its Obligations Under That Agreement ........................4

            1.     Morgan Stanley's Agreed Production Of FRBNY Loan-Related
                   Documents ................................................................................................4

            2.     Morgan Stanley's Agreed Production Of AIG-Related Valuation
                   Presentations ...........................................................................................5

      B.     Starr Agrees To Limit The Very Broad Deposition Subpoena It Served On
            Morgan Stanley ..................................................................................................8

      C.     Starr Unjustifiably Reneges On Both Agreements By Demanding
            Documents That May Not Even Exist And By Refusing To Conform The
            Deposition Subpoena To Reflect The Parties' Agreement ...................................10

ARGUMENT ...........................................................................................................14

      I.     THE COURT SHOULD DENY STARR'S MOTION TO COMPEL THE
            PRODUCTION OF HYPOTHETICAL DOCUMENTS, IN VIOLATION
            OF STARR'S PRIOR AGREEMENT .................................................................14

      II.     THE COURT SHOULD QUASH STARR'S DEPOSITION SUBPOENA,
            WHICH IS OVERBROAD, INTRUSIVE, UNDULY BURDENSOME
             AND IRRELEVANT ..........................................................................................16

      III.    ANY AWARD OF FEES AND COSTS SHOULD BE IN FAVOR OF
            MORGAN STANLEY, NOT STARR ................................................................19

CONCLUSION .......................................................................................................21

# TABLE OF AUTHORITIES

## CASES

*Anwar v. Fairfield Greenwich Ltd.*,
  No. 09 Civ. 118 (VM)(FM),  --- F.R.D. ----,
  2013 WL 6172443 (S.D.N.Y. Nov. 26, 2013) .................................................................18

*Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*,
  262 F.R.D. 293 (S.D.N.Y. 2009) ....................................................................................18

*Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty Ltd.*,
  No. CV 06-0356(FB)(JO), 2006 WL 1720442 (E.D.N.Y. June 22, 2006).......................20

*In re United States*, Misc. No. 163,
  --- F. App'x ----, 2013 WL 5630921 (Fed. Cir. Oct. 16, 2013) ..............................2, 16, 18

*Packard v. Darveau*,
  No. 4:11CV3199, 2012 WL 4443505 (D. Neb. Sept. 25, 2012) ......................................14

*Thompson v. Glenmede Trust Co.*,
  No. CIV. A 92-5233, 1995 WL 752422 (E.D. Pa. Dec. 19, 1995)...................................17

*SEC v. Kimmes*,
  No. M18-304, 1996 WL 734892 (S.D.N.Y. Dec. 24, 1996)..............................................20

## RULES

RCFC 26(b)(1) ...............................................................................................................16

RCFC 30(b)(6) ........................................................................................................... *passim*

RCFC 37(a).................................................................................................................20, 21

RCFC 45(c).................................................................................................................19, 21

Non-party Morgan Stanley & Co. LLC ("Morgan Stanley") respectfully submits this memorandum of law in opposition to Starr International Company, Inc.'s ("Starr") motion to compel documents and deposition testimony, and in support of Morgan Stanley's cross-motion to quash Starr's Rule 30(b)(6) deposition subpoena dated January 13, 2014.[1]

## PRELIMINARY STATEMENT

The discovery sought by Starr in its various subpoenas falls into two categories: (i) discovery that the parties agreed Morgan Stanley would (and, in fact, Morgan Stanley did) produce; and (ii) discovery that the parties agreed Morgan Stanley would not be required to provide. This motion to compel relates only to the latter category, as Starr seeks to have this Court tear up two agreements that, at least on Morgan Stanley's part, represented good faith agreements to resolve Starr's open-ended discovery demands. Whatever may be motivating Starr now to renege on those agreements is unclear, but the Court should not permit it to do so, certainly not based on Starr's distorted presentation of the facts.

Starr's motion violates the agreements reached between Starr and Morgan Stanley through the meet-and-confer process, which is an independently sufficient basis to deny Starr's motion.

As to its motion to compel the production of additional valuation documents, the parties agreed on the scope of document search and production. There is no dispute that Morgan Stanley has produced the documents within that agreed scope. Rather, Starr's motion to compel relates to a narrow carve-out from that agreement, for "clearly key documents," the existence of which is "specific[ally]" demonstrated by Starr. Ex. 7 at 3 (email dated Nov. 8, 2013, at

---

[1] Starr's Memorandum of Law filed January 30, 2014 is cited in the format "Starr Mem." and the exhibits to Starr's motion are cited in the format "Starr Ex. __". The exhibits to this memorandum of law are cited in the format "Ex. __" and the Declaration of Andrew Rhys Davies dated February 4, 2014 is cited as "Davies Decl.".

5:13pm).  As Starr itself explained the carve-out: "For example, if we see four emails referencing a July 21, 2009 presentation but it is nowhere to be found in the production, we will request that presentation."  *Id.*  Starr has identified no such references and no such documents.  In fact, Starr has provided no basis to think that the documents that are the subject of its motion even exist, notwithstanding Morgan Stanley's repeated requests for Starr to identify its basis for believing that they do.[2]

   As to Starr's motion to compel the deposition testimony, the Federal Circuit's commentary that Starr's discovery efforts "have all the appearance, and vices, of a fishing expedition rather than an effort to establish legally material facts," *In re United States*, Misc. No. 163, --- F. App'x ----, 2013 WL 5630921, at *5 (Fed. Cir. Oct. 16, 2013), is equally applicable to Starr's deposition subpoena to Morgan Stanley.  In addition to very broad testimony about Morgan Stanley's AIG-related work for the Federal Reserve Bank of New York, that deposition subpoena seeks irrelevant testimony about federal assistance provided to Morgan Stanley and the process by which Andrew Ross Sorkin wrote his book, Too Big To Fail.

   Consistent with its constructive approach to the document subpoena, notwithstanding the incredibly broad nature of the deposition subpoena and without prejudice to its objections, Morgan Stanley worked with Starr and agreed on limitations to certain of the listed topics.  The resulting agreement was intended to ensure that the deposition subpoena would not be an "end-run" around the parties' agreed limitations on the scope of document production, *i.e.*, that Morgan Stanley would not have to conduct additional expensive and time-consuming document retrieval and review into the history of its AIG-related work for the Federal Reserve Bank of New York beyond that which it had already done.  These limitations would

---

[2] As a sign of good faith, Morgan Stanley offered to ask the contemplated deposition witness about Starr's requests and to produce any such documents if they could be located without undue burden. Ex. 19 at 2.

have simultaneously ensured that Morgan Stanley could be adequately prepared while containing

costs, without prejudicing Starr, as Morgan Stanley made clear that the witness would answer

otherwise unobjectionable questions based on his personal knowledge and involvement in the

AIG-related work.

Starr has made clear, however, that its intent is to subject Morgan Stanley to

intrusive, burdensome discovery into matters that are entirely irrelevant or whose relevance is so

attenuated that the burden is wholly unjustifiable.  For these reasons, the deposition subpoena

should now be quashed.

Morgan Stanley respectfully draws to the Court's attention how Starr's citations

to the evidence appended to its motion papers are stripped of context and, therefore, misleading.

For example, Starr seeks to color the Court's view against Morgan Stanley by quoting a portion

of a letter out of context, so as to suggest that Morgan Stanley "threatened" to retaliate if Starr

filed a motion to compel, by reducing "'hour-for-hour, the time available to prepare for the

deposition.'"  Starr Mem. at 10-11 (quoting Starr Ex. S).  What Morgan Stanley actually said

was that, for the reasons outlined herein, a motion to compel was wholly unnecessary, and given

that the close of discovery is rapidly approaching (and time is a finite commodity, at least in

human terms), it should let Morgan Stanley prepare for the deposition instead of distracting it

with unnecessary motion practice.  Ex. 17 at 1-2.  Similarly misleading is Starr's righteous

outrage that Morgan Stanley did not respond to one of its letters "for over two weeks."  Starr

Mem. at 7.  Starr neglects to mention that Morgan Stanley responded to that letter on the date

that Starr requested a response, which also happened to be the first Monday after the Christmas

and New Year holidays.  *See* Starr Exs. K, L.

Starr's account of the history of Morgan Stanley's compliance with its broad discovery demands, and of the agreements reached between Starr and Morgan Stanley, is no more reliable than its description of the two documents referenced above.  Starr's motion should be denied, and Morgan Stanley's cross-motion should be granted.

## STATEMENT OF FACTS

**A.**   **Morgan Stanley And Starr Agree On A Scope Of Document Production To Satisfy Fully Morgan Stanley's Document Production Obligations; Morgan Stanley Performs Its Obligations Under That Agreement**

On June 21, 2013, Starr served a document subpoena on non-party Morgan Stanley, which called for production of a very broad range of documents covering a multi-year period, concerning not only AIG, but also Morgan Stanley's business unrelated to AIG.  Ex. 1 (the "Document Subpoena").   The Document Subpoena was untimely served with a compliance date of July 22, 2013, Ex. 1, in violation of the Court's scheduling order, which required that "[a]ll document production shall be completed by June 30, 2013."  ECF No. 103.

Morgan Stanley served objections, Ex. 2, including an objection to the Document Subpoena's untimeliness.  *Id.* at 2 ¶ 3.  Without prejudice to those objections, Morgan Stanley set about trying to work with Starr to agree on a reasonable and manageable scope of production that would result in the production of core communications relating to Morgan Stanley's AIG-related work for the Federal Reserve Bank of New York ("FRBNY"), without imposing undue burden and expense.

### 1.   **Morgan Stanley's Agreed Production Of FRBNY Loan-Related Documents**

Seeking to focus its document production on the facts alleged in the operative complaint, following a telephonic meet-and-confer on August 16, 2013, Morgan Stanley offered to retrieve and produce emails between specified Morgan Stanley employees and FRBNY email addresses, covering specific date ranges in September 2008 and mid-2009, pertaining to: (1) the

$85 billion FRBNY loan entered into on September 22, 2008, including the security taken for that loan, and (2) Starr's allegations relating to AIG's reverse share split (hereinafter the "**FRBNY Loan-Related Document Production**").  Starr requested that Morgan Stanley add a further email custodian, to which Morgan Stanley agreed, and Starr then agreed to the FRBNY Loan-Related Document Production, maintaining its position that it would require additional documents.  Ex. 3 at 3-6 (emails dated Aug. 19, 2013, Aug. 20, 2013, and Aug. 22, 2013).

On October 29, 2013 and October 31, 2013, having reviewed thousands of pages of documents generated by the agreed search and retrieval criteria, Morgan Stanley completed the FRBNY Loan-Related Document Production, turning over a total of 2,017 pages of documents.  Exs. 5, 6.

**2.     Morgan Stanley's Agreed Production Of AIG-Related Valuation Presentations**

On September 4, 2013, Morgan Stanley and Starr had another telephonic meet-and-confer, at which Starr's counsel articulated a request for final AIG valuation presentations that Morgan Stanley made to the FRBNY in connection with two AIG-related projects, known as "Project Independence" and "Project Destiny."  On September 13, 2013, Morgan Stanley informed Starr that it would proceed with the agreed FRBNY Loan-Related Document Production and at the same time consider how best to address Starr's additional request for final valuation materials delivered to the FRBNY in the course of Project Independence and Project Destiny.  Ex. 3 at 2-3 (email dated Sept. 13, 2013).

On October 17, 2013, and directly contrary to Starr's suggestion in its motion papers that Morgan Stanley has "a file available either electronically or in hard copy that the business could access for these documents," Starr Mem. at 14, Morgan Stanley informed Starr that its investigation had revealed that those final valuation presentations were not pre-organized

in a way that they could be easily identified for production.  Ex. 3 at 1 (email dated Oct. 17,

2013).  Instead, as discussed during a telephonic meet-and-confer on November 8, 2013, Morgan

Stanley would have to retrieve additional emails sent to the FRBNY, and review those emails

and their attachments to identify the final valuation presentations.  Ex. 7 at 3-5 (emails dated

Nov. 8, 2013, at 3:19pm, 4:46pm, and 5:13pm).

   Subject to its objections, Morgan Stanley informed Starr that it was prepared to

undertake that exercise, but that Morgan Stanley believed the costs would be disproportionate to

the relevance of the material sought, especially in light of Morgan Stanley's non-party status.

Thus, Morgan Stanley stated that if Starr wished Morgan Stanley to retrieve, review and produce

those materials, then Starr would need to meet the costs.  Ex. 3 at 1 (email dated Oct. 17, 2013).

   Following a meet-and-confer call on November 8, 2013, Starr requested that

Morgan Stanley search for the Project Independence/Project Destiny final valuation

presentations by retrieving emails from 21 employees, and it also proposed a set of search terms.

Ex. 7 at 4-5 (email dated Nov. 8, 2013, at 3:19pm).  Morgan Stanley agreed to the search terms,

and, in the interests of time and expense, proposed limiting the email retrieval to four custodians

and to the period October 1, 2008 through December 31, 2011, to which Starr agreed.  *Id*. at 3-4

(emails dated Nov. 8, 2013, at 4:46pm and 5:13pm).  Morgan Stanley retrieved the agreed set of

documents, and informed Starr that Morgan Stanley would have to review a total of 8,873

documents.  *Id*. at 2-3 (email dated Nov. 18, 2013, at 2:05pm).

   Morgan Stanley then summarized the agreement as to the Project Independence

and Project Destiny-related valuation presentations (the "**Agreed Valuation Production**").

Morgan Stanley would produce "the final valuation materials that Morgan Stanley provided to

the FRBNY in connection with Project Independence/Project Destiny, provided that it is

understood that this will finally satisfy Morgan Stanley's document production obligations." *Id*. (emphasis added).  In exchange for Starr's acknowledgment that this would finally satisfy Morgan Stanley's document production obligations, Morgan Stanley agreed that it would pay for the retrieval, review and production costs, and drop its request that Starr pay those amounts. *Id*. Starr's counsel responded: "We will agree to the set of documents listed below." *Id*. at 2 (email dated Nov. 18, 2013, at 2:11pm) (emphasis added).

The Agreed Valuation Production was subject to a limited carve-out, designed to address the situation whereby the agreed search parameters failed to capture a specific final Project Independence or Project Destiny valuation presentation, and where the existence of such a presentation could be demonstrated by other evidence.  As Starr's counsel put it, "if it becomes obvious that there are clearly key documents missing from the search collection, we will come back to you with a list of specific documents that we believe to be responsive that are missing. For example, if we see four emails referencing a July 21, 2009 presentation but it is nowhere to be found in the production, we will request that presentation." *Id*. at 3 (email dated Nov. 8, 2013, at 5:13pm) (emphasis added).  Morgan Stanley confirmed that the Agreed Valuation Production was "subject to [Starr's] right, as set forth in your 5:13pm email of November 8, to request that we search for a specific document if it's clear from other evidence that such a document exists but for some reason it isn't produced as a result of the review we are about to begin." *Id*. at 2-3 (email dated Nov. 18, at 2:05pm) (emphasis added).  Starr's counsel emailed their agreement to these terms. *Id*. at 2 (email dated Nov. 18, 2013, at 2:11pm).

The Agreed Valuation Production was held up for a few days while Morgan Stanley addressed an error introduced into the process by Starr's counsel. Ex. 8 at 1-2 (emails dated Dec. 4, 2013, at 10:11am and Dec. 9, 2013, at 4:38pm).  Having cleared up that issue,

Morgan Stanley made the Agreed Valuation Production on December 10 and 13, 2013, bringing the total number of pages produced by Morgan Stanley to 4,075.  Exs. 9, 10.

Morgan Stanley's Agreed Valuation Production contained a total of 120 presentation decks.  Of those 120 presentations, 79 contained valuation analysis relating to AIG.  Davies Decl. ¶ 10.

**B.**     **Starr Agrees To Limit The Very Broad Deposition Subpoena It Served On Morgan Stanley**

On October 28, 2013, Starr served on Morgan Stanley a Rule 30(b)(6) deposition subpoena.  Ex. 4 (the "Deposition Subpoena").  The Deposition Subpoena purported to require Morgan Stanley to prepare and designate a corporate representative to testify to a range of open-ended topics covering a multi-year period.  Those topics included not only Morgan Stanley's work for the FRBNY in connection with the September 2008 FRBNY loan, but also any and all aspects of "AIG's restructuring and/or disposition of corporate assets after September 16, 2008," and "Morgan Stanley's engagements with the Government from 2008 through 2011 in matters concerning or related to AIG."  *Id.* at 3 ¶¶ 1, 3, 5.

Beyond Morgan Stanley's AIG-related work for the FRBNY, the Deposition Subpoena demanded a corporate representative to testify about two topics that have no bearing on the merits of Starr's lawsuit:

- Morgan Stanley's access to any loan facilities or other financing or financial assistance provided by the Government to it in 2008, including Morgan Stanley's conversion into a bank holding company, assistance through the Primary Dealer Credit Facility, the Discount Window and TARP; and

- Morgan Stanley's communications with Andrew Ross Sorkin for his book, Too Big To Fail.

*Id.* at 3 ¶¶ 2, 4.

During a telephonic meet-and-confer on November 8, Morgan Stanley articulated several objections to the Deposition Subpoena, including objections to the relevance of testimony concerning the financial or other assistance provided to Morgan Stanley in 2008 and to Mr. Ross Sorkin's book. Morgan Stanley also interposed an objection to the extent that the breadth of topics 1, 3 and 5 would represent an end-run around the limitations that had been agreed on the scope of Morgan Stanley's document production concerning its AIG-related work for the FRBNY. Davies Decl. ¶¶ 4-6.

To prepare a corporate representative to testify to events that took place up to five-and-a-half years ago, Morgan Stanley would have to retrieve documents to refresh and prepare such a witness. It would make no sense for Starr and Morgan Stanley to agree to limit Morgan Stanley's document production to the FRBNY Loan-Related Production and the Agreed Valuation Production, yet to require Morgan Stanley to prepare a witness on a broader set of topics, because that would effectively require Morgan Stanley to retrieve yet more documents to prepare a witness to testify.

With respect to topics 1, 3 and 5, Starr's counsel stated that Starr would be seeking a broad narrative with an explanation of sources for facts and figures contained in presentations made by Morgan Stanley to the FRBNY. *Id*. ¶ 6. Thus, it was agreed during the November 8 meet-and-confer that Starr would provide to Morgan Stanley ahead of the deposition the documents about which it intended to question the Morgan Stanley witness. Ex. 7 at 4-5 (email dated Nov, 8, 2013, at 3:19pm). In an email sent shortly after that call, Starr's counsel noted that "we agreed to discuss the scope of topics 1, 3, and 5 following the receipt of documents," *id*., which represented Starr's agreement and acknowledgment that the Morgan Stanley witness would not be expected to testify to topics outside the scope of the document

production. *See also* Davies Decl. ¶ 7. After the call, Starr also provided additional detail concerning the testimony it intended to seek pursuant to paragraph 2 of the Deposition Subpoena. Ex. 7 at 4-5 (email dated Nov. 8, 2013, at 3:19pm); Ex. 16 at 6 (email dated Jan. 14, 2014, at 10:26am).

Consistent with Morgan Stanley's clear understanding of what had been agreed during the November 8 call, during a further meet-and-confer call on December 2, 2013, Morgan Stanley reminded Starr's counsel of the agreement that the deposition would not represent an end-run around the limitations that had been agreed on the scope of Morgan Stanley's document production obligations. Starr confirmed that it would conform deposition topics 1, 3 and 5 to track the scope of the agreed document production, and that Starr would do that when it re-noticed the deposition, "after we have the date set." Davies Decl. ¶ 8.

**C.     Starr Unjustifiably Reneges On Both Agreements By Demanding Documents That May Not Even Exist And By Refusing To Conform The Deposition Subpoena To Reflect The Parties' Agreement**

On January 8, 2014, without even acknowledging its agreement that the FRBNY Loan-Related Document Production and the Agreed Valuation Production had fully satisfied Morgan Stanley's document production obligations, Starr demanded that Morgan Stanley produce "a presentation or other document that describes the process by which Morgan Stanley valued AIG's collateral for the revolving credit facility per the September 22, 2008 Credit Agreement." Ex. 12.

Morgan Stanley promptly reminded Starr that it had agreed to a set of search and production criteria that fully and finally satisfied Morgan Stanley's production obligations, and confirmed that Morgan Stanley's compliance with those agreed criteria did not locate evidence of a document of the kind postulated by Starr. Ex. 13. At that point, Starr resorted to accusations that Morgan Stanley was being "obstructionist." Ex. 14 at 1 (email dated Jan. 10,

2014).  Instead of providing evidence that such a document actually existed, Starr merely

asserted that "we believe [it] must exist."  *Id*.

        Morgan Stanley responded again that it had located no evidence of any document

of the kind hypothesized by Starr, and reminded Starr that it had agreed that the FRBNY Loan-

Related Production and the Agreed Valuation Production had fully satisfied Morgan Stanley's

document productions.  Ex. 16 at 5-6 (email dated Jan. 15, 2014, at 1:36pm).  Morgan Stanley

also explained that Starr's new demand did not fall within the narrow carve-out to the parties'

agreement as to the Agreed Valuation Production because: (1) to the extent Starr was seeking a

document from the September 2008 timeframe, that pre-dated the agreed timeframe of the

Valuation Presentation Production, and (2) Starr had provided no evidence that any such

document actually existed.  *Id*.

        In response, Starr simply asserted, contrary to the facts, and now broadening its

demand, that Morgan Stanley had agreed to provide "<u>any</u> missing final presentations."  *Id*. at 4-5

(email dated Jan. 15, 2014, at 4:48pm) (emphasis added).  Starr has since repeated that baseless

position several times, including in its motion papers.  Starr Mem. at 2, 9; *see also* Exs. 16 at 2-3

(email dated Jan. 22, 2014), 18 at 2-3.

        At the same time as it was reneging on its agreement to limit Morgan Stanley's

document production obligations, Starr was refusing to comply with its agreement to conform

the Deposition Subpoena to the scope of the topics covered by Morgan Stanley's document

production.

        On January 13, 2014, Starr re-noticed Morgan Stanley's deposition, for February

7, 2014.  Ex. 15.[3]  Contrary to the agreement discussed on November 8 and December 2, 2013,

---

[3] As is entirely usual in such situations, setting a date for the Morgan Stanley deposition required
a certain amount of coordination of schedules.  In light of the agreement tying the deposition to

however, the new deposition subpoena did not narrow topics 1, 3 and 5 so that they tracked the

agreed scope of Morgan Stanley's document production.   Morgan Stanley immediately

requested that Starr modify the Deposition Subpoena as agreed on December 2, 2013.  Ex. 16 at

6-7 (email dated Jan. 13, 2014, at 6:49pm).

Starr then denied that it had agreed to modify the Deposition Subpoena, and

asserted that Morgan Stanley's counsel was "mistaken" about what had been discussed.  *Id*. at 4

(email dated Jan. 15, 2014, at 4:48pm).  Morgan Stanley reassured Starr that it would not prevent

the witness from answering otherwise unobjectionable questions outside the scope of the

document production, based on the witness's personal knowledge, but called on Starr's counsel

to comply with its earlier commitment.  *Id*. at 3-4 (email dated Jan. 19, 2014, at 4:41pm).

Starr's counsel again resorted to *ad hominem* attacks, accusing Morgan Stanley of

obstructionism and of playing games.  Not only did Starr refuse to comply with the agreements

previously reached, but it delivered an ultimatum, introduced by the high-handed announcement

that "[t]his is what will happen," that, unless Morgan Stanley agreed to a set of unwarranted

demands, Starr would file a motion to compel and seek to limit Morgan Stanley's ability to

---

the production of documents, and Starr's agreement to provide documents ahead of the
deposition, it was clear that the deposition could not take place until Morgan Stanley had
completed the Agreed Valuation Production, which it did on December 13, 2013.  On December
16, 2013, Morgan Stanley offered two firm deposition dates: February 6 and 7, 2014.  Ex. 11 at 2
(emails dated Dec. 16, 2013, at 4:04pm and 6:25pm).  Starr refused to accept those dates because
they post-dated the date for disclosure of expert reports, and stated the expert report deadline
would not be moved "to accommodate <u>one non-party witness</u>."  *Id*. at 1 (email dated Dec. 16,
2013, at 6:31pm) (emphasis added).  The very next day, however, the parties jointly moved the
Court to extend the deadline for completion of depositions through February 28, 2014, revealing
that the Morgan Stanley deposition was actually <u>one of fifteen</u> that had not been scheduled.  ECF
No. 198.  Starr ultimately agreed to schedule the Morgan Stanley deposition on February 7,
2014.  Ex. 16 at 7 (email dated Jan. 13, 2014, at 12:47pm).  Regrettably, on January 29, 2014, the
witness selected to testify to topics 1, 3 and 5, as narrowed by agreement, developed an
unavoidable scheduling conflict.  Morgan Stanley promptly notified the parties, and
simultaneously provided two alternative dates during the deposition period.  *Id*. at 1 (email dated
Jan. 29, 2014, at 7:47pm).

respond by requiring a response within two days.  *Id*. at 2-3 (email dated Jan. 22, 2014, at 9:13am).

Morgan Stanley replied that the records of its extensive efforts to satisfy Starr's demands belied the claims of obstructionism.  Ex. 17 at 1.  Morgan Stanley also noted that motion practice was unnecessary, given that there was no reason to believe that a document of the kind Starr was demanding actually exists, and that Morgan Stanley had committed not to prevent the witness from answering an otherwise unobjectionable question based on personal knowledge.  *Id*. at 2-3.

Starr sent another letter, in which it again failed to identify any evidence that any valuation presentation of the kind referenced actually existed, and in which it indicated that it might have misunderstood Morgan Stanley's position as to the scope of the Deposition Subpoena.  Ex. 18.  Morgan Stanley clarified that it was not saying that Starr should be prevented from questioning the witness about Morgan Stanley's work simply because a particular deposition exhibit was produced by someone other than Morgan Stanley.  Ex. 19 at 2-3.  Rather, Morgan Stanley explained that the scope of questioning should correspond to the substantive scope of Morgan Stanley's document production, so that Morgan Stanley would be able properly to prepare a witness to testify to events that took place up to five-and-a-half years ago.  *Id*.

As foreshadowed by its increasingly belligerent correspondence, Starr evidently had irrevocably decided to file a motion to compel regardless of what Morgan Stanley offered to do.   Starr declared an "impasse" and filed its unnecessary and unwarranted motion.

## ARGUMENT

I.   **THE COURT SHOULD DENY STARR'S MOTION TO COMPEL THE PRODUCTION OF HYPOTHETICAL DOCUMENTS, IN VIOLATION OF STARR'S PRIOR AGREEMENT**

As described above, Morgan Stanley negotiated in good faith with Starr an agreed set of document production obligations, which Morgan Stanley has performed at considerable cost.  Morgan Stanley bargained for and received an agreement from Starr that the FRBNY Loan-Related Production and the Agreed Valuation Production would fully and finally satisfy Morgan Stanley's document production obligations.  Morgan Stanley paid for that agreement by meeting the costs of the Agreed Valuation Production itself and giving up its request that Starr pay those costs.  *See* Statement of Facts, ¶ A, *supra*.  Under these circumstances, the Court should deny Starr's motion to compel Morgan Stanley to search for and produce additional documents, in violation of that agreement.

The meet and confer process would be futile, and there would be little incentive to engage in good faith in that process, as Morgan Stanley has done, if parties could simply renege on the resulting agreements, which is what Starr seeks to do here.  *See Packard v. Darveau*, 4:11CV3199, 2012 WL 4443505, at *1 (D. Neb. Sept. 25, 2012) ("So when the parties later ask the court to enforce their mutual agreement on discovery limitations, the court will interpret the language of the agreement, to the extent possible, consistent with the parties' implementation of that agreement.").

As Morgan Stanley has shown, Starr's argument that Morgan Stanley agreed to produce "any missing final presentations" is so completely refuted by the written record that this Court need read nothing more than Starr's own contemporaneous summary of the parties' agreement to deny this motion.  As Starr's counsel put it at the time, "if it becomes obvious that there are <u>clearly key documents</u> missing from the search collection, we will come back to you

with a list of <u>specific documents</u> that we believe to be responsive that are missing.  For example, <u>if we see four emails referencing a July 21, 2009 presentation but it is nowhere to be found in the production, we will request that presentation</u>."  Ex. 7 at 3 (email dated Nov. 8, 2013, at 5:13pm) (emphasis added).

Starr's correspondence with Morgan Stanley and Starr's moving papers to this Court fail entirely to demonstrate that any specific final valuation presentation was omitted from the Agreed Valuation Production, let alone identify any reference to a specific presentation.  As Morgan Stanley has shown, the Agreed Valuation Production includes 120 presentations, 79 of which contain at least some valuation analysis.  Starr's argument that some unidentified, speculative document of uncertain date was omitted from that production is based on nothing more than its own facially speculative assertions that "we believe [it] must exist."  *See* Statement of Facts, ¶ A, *supra*.  Indeed, Starr does not even maintain a consistent position as to the date of the hypothetical "missing" presentation, referencing both September 2008 and March 2009.  Ex. 18 at 1.

As to the September 2008 timeframe, Starr cited a document produced by Morgan Stanley that states that Morgan Stanley conducted a "'[v]aluation of collateral for purposes of demand notices for funding prior to execution of definitive agreement.'"  Ex. 18 at 1; *see also* Starr Mem. at 9.  That document does not, however, show that such valuation work was memorialized in a presentation, and there is no reason whatsoever to think that it was, let alone the date of such a presentation or any other pertinent details.  Moreover, any presentation that had been prepared in that timeframe, *i.e.*, September 2008, would clearly fall outside the scope of the narrow range of specific documents that Starr retained the right to request, which was limited to the period beginning October 1, 2008.  *See* Statement of Facts, ¶ A, *supra*.

As to Starr's speculation that a March 2009 presentation may have been omitted, Morgan Stanley's production in fact contains a March 30, 2009 presentation entitled "Valuation Update" that contains Morgan Stanley's valuation estimates for AIG's business.  Davies Decl. ¶ 11.  This may well be the March 2009 presentation referenced by Starr, and this calls into question whether Starr has actually reviewed the documents produced by Morgan Stanley before filing this motion.

Thus, Starr has failed utterly to provide any basis for the Court to order Morgan Stanley to search for and produce any additional valuation presentations.  For all these reasons, the Court should deny Starr's motion to compel the production of additional hypothetical valuation presentations.

## II.     THE COURT SHOULD QUASH STARR'S DEPOSITION SUBPOENA, WHICH IS OVERBROAD, INTRUSIVE, UNDULY BURDENSOME AND IRRELEVANT

As Morgan Stanley has shown, Starr served a very overbroad Deposition Subpoena on Morgan Stanley, subsequently agreed to narrow it, and then reneged on that agreement.  Under these circumstances, Morgan Stanley now respectfully moves to quash the Deposition Subpoena in its entirety.

Topics 1, 3 and 5 do not seek discovery of testimony relevant to any claim or defense in this lawsuit, nor are they reasonably calculated to lead to the discovery of admissible evidence.  *See* RCFC 26(b)(1).  In particular, valuation analyses conducted by a non-party advisor (*i.e.*, Morgan Stanley) to another non-party (*i.e.*, the FRBNY), are completely irrelevant to the issues in this lawsuit—whether the government coerced AIG into accepting the terms of the bailout and whether the government had the authority to take an equity stake in AIG, *In re United States*, Misc. No. 163, --- F. App'x ----, 2013 WL 5630921, at *5 (Fed. Cir. Oct. 16, 2013).  Moreover, and perhaps more importantly, Starr is attempting to seek what amounts to

expert opinion evidence through non-party fact discovery.  *See, e.g.*, *Thompson v. Glenmede Trust Co.*, No. CIV. A 92-5233, 1995 WL 752422, at *4 (E.D. Pa. Dec. 19, 1995) (quashing a deposition notice to a non-party banker who had produced contemporaneous opinions on the transaction that was the subject of the lawsuit, viewing him as analogous to an unretained expert, and noting that such a witness "cannot be viewed simply as a factual witness").  These constitute independent reasons to deny Starr's motion.

Equally irrelevant is Topic 2, which seeks testimony about assistance the federal government provided to Morgan Stanley beginning in 2008.  No doubt Starr will contend that this is relevant to its claim that AIG was treated less favorably than other financial services companies.  The assistance received by Morgan Stanley and other financial services organizations is, however, a matter of public record.  For example, detailed information about the assistance provided to Morgan Stanley and other broker-dealers through the Primary Dealer Credit Facility ("PDCF") is available on the Federal Reserve's website.[4]  Similarly, detailed information about the access that Morgan Stanley and other financial institutions had to the Troubled Asset Relief Program ("TARP") is available from the Congressional Budget Office.[5]  Starr can take this publicly available official information and make its arguments about whether AIG was treated unfairly, but it has no need for deposition testimony from Morgan Stanley on these issues.

Topic 4, which seeks deposition testimony on Morgan Stanley's communications with Andrew Ross Sorkin in relation to his work on <u>Too Big To Fail</u>, is clearly irrelevant to any issue in this lawsuit.  Even assuming the relevance of facts relating to the transaction at issue in

---

[4] *See* http://www.federalreserve.gov/newsevents/reform_pdcf.htm (last visited Feb. 4, 2014).

[5] *See* http://cbo.gov/sites/default/files/cbofiles/ftpdocs/99xx/doc9961/01-16-tarp.pdf (last visited Feb. 4, 2014); http://www.cbo.gov/sites/default/files/cbofiles/ftpdocs/100xx/doc10056/06-29-tarp.pdf (last visited Feb. 4, 2014).

this lawsuit, hearsay evidence about discussions, years after the events, between a journalist and a non-party advisor to another non-party are wholly irrelevant and inadmissible.

As these topics clearly show, once again, and notwithstanding the Federal Circuit's admonitions, Starr is engaged in "a fishing expedition rather than an effort to establish legally material facts." *In re United States*, 2013 WL 5630921, at *5. To determine whether a deposition subpoena represents an undue burden on a non-party, "the Court 'must balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it.'" *Anwar v. Fairfield Greenwich Ltd.*, No. 09 Civ. 118 (VM)(FM), --- F.R.D. ----, 2013 WL 6172443, at *3 (S.D.N.Y. Nov. 26, 2013) (denying motion to compel depositions of non-party SEC witnesses where the testimony sought was of limited relevance and the depositions would have imposed undue burden and expense) (quoting *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 299 (S.D.N.Y. 2009)). It is clear that testimony on Topics 2 and 4 would serve no useful purpose, while subjecting Morgan Stanley to the substantial expense of having to prepare witnesses to speak to provide that unnecessary and irrelevant testimony.

Further, as Morgan Stanley has shown, Starr agreed to narrow Topics 1, 3 and 5 to correspond to the scope of Morgan Stanley's agreed document production. *See* Statement of Facts, ¶ B, *supra*. Morgan Stanley made that request because it takes very seriously its obligation to prepare a corporate representative under Rule 30(b)(6), because preparing a witness to testify to events that happened several years ago would require the retrieval and review of documents to prepare and refresh the witness, and because it would make no sense to require Morgan Stanley to retrieve and review a broader range of documents to prepare a deposition

witness than Starr had agreed to accept in full satisfaction of Morgan Stanley's document production obligations.

Although this limitation was, for these reasons, important to Morgan Stanley, Morgan Stanley made clear that it should have little, if any, impact on the scope of testimony that Starr would be able to obtain from the witness, who had a lead role in Morgan Stanley's work for the FRBNY, as Morgan Stanley made clear that it would not prevent the witness from answering an otherwise unobjectionable question based on his personal knowledge. *See id.* Unaccountably, Starr rejected this reasonable and practical proposal, and filed its motion to compel, which is again apparently aimed at undoing the agreed scope of Morgan Stanley's document production obligations.

Under all these circumstances, it is clear that Starr is seeking broad and irrelevant testimony and attempting, through the mechanism of Rule 30(b)(6), to undo the agreement into which it entered to limit Morgan Stanley's document production. Morgan Stanley has already incurred significant burden and expense in addressing Starr's discovery demands, and, in reneging on its agreements, Starr has violated and, unless restrained by the Court, will continue to violate its obligation under Rule 45(c)(1) to avoid imposing undue burden and expense on non-party Morgan Stanley. To avoid undue further burden and expense, the Deposition Subpoena should be quashed pursuant to Rules 45(c)(3)(A)(iv) and 45(c)(2)(B)(ii).

## III. ANY AWARD OF FEES AND COSTS SHOULD BE IN FAVOR OF MORGAN STANLEY, NOT STARR

Starr's motion papers include a footnoted request for an award of fees and costs against Morgan Stanley. *See* Starr Mem. at 3 n.1. There is, however, no basis whatsoever for such an award. To the contrary, to the extent anyone should be ordered to pay the fees and costs necessitated by this motion, it is Starr.

First, there is no basis whatsoever for Starr's assertions that Morgan Stanley has imposed "burdens" and "disruption," that required the filing of this motion. *See id.*  To the contrary, the record is clear that Morgan Stanley has sought to work with Starr to resolve Starr's purported concerns, and that it was Starr's attempts to renege on its agreements that led to the filing of this motion.  Indeed, the idea that Morgan Stanley caused a disruption to the expert discovery schedule is nonsensical.  Not only does Starr provide no explanation as to how any testimony from Morgan Stanley would even be relevant to Starr's expert reports, but the Morgan Stanley deposition is one of fifteen that the Court ordered could be taken in January and February, and Morgan Stanley has undertaken to have its witnesses appear during the period ordered by the Court.

Second, the only source of authority that Starr cites is Rule 37, but that provision, which generally applies to motions to compel against parties only, in no way authorizes the sanctions that Starr seeks.  *See, e.g., Hand Picked Selections, Inc. v. Handpicked Wines Int'l Pty Ltd.*, No. CV 06-0356(FB)(JO), 2006 WL 1720442, at *2 (E.D.N.Y. June 22, 2006) (discussing Federal Rule of Civil Procedure 37 and holding that "[i]f AM is properly considered a non-party, as Wines contends it should, then Rule 37 is simply inapposite"); *SEC v. Kimmes*, No. M18-304, 1996 WL 734892, at *11 (S.D.N.Y. Dec. 24, 1996) (holding that Rule 37 does not authorize sanctions against a non-party for failing produce documents in response to a Rule 45 document subpoena).[6]

Rule 37(a)(3)(B)(i) and (ii) authorizes motions to compel against "deponents," as distinct from "parties," but those provisions apply only when a witness fails to answer a question or when a corporation fails to make a designation under Rule 30(b)(6).  Neither situation is

---

[6] Both of the cases cited by Starr involved awards of fees and costs against parties, not non-parties.

relevant.  Although Starr complains that Morgan Stanley has not pre-identified the witness or witnesses who would speak to Topics 2 and 4, Morgan Stanley has confirmed that it intends to present all its witnesses on February 18, if the Court were to permit the deposition to proceed. Ex. 16 at 1 (email dated Jan. 30, 2014, at 4:12pm).  Morgan Stanley has also, as a matter of courtesy, identified the witness who would speak to Topics 1, 3 and 5, and has explained that it has not yet determined who would speak to Topics 2 and 4.  Ex. 16 at 1 and 3 (emails dated Jan. 19, 2014, at 4:41 pm, and Jan. 30, 2014, at 4:12pm).  Morgan Stanley asked Starr to provide support for its argument that a non-party must pre-designate its witnesses weeks ahead of the deposition, Ex. 17 at 3, but Starr has been unable to cite any such authority, Ex. 18.  Under all these circumstances, Morgan Stanley's position is clearly substantially justified, rending an award of fees and costs inappropriate.  *See* RCFC 37(a)(5)(A)(ii).

The record is very clear, however, that Starr has unnecessarily filed this motion, and has improperly reneged on its prior agreements.  Under these circumstances, to the extent the Court believes that any award of fees and costs is appropriate, the Court should order Starr to pay Morgan Stanley's fees and costs in opposing and bringing this cross-motion, pursuant to Rule 37(a)(5)(B) (to the extent the Court finds that Rule 37 is applicable), and/or under Rule 45(c)(1).

## CONCLUSION

For the above-mentioned reasons, non-party Morgan Stanley & Co. LLC respectfully requests that the Court deny Starr's motion to compel the production of further documents and deposition testimony, grant Morgan Stanley's cross-motion to quash Starr's Rule 30(b)(6) deposition subpoena served January 13, 2014, and, to the extent the Court considers that any award of costs and fees is warranted, make such an award in favor of non-party Morgan Stanley.

Dated:  New York, New York
        February 4, 2014

ALLEN & OVERY LLP

By:    /s/ Andrew Rhys Davies
        Andrew Rhys Davies

1221 Avenue of the Americas
New York, New York 10020
Tel: 212-610-6300

*Attorneys for Morgan Stanley & Co. LLC*

## CERTIFICATE OF SERVICE

In addition to service by ECF, I hereby certify that on February 4, 2014, I caused a true and correct copy of the foregoing "Memorandum of Law of Non-Party Morgan Stanley & Co. LLC In Opposition to Plaintiff's Motion to Compel Documents and Deposition Testimony and in Support of Morgan Stanley's Cross-Motion to Quash the Deposition Subpoena" and the "Declaration of Andrew Rhys Davies in Support of Morgan Stanley & Co. LLC's Opposition to Starr International Company, Inc.'s Motion to Compel Documents and Deposition Testimony and Morgan Stanley's Cross-Motion to Quash the Deposition Subpoena" to be served on each of the following:

By overnight delivery on Starr International Company, Inc.'s Attorney of Record:

David Boies
Boies, Schiller & Flexner LLP
333 Main Street
Armonk, NY 10504

*Counsel for Plaintiff Starr*
*International Company, Inc.*
*and for the Plaintiff Class*

By hand to Starr International Company, Inc.'s Of Counsel:

Robert J. Dwyer
Alanna C. Rutherford
Julia C. Hamilton
Boies, Schiller & Flexner LLP
575 Lexington Avenue
New York, NY 10022

 /s/ Timothy Reibold
Timothy Reibold
