## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

STARR INTERNATIONAL COMPANY,
INC., Individually and on Behalf of the
Classes,

                            Plaintiff,

              v.

UNITED STATES,

                          Defendant.

:
:
:
:
:
:
:

No.  11-00779C (TCW)

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

### JOINT STATUS REPORT

Pursuant to the Court's order dated August 25, 2014, Defendant, the United States, and

Plaintiff Starr International Company, Inc., individually and on behalf of the Credit Agreement

and Stock Split Classes, respectfully submit agenda items for discussion during the pretrial

conference to be held on September 15, 2014.  Below is a list of the parties' joint agenda topics,

followed by Plaintiffs' proposed agenda topics, followed by the United States' proposed agenda

topics.  Finally, Plaintiffs include two additional issues of disagreement that require additional

explanation from the parties.

**Parties' joint proposed agenda items**:

1.       The parties jointly request that the Court permit the parties to submit deposition

designations for witnesses who are both beyond the subpoena power of the Court because they

reside outside of the country and who will not voluntarily appear at the proceedings in this case.

Thus far, the parties are only aware of one witness to which this applies: John Studzinski, Senior

Managing Partner, Blackstone Group, a British citizen residing in England.  The parties will

work together to create a schedule whereby they will designate and counter-designate testimony that can be submitted for the Court's review, along with any accompanying trial exhibits.

The parties may require similar dispensation from the Court's normal procedure for one to two other witnesses who also reside overseas and would be unwilling to travel.  The parties will notify the Court beforehand if any witness changes his or her mind and now indicates that he or she will not voluntarily appear and is beyond the subpoena power of the Court.

2.     No testimony or exhibits discussed during trial will be deemed to cause any waiver of attorney client privilege or deliberative process privilege with respect to matters that concern the subjects produced following Discovery Order No. 6 and in reliance upon the parties' stipulations and the Court's orders entered approving such stipulations under Federal Rule of Evidence 502(d).

3.      The parties stipulate to the authenticity of all documents on each other's exhibit lists with the exception of handwritten documents.   This stipulation as to authenticity does not preclude a party from objecting on the ground that a document purported to be a final (or sent) document is actually a draft (or unsent) document.

4.     Discuss assertions of confidentiality of exhibits.

**Plaintiffs' proposed agenda item**:

1.     Open courtroom – Consistent with traditional courtroom proceedings, Plaintiffs believe that the courtroom should be open for the duration of the trial proceedings and that all documents previously considered confidential should no longer be considered confidential during trial.  In exceptional cases, non-parties may still apply to have their documents withheld from the public record but all testimony should take place in open court.

2.     Opening Statements

**The United States proposed agenda items**:

1.      Clarification that defendant will be allowed to examine witnesses first called by Starr, who are also on defendant's witness list, in a manner that may exceed the scope of direct examination, to permit the witnesses to complete their testimony in one appearance (rather than having to appear a second time during defendant's case).  The order would clarify that all witnesses may rely upon this one-appearance cross examination scope rule, regardless of whether they have to travel to Washington, D.C.  Furthermore, clarification that defendant may choose to waive cross of a witness who appears in both parties' cases and instead examine the witness as part of defendant's case-in-chief and that the scope of that examination may cover subjects raised by Starr in its case-in-chief.

2.      The Court's Pretrial Order states "Once counsel tenders a witness to opposing counsel for cross-examination, the presenting counsel may not hold substantive discussions with the witness until cross-examination is concluded."  Order at 7a.  Defendant requests clarification that when witnesses on defendant's witness list (including former United States Government employees and witnesses from the Federal Reserve Bank of New York) are called first in Starr's case, this rule applies differently — counsel for defendant may not hold substantive discussions with its own witnesses during Starr's examination, but may communicate with its own witnesses thereafter, before its own examination.

3.      The parties shall be permitted to make minor modifications to their exhibit lists, including up to 25 additions, up to one week before the start of trial (September 22, 2014) and subject to objection by each party.  The parties will each have three days to notify each other if they wish to maintain confidentiality over any additions.  Each party shall notify the other three

business days before trial if it wishes additional expert "relied upon" documents to be added to the other party's exhibit list.

4. The parties must notify each other at least four business days in advance of calling a "may call" witness.

5. Plaintiffs must notify defendant by September 16, 2014 whether it intends to call any of its expert witnesses currently on its "may call" list in its case in chief.

6. Entitlement to and proper method of calculating prejudgment interest should be bifurcated from the upcoming trial and should instead be addressed only if necessary after the Court issues its judgment.

7. All demonstratives, except for purely textual slides for use in opening or closing, or with experts, shall be exchanged by hand delivery and electronically 72 hours in advance of their use at trial.

**Other Issues For Review of the Court:**

The parties intend to address the aforementioned items at the September 15, 2008 conference.  Plaintiffs also submit two additional issues discussed in greater detail below with Defendant's responses: (1) Plaintiffs' request certification of additional class members without objection from Defendant; and (2) Plaintiffs' contention that Defendant has asserted frivolous objections to Plaintiffs' trial exhibits.

**I. Certification of Additional Class Members**

***Plaintiff's Position***

Starr respectfully requests that the Court accept as members of the Credit Agreement Class and/or the Stock Split Class a) 6,084 persons or entities whose enrollment forms were submitted after the September 16, 2013 deadline set by the Court's order of April 25, 2013 [Dkt.

4

120], and b) 121 persons or entities who submitted enrollment forms before September 16, 2013 and identified which Class or Classes they had opted into, after November 8, 2013; and c) 1,680 persons or entities who submitted enrollment forms but did not identify the Class or Classes to which they belong.

In accordance with the Court's April 25, 2013 Order setting forth a schedule for putative class members to enroll in the Classes, on November 15, 2013 Class Counsel, through its class administrator Rust Consulting, provided Defendant and the Court with a list of the 268,892 persons and entities who had submitted enrollment forms to join one or both of the Classes by September 16, 2013.[1]  *See* Declaration of Eric Schachter Concerning Class Membership at 8 & Ex. I (Nov. 15, 2013), [Dkt. 184] ("November Declaration").  Since November 8, 2013, Rust Consulting has received an additional 6,084 enrollment forms.  *See* Declaration of Eric Schachter ¶ 5 (attached hereto as Exhibit 1) ("Schachter Decl.").  Plaintiff respectfully requests that the Court accept as class members all persons or entities who submitted enrollments after September 16, 2013 and all enrollees who submitted forms either before or after the September 16, 2013 deadline without identifying the Class or Classes to which they belong.

Nearly all of the enrollment forms received after the deadline (5,777 of the 6,084 or approximately 95%) are attributable to a single Electronic Enrollment Form submitted by the Royal Bank of Canada ("RBC").[2]  Schachter Decl. ¶ 5 and Exhibit A.  At some point after November 15, 2013, upon learning that RBC had provided Rust with an incomplete list of

---

[1] This figure included 1,364 Enrollment Forms received after September 16, 2013 and before November 8, 2013.  November Declaration at 8 & Ex. J.  Starr requests these 1,364 Enrollment Forms be accepted as well.  Attached to the Schachter Declaration as Exhibit F is a schedule, previously submitted as Exhibit J to the November Declaration, of Enrollment Forms received after September 16, 2013 and before November 8, 2013.

[2] Capitalized terms not defined herein shall have the definition provided in the November 15, 2013 Declaration.

potential class members for purposes of mailing the Notice, RBC contacted Rust.  RBC then

submitted an Electronic Enrollment Form on behalf of their 5,777 clients inadvertently omitted

from RBC's prior submissions.  *Id.*  It would be especially unjust to exclude claimants who were

not timely identified to the Court through no fault of their own and indeed due only to an

unintentional and speedily corrected error of undetermined origin.

In addition to enrollment forms received since November 8, 2013, Starr and Rust request

the inclusion of all class members who returned Enrollment Forms that did not indicate into

which Class or Classes the class member intended to enroll.  121 class members subsequently

provided that information.  *See* Schachter Decl. ¶ 6.  As of August 29, 2014, there were 1,680

Enrollment Forms which did not indicate the Class or Classes the class member intended to join.

Rust received 72 of these 1,680 Enrollment Forms after September 16, 2013 (including 9

enrollments from RBC which did not identify the Class or Classes to which the class member

belongs).

The question of whether to permit late enrollment is an equitable decision within the

discretion of the court.  *Zients v. LaMorte*, 459 F.2d 628, 629-30 (2d Cir. 1972); *In re Agent

Orange Prod. Liab. Litig.*, 689 F.Supp. 1250, 1261 (E.D.N.Y. 1988).  Here, no prejudice will

result by the Court's decision to include these class members.  There have yet to be any

substantive decisions on liability or damages at trial affecting the Class as a whole.  Yet, over

6,000 additional putative class members are willing to opt to be bound by the outcome of that

decision whatever it may be.

Neither Defendant nor the existing members of the Classes will be prejudiced or

disadvantaged by the inclusion of putative class members who submitted their enrollments after

the September 16, 2008 deadline or who failed to indicate to which class they belong.  Including

these class members will have only a negligible effect on the total size of the Classes, increasing

overall Class membership by less than 3%.  Where, as here, no administrative or judicial

resources have been expended to validate Class Members' claims and trial has not commenced,

the interests of justice and efficiency will be served by ensuring that the putative class members

who submitted enrollments after the deadline or without indicating to which class they belong

are included in resolution of this litigation and do not have to resort to filing their own individual

claims.  Similarly, accepting all putative class members who did not indicate the Class or Classes

to which they belong will not prejudice any party, since all claims will be verified before

payment of any judgment.

     To exclude these putative class members, requiring them to bring and adjudicate

individual claims, would defeat the efficiencies which led the Court to certify the Classes

initially.  *See* Opinion and Order Regarding Class Certification at 8-9, Mar. 11, 2013, [Dkt. 100]

("Litigating the claims . . . in one action will achieve economies of scale in time, effort and

expense, because all plaintiffs within each class are affected by the same government action.")

(citation omitted).  Courts applying Fed. R. Civ. P. 23 have likewise been flexible in

"authoriz[ing] the filing of late claims after the deadline" in class action settlements requiring

affirmative opt-ins.  *See* Newberg on Class Actions § 8:37; 11:37 (4th ed. 2002) (*citing E.E.O.C.

v. Local 638*, 674 F.Supp. 91 (S.D.N.Y. 1987)).

     Accepting all individuals who express a desire to become Class Members is consistent

with decisions of other members of this Court to accept untimely filings.  In *Sabo v. United

States*, Judge George W. Miller permitted the Sabo class to extend the opt-in period so that late

enrollees would not be punished for logistical problems in receipt and mail delivery of the opt-in

forms.  Order at 2-3, Aug. 12, 2010, [Dkt.  64], 1:08-cv-00899-MMS ("the Court believes that

plaintiffs' requested 90-day extension of the opt-in period is a reasonable measure to ensure that as many individuals as possible can opt in to the class if they so desire."); *see also Toscano v. United States*, Order at 1, Sept. 20, 2011, [Dkt. 33], 1:08-cv-00910-EGB (granting plaintiff's motion to extend opt-in deadline to remedy mail complications).

    For the foregoing reasons, Plaintiffs request that the Court permit:

a) the 6,084 persons or entities who submitted enrollment forms after November 8, 2013, including

    i. the 5,768 persons or entities on whose behalf RBC submitted an Electronic Enrollment Form after September 16, 2013 identified in Exhibit B of the Schachter Declaration; and

    ii. the 316 additional persons or entities who submitted enrollment forms after the deadline identified in Exhibit C of the Schachter Declaration;

b) the 121 persons or entities who identified, after November 8, 2013,  the Class or Classes into which the person or entity opted identified in Exhibit D of the Schachter Declaration;

c) the 1,680 persons or entities who have not identified the Class or Classes into which the person or entity opted identified in Exhibit E of the Schachter Declaration; and

d) the 1,364 persons or entities who submitted enrollment forms after September 16, 2013 and before November 8, 2013 identified in Exhibit F of the Schachter Declaration, to opt into the action as class members.

### ***Defendant's Position***

    Without waiving our objections to class certification as set forth in our February 1, 2013 opposition to Starr's motion for class certification, without waiving any future objections to

whether these newly raised individuals actually meet the class requirements, and without waiving any and all defenses to shareholder standing and claims asserted in this case by the classes, the United States does not object to Starr's request that the additional class members identified above be permitted to opt in as class members.

## II.   Defendant's Document Objections

### *Plaintiff's Position*

The Government has objected to nearly every document listed on Plaintiffs' Proposed Trial Exhibit list. Setting aside those documents cited in expert reports and to be used at trial solely within the context of the bases for the expert opinions offered, the majority of the objections raised by the Government are on grounds of hearsay, citing Federal Rule of Evidence 802.  The vast majority of these objections lack any plausible legal basis, as: (1) the witnesses who made the statements are being called to testify at trial, (2) the documents at issue plainly constitute statements of Government employees or agents and therefore fall within Federal Rule of Evidence 801(d)(2), or (3) are otherwise public records subject to Federal Rule of Evidence 803(8).  Because Defendant's objections are frivolous and dealing with each *ad seriatim* as it is raised during trial is cumbersome and would cause undue delay, Plaintiffs' request that the Court overrule objections on the below referenced Plaintiffs' Trial Exhibits (PTX).

### A.   Party Opponent Statements Objected To As Hearsay.

Rule 801(d)(2) of the Federal Rules of Evidence provides that statements of a party opponent, including those of a party opponent's employee or agent, are not hearsay when offered against that party. Courts in the Federal Circuit have routinely applied this rule against the Government, stating that "[i]t is a 'widely accepted rule that admissions of a party-opponent under Rule 801(d)(2) are accorded generous treatment in determinations of admissibility.'" *Globe Savings Bank, F.S.B. v. United States*, 61 Fed. Cl. 91, 96 (Fed. Cl. 2004) (citing *Aliotta v.*

*National R.R. Passenger Corp.*, 315 F.3d 756, 761 (7th Cir. 2003)).  As this Court has previously held, FRBNY functioned as an agent of the Government with respect to the joint undertakings at issue in this case.  *See*, *e.g.*, Discovery Order No. 6, [Dkt. 182], at 12 ("In responding to the 2008 financial crisis, FRBNY was undoubtedly acting in its public capacity as an agent of the Government."); Discover Order No. 9, [Dkt. 230], at 2 n.1 ("In Discovery Order No. 6, the Court found that FRBNY was acting in its public capacity as an agent of the Government when responding to the 2008 financial crisis.").  In accordance with Federal Rule of Evidence 801(d)(2)(D), the statements of Government employees and FRBNY employees in responding to the 2008 financial crisis are admissible against the United States as statements of a party opponent.

By way of example, the chart below provides examples of the types of documents that the Government has objected to on hearsay grounds that readily qualify as Government admissions:[3]

| Description | PTX Nos. |
|---|---|
| Memoranda and reports of the U.S. Treasury, the Federal Reserve Board of Governors, and the FRBNY | 7, 336, 455, 499, 541, 554-55, 559, 572, 576, 592, 610, 651, 679, 694 |
| Press releases of the U.S. Treasury, the Federal Reserve Board of Governors, and the FRBNY | 9, 156, 171, 198, 206, 220, 265, 615, 637, 646, 654-55, 658, 696 |
| Transcripts and meeting minutes from meetings of the Federal Reserve Board of Governors and the FRBNY | 10, 12, 22, 74, 540 |
| Congressional testimony, speeches, and interviews of employees of the U.S. Treasury, the Federal Reserve Board of Governors, the FRBNY, and the Trustees of the AIG Credit Facility Trust | 21, 409, 447, 449, 480, 516, 526, 534, 543, 548, 552-53, 563-64, 572, 583, 586-87, 594, 598-99, 607, 616, 633, 636, 650, 682, 684, 715 |
| Statements published on the websites of the U.S. Treasury, the Federal Reserve Board of Governors, and the FRBNY | 39, 542, 653, 679, 692-93, 719-24, 728-30 |

---

[3] A number of these documents also likely meet the requirements of the business records exception to hearsay under Rule 803(6).

| | |
|---|---|
| Handwritten notes of FRBNY General Counsel Thomas Baxter and FRBNY employees Sarah Dahlgren, Margaret McConnell, and Charles Gray | 68, 105, 147, 194, 302, 380, 698, 710 |
| Handwritten notes of the Federal Reserve Board of Governors General Counsel Scott Alvarez | 65, 148, 269 |
| Emails and other communications from employees of the U.S. Treasury, the Federal Reserve Board of Governors, and the FRBNY | 17, 23-38, 41-47, 53-55, 57, 59-60, 62, 73, 75, 77, 80-82, 84-85, 87-89, 97, 102, 109, 111-12, 116, 119, 122, 126-29, 132, 136, 138, 140, 142-43, 145-46, 154-55, 159, 161-62, 164, 174-175, 177, 184, 188, 190-92, 197, 208-09, 232-33, 243, 250, 260-61, 270-72, 275, 277, 279, 287-88, 292-93, 297-98, 301, 304, 307-09, 313, 316, 318, 320, 323-24, 326, 334, 341, 345, 352-55, 359, 361, 363, 368, 370, 372-73, 387, 403-05, 407, 427, 433, 435, 438-40, 450, 459-61, 463-67, 472, 475, 479, 482, 484, 486, 491, 495-97, 501, 503, 510, 514-15, 517, 519, 524, 531, 547, 561, 571, 575, 602, 618, 648 |
| Emails and documents from outside counsel and other third parties acting on behalf of the U.S. Treasury, the Federal Reserve Board of Governors, and the FRBNY | 88, 212, 217, 221, 227, 312, 378, 414, 420, 426, 608 |

## B.     Public Records Objected To As Hearsay.

Rule 803(8) provides an exception to the hearsay rule for records or statements of public offices, including Government agencies, provided that "(A) it sets out: (i) the office's activities; (ii) a matter observed while under a legal duty to report . . . ; or (iii) . . . factual findings from a legally authorized investigation; and (B) neither the source of information nor other circumstances indicate a lack of trustworthiness." "Because public records are presumed to be

trustworthy, '[t]he burden of proof concerning the admissibility of public records is on the party opposing their introduction.'" *Columbia First Bank, FSB v. United States*, 58 Fed. Cl. 333, 339 (Fed. Cl. 2003) (citation omitted).

Below are examples of the official Government reports and other documents that the Government is claiming are hearsay but that meet the requirements of the "Public Records" exception under Rule 803(8):

| Description | PTX No. |
|---|---|
| CRS Report for Congress: The U.S. Financial Crisis: The Global Dimension With Implications For Financial Reporting Management (Dec. 2008) | 382 |
| Duff & Phelps, Valuation Report, Congressional Oversight Panel (Feb. 4, 2009) | 422 |
| Sept. 2009 GAO Report to Congressional Committees: Troubled Asset Relief Program – Status of Government Assistance Provided to AIG | 539 |
| Congressional Oversight Panel – November Oversight Report (Nov. 6, 2009): Guarantees and Contingent Payments in TARP and Related Programs | 546 |
| 2009.11.17 SIGTARP Report: Factors Affecting Efforts to limit Payments to AIG Counterparties | 549 |
| Jan. 25, 2010 House Committee on Oversight and Government Reform Report: Public Disclosure as a Last Resort: How the Federal Reserve Fought to Cover Up the Details of the AIG Counterparties Bailout From the American People | 562 |
| 2010 Economic Report of the President | 566 |
| Congressional Oversight Report  (June 10, 2010) | 589 |
| Office of Inspector General, The Federal Reserve's Section 13(3) Lending Facilities to Support Overall Market Liquidity: Function, Status, and Risk Management (Nov. 2010) | 614 |
| Office of Financial Stability – Agency Financial Report for Fiscal Year 2010 | 622 |
| January 2011 GAO Report – Troubled Asset Relief Program: "Third Quarter 2010 Update of Government Assistance Provided to AIG and Description of Recent Execution of Recapitalization Plan" | 623 |

| | |
|---|---|
| The Financial Crisis Inquiry Report: Final Report of the National Commission on the National Commission on the Causes of the Financial and Economic Crisis in the United States (Jan. 2011) | 624 |
| Sept. 2011 GAO Report: Financial Crisis: Review of Federal Reserve System Financial Assistance to American International Group, Inc. | 641 |
| September 2013 U.S. Department of Treasury, the Financial Crisis Five Years later: Response, Reform, and Progress | 679 |
| Executive Office of the President, "The Financial Crisis: Five Years Later" (Sept. 2013) | 680 |

### C.    Overlapping Plaintiffs And Defendant's Exhibits

In addition, Defendant also asserted objections to over 150 documents from Plaintiffs' Exhibit List that are either completely identical to documents to on Defendant's Exhibit list or for which Defendant produced the exact same document (same email or report) but from someone else's file.  *See* Ex. 2 (attached).  For example, DX 220 is the exact same document as PTX 37 objected to on Rule 802 grounds; as are PTX 84 (DX 418) and PTX 710 (DX 901) also objected to by Defendant on hearsay grounds.  Because Defendant obviously believes these documents are necessary to its own case and otherwise non-objectionable, any objections initially asserted by Defendant with respect to Plaintiffs' Exhibit list should be overruled for these exhibits as well.

Because Defendant's asserted Federal Rule of Evidence 802 objections are frivolous and unnecessary, they should be overruled.  *See Columbia First Banks, FSB v. United States*, 58 Fed. Cl. 333 (2003) (overruling erroneous objections made to a party's exhibit list prior to trial); *Renda Marine, Inc. v. United States*, 65 Fed. Cl. 152, 156 n.4 (2005) (same).

***Defendant's Position***

Contrary to Starr's contentions, the pre-trial conference is not the proper venue in which to address our objections to Starr's exhibits.  Specifically, on August 2, 2013, the Court issued a pre-trial order that all "exhibits [other than joint exhibits] shall be offered into evidence *as they arise during trial.  The Court shall consider any objections to a particular exhibit at that time. . . . Counsel should ensure that exhibits receive the necessary explanation of meaning and context through testimony at trial.*"  (Emphasis added).  Because the exhibits listed on Starr's exhibit list have yet been offered into evidence, it is premature to address our objections to those exhibits.  Also contrary to Starr's contention, addressing the Government's objections if and when the contested documents are introduced is not cumbersome; in fact, it is the normal way of addressing evidentiary issues.

Starr contends that our objections made pursuant to Federal Rule of Evidence 802 are overly broad, but such determinations should not be made until the exhibits are offered into evidence.  Specifically, out-of-court statements constitute hearsay only when offered in evidence to prove the truth of the matter asserted.  FRE 801(c); *see Anderson v. United* States, 417 U.S. 211, 219-221 (1974).  Moreover, many of Starr's exhibits contain multiple statements by multiple parties and, thus, until the exhibit is offered into evidence, the issue of whether the exhibit constitutes hearsay or falls within a hearsay exception is not ripe.  *See* FRE 805 (double hearsay is inadmissible unless an exception exists for each separate level of hearsay); *see also United States v. Santisteban*, 501 F.3d 873, 878-879 (8th Cir. 2007) (requiring hearsay exceptions for each level of hearsay when three layers of hearsay present).

Furthermore, contrary to Starr's contention, not every statement of a Government or FRBNY employee is considered non-hearsay pursuant to FRE 801(d)(2).  *See,* e.g.*, L-3*

*Commc'n Integrated Sys., L.P. v. United States*, 91 Fed. Cl. 347, 359 (2010) ("In order to be admissible under Rule 801(d)(2)(D), the statement must be offered against a party and 1) be the statement of the party's agent or servant, 2) concern a matter within the scope of the agency or employment, and 3) have been made during the existence of the agency or employment relationship.").  Starr, as the proponent of the evidence must prove by a preponderance of the evidence the preliminary facts that bring the statement within FRE 801(d)(2).  *United States v. Richards*, 204 F.3d 177, 202 (5th Cir. 2000).

Similarly, FRE 803(8) does not provide a hearsay exception for all the Government reports and other documents listed in Starr's exhibit list.  *See Coleman v. Home Depot, Inc.*, 306 F.3d 1333 (3rd Cir. 2002) ("[A] report may be untrustworthy 'if the report appears to have been made subject to a suspect motivation.  For example, if the public official or body who prepared the report has an institutional or political bias, and the final report is consistent with that bias.'") (quoting Federal Rules of Evidence Manual 1688–89 (Stephen A. Saltzburg et al. eds., 7th ed. 1998)); *Baker v. Firestone Tire & Rubber Co.*, 793 F.2d 1196, 1199 (11th Cir. 1986) (finding congressional report lacked trustworthiness and was thus inadmissible because it was politically motivated); *see also Richmond Medical Ctr. v. Hicks,* 301 F. Supp. 2d 499, 512 (E.D.Va.2004) (declaring inadmissible sections of House reports and exhibits attached thereto in a challenge to the constitutionality of a law criminalizing certain abortion procedures), *aff'd,* 409 F.3d 619 (4th Cir.2005); *Anderson v. City of New York,* 657 F. Supp. 1571, 1577–79 (S.D. N.Y. 1987) (declaring a subcommittee report to be unreliable and hence inadmissible); *see generally United States v. Blackburn,* 992 F.2d 666, 672 (7th Cir.), *cert. denied,* 510 U.S. 949 (1993) (private eyeglass manufacturer generating report at the direction of an FBI agent was not a public entity). Thus, contrary to Starr's contention, the documents identified by Starr as "official Government

reports and other documents" do not all constitute exceptions to the rule against hearsay under FRE 803(8).

Thus, because the Court previously ordered that any objections will be handled at the time an exhibit is offered into evidence and because the admissibility of Starr's exhibits will depend upon the context and purpose for which they are admitted, Starr's request for relief is premature.

Finally, we have not yet had an opportunity to complete a full review of those documents on its exhibit list which Starr contends are identical or nearly identical to documents that appear on defendant's exhibit list.  To the extent we find that Starr has identified documents that are truly identical or contain no substantive differences, we will endeavor to come to agreement with Starr that those documents should be added to the joint exhibit list and removed from plaintiff's and defendant's exhibit lists.

Dated: September 8, 2014

Respectfully submitted,

BOIES, SCHILLER & FLEXNER LLP

/s/  David Boies_____

David Boies
Attorney of Record
333 Main Street
Armonk, NY 10504
Tel. (914) 749-8200
Fax (914) 749-8300
Email: dboies@bsfllp.com

Robert J. Dwyer
Alanna C. Rutherford
Julia C. Hamilton
575 Lexington Avenue

JOYCE R. BRANDA
Deputy Assistant Attorney General

/s/Robert E. Kirschman, Jr.
ROBERT E. KIRSCHMAN, JR.
Director

/s/ Brian A. Mizoguchi_____
BRIAN A. MIZOGUCHI
Assistant Director
Commercial Litigation Branch

16

New York, NY 10022
Telephone: (212) 446-2300

SKADDEN, ARPS, SLATE, MEAGHER &
FLOM LLP
John L. Gardiner
Four Times Square
New York, NY 10036
Telephone: (212) 735-3000
Attorneys for Plaintiff Starr International Co., Inc. and
the Plaintiff Classes

Civil Division
P.O. Box 480
Washington, D.C. 20044
Tel.: (202) 305-3319
Fax: (202) 514-7969
Email:brian.mizoguchi@usdoj.gov
Attorneys for Defendant