```
 1              IN THE UNITED STATES COURT OF FEDERAL CLAIMS

 2

 3     STARR INTERNATIONAL COMPANY,     )

 4     INC., Individually and on        )

 5     Behalf of All Others             )

 6     Similarly Situated,              )

 7              Plaintiff,              )  Case No. 11-779C

 8          vs.                         )

 9     UNITED STATES OF AMERICA,        )

10              Defendant.              )

11     --------------------------------)

12

13

14                      Courtroom 4

15         Howard T. Markey National Courts Building

16                 717 Madison Place, N.W.

17                    Washington, D.C.

18              Monday, September 15, 2014

19                      10:00 a.m.

20                   Pretrial Conference

21

22         BEFORE:  THE HONORABLE THOMAS C. WHEELER

23

24

25     Susanne Bergling, RMR-CRR-CLR, Reporter
```

Starr International Company, Inc. v. USA                    9/15/2014

```
 1   APPEARANCES:

 2

 3   ON BEHALF OF THE PLAINTIFF:

 4           DAVID BOIES, II, ESQ.

 5           Boies, Schiller & Flexner, LLP

 6           333 Main Street

 7           Armonk, New York  10504

 8           (914) 749-8201

 9           dboies@bsfllp.com

10                  and

11           AMY J. MAUSER, ESQ.

12           Boies, Schiller & Flexner, LLP

13           5301 Wisconsin Avenue, N.W.

14           Washington, D.C.  20015

15           (202) 237-2727

16           amauser@bsfllp.com

17                  and

18           ROBERT J. DWYER, ESQ.

19           ALANNA C. RUTHERFORD, ESQ.

20           Boies, Schiller & Flexner, LLP

21           575 Lexington Avenue, 7th Floor

22           New York, New York  10022

23           (212) 446-2300

24           rdwyer@bsfllp.com

25           arutherford@bsfllp.com
```

Starr International Company, Inc. v. USA                          9/15/2014

```
 1                    and
 2             JOHN L. GARDINER, ESQ.
 3             Skadden, Arps, Slate, Meagher & Flom LLP
 4             4 Times Square
 5             New York, New York  10036
 6             (212) 735-2442
 7             john.gardiner@skadden.com
 8
 9
10   ON BEHALF OF THE DEFENDANT:
11             BRIAN A. MIZOGUCHI, ESQ.
12             MATTHEW SCARLATO, ESQ.
13             SCOTT AUSTIN, ESQ.
14             JOHN TODOR, ESQ.
15             KENNETH DINTZER, ESQ.
16             CLAUDIA BURKE, ESQ.
17             JOSHUA GARDNER, ESQ.
18             U.S. Department of Justice - Civil Division
19             Post Office Box 480
20             Ben Franklin Station
21             Washington, D.C.  20044
22             (202) 305-3319
23             brian.mizoguchi@usdoj.gov
24
25
```

Starr International Company, Inc. v. USA                              9/15/2014

```
 1                   P R O C E E D I N G S
 2                   -    -    -    -    -
 3            (Proceeding called to order, 10:00 a.m.)
 4            THE COURT:  Good morning.
 5            ALL COUNSEL:  Good morning, Your Honor.
 6            THE COURT:  We're on the record this morning for
 7       the pretrial conference in the case of Starr
 8       International Company vs. the United States, Docket
 9       Number 11-779C.  It's good to see you all again.
10            Let's begin with the introductions of counsel.
11       For the Plaintiff?
12            MR. BOIES:  Good morning, Your Honor.  David
13       Boies of Boies, Schiller & Flexner.  With me I have my
14       partners, Amy Mauser, Alanna Rutherford, and Bob Dwyer,
15       and my colleague John Gardiner from the Skadden firm.
16            THE COURT:  So, we have one new face this
17       morning, I think.
18            MS. RUTHERFORD:  Good morning.
19            THE COURT:  Nice to have you.
20            For the United States?
21            MR. MIZOGUCHI:  Good morning, Your Honor.  Brian
22       Mizoguchi for the Department of Justice, and with me are
23       my colleagues, Matthew Scarlato, Scott Austin, John
24       Todor, Kenneth Dintzer, Claudia Burke, and Joshua
25       Gardner.
```

1          THE COURT:  Good morning.  Good to see you all

2    again.

3          I thought what we would do today is go through a

4    series of standard subjects that I typically raise in

5    every pretrial conference.  They're sort of the routine

6    things that you all can anticipate, and then we will get

7    to the specific items that you all included in your

8    recent joint status report.  So, we'll proceed in that

9    fashion.  Stop me at any time if you have questions or

10   comments about any of this, make sure that we're all on

11   the same wavelength here.

12         First of all, with regard to our daily trial

13   schedule when we start in a couple of weeks, the normal

14   trial schedule will be from 9:30 in the morning until

15   5:00 in the afternoon, with a 15-minute break in the

16   morning and afternoon, and typically one hour for lunch.

17   So, that will give you a solid six hours of trial each

18   day.

19         The first day, as you know, is Monday, September

20   29, two weeks from today, and I -- when I went back over

21   the pretrial order, I discovered that I had actually

22   miscalculated the number of trial days.  I think I gave

23   you a time period that included more than 30 trial days,

24   and I guess we still have that time, actually, so that

25   if it goes over 30 trial days, it should not be a

Starr International Company, Inc. v. USA                9/15/2014

1    problem, but -- I think 30 days is still a reasonable
2    target, but if we need a little more time, it should not
3    be a problem.
4         A couple of specific points here is that we will
5    not meet on the two federal holidays that are in this
6    time period, which are, namely, Columbus Day on Monday,
7    October 13, and Veterans Day on Monday, November the
8    10th.  In addition, we will not meet on Friday, November
9    the 7th.  I have an obligation out of town that weekend,
10   and so we will give you the day off there.  I figure you
11   will have gone at it for a number of weeks by that time
12   and perhaps would enjoy a long weekend.  So, that's what
13   will happen.
14        And then you may find this somewhat amusing.  We
15   have a fire drill scheduled at the Court for Wednesday,
16   October the 1st, at 9:30 in the morning.  So, I suggest
17   on that day that we simply begin at 10:00 instead of
18   9:30, and we can go an extra half-hour in the afternoon
19   so that you get your full time that day.
20        Are there any questions about that schedule?
21        (No response.)
22        THE COURT:  All right.  We will be using this
23   courtroom, Courtroom 4, for the duration of the trial,
24   and both sides may have access to the courtroom on
25   Friday, September 26th, for the purpose of setting up

1     exhibits and perhaps testing your electronic connections

2     and so forth.  And also, we have two conference rooms

3     available, one for each party.  One is on this floor,

4     actually close to the windows outside of Courtroom 4,

5     and I thought we would give that room to the United

6     States.  And then there's another courtroom -- excuse

7     me, another conference room on the third floor, just two

8     floors below, which is right near the elevators.  I

9     think it's actually a nicer conference room than the one

10    on this floor, but it is an elevator ride away.  So, one

11    for each side.

12          Regarding opening statements for the trial, I

13    typically allow 30 minutes per side for an opening

14    statement, but I'm willing to hear any discussion about

15    whether additional time should be allowed for this

16    trial.  I would say that I have a lot of excellent

17    summary information that I have received from you in the

18    recent days leading up to this, but can both of you live

19    with 30 minutes, do you think, or would you like more

20    time?

21          MR. BOIES:  Your Honor, I think we could live

22    with 30 minutes, but my inclination would be a little

23    more time might be helpful to the Court.  We are going

24    to have a long trial, we have got a lot of witnesses, a

25    lot of exhibits, and I think 45 minutes or an hour I

1    think at the beginning might save us some time later on
2    and give us a chance to explain sort of where we're
3    going now that we've got a little more detail from all
4    the work that we've done over the last few weeks.
5            THE COURT:  All right.
6            Mr. Dintzer?
7            MR. DINTZER:  Your Honor, whatever pleases the
8    Court, but we can see some assistance being provided by
9    45 minutes, perhaps, or even an hour.  That would be
10   fine.
11           THE COURT:  All right.  Well, let's say 45
12   minutes, then, for opening statements.
13           All right, my next subject regards Federal Rule
14   of Evidence 615 and the exclusion of fact witnesses
15   during the trial.  I always follow that rule, and I
16   intend to do so here.  I assume that would be the
17   parties' desire anyway.
18           MR. BOIES:  Your Honor, could I just raise one
19   question?
20           THE COURT:  Yes.
21           MR. BOIES:  Does that apply for opening
22   statements?
23           THE COURT:  That's a good question.  It's fine
24   with me for any witness to be here who wants to listen
25   to opening statements.  I have no objection to that.

1          MR. BOIES:  Thank you, Your Honor.
2          THE COURT:  But for fact witnesses, they should
3   not be in the courtroom except for when they testify.
4   After they testify, unless you see a need to possibly
5   call them as a rebuttal witness, I would have no problem
6   with them staying afterwards and observing the
7   proceedings.  Rule 615 does not apply to expert
8   witnesses, so we will expect any expert witness to
9   remain in the courtroom and listen to the proceedings if
10  they desire.
11         And then, as you know, each party is entitled to
12  one in-court representative to observe the proceedings,
13  and if you know that information today, I'd be glad to
14  make note of it.
15         MR. BOIES:  Your Honor, our representative is
16  going to be Mr. Bertil Lundqvist, who --
17         THE COURT:  I'm sorry, what is the first name?
18         MR. BOIES:  Bertil, B-E-R-T-I-L, who is here in
19  court.
20         MR. LUNQVIST:  Good morning.
21         THE COURT:  All right.  Nice to see you.
22         And for the United States?
23         MR. DINTZER:  We haven't yet identified one, Your
24  Honor, but we will let the Court know as soon as we do.
25         THE COURT:  Okay.  Now, my expectation is that

Starr International Company, Inc. v. USA                    9/15/2014

1    the in-court representative should remain the same

2    person throughout the trial.  I don't look favorably on

3    juggling the in-court representative depending on what

4    the subject matter of the day is.  So, it should be the

5    same person throughout.

6          All right.  Then, as to the format for examining

7    witnesses, I typically permit two rounds of examination

8    for each witness.  So, you would have direct, cross, and

9    then potentially redirect and recross, and then that's

10   it.  After two rounds, we would excuse the witness

11   unless there's really some compelling reason to press

12   further.

13         Now, we -- there's a number of witnesses on the

14   witness list that overlap.  I saw a good many.  I think

15   I counted 18, but I'm not sure if that's the right

16   number or not.  There's a lot of overlap in the witness

17   lists, and we have the question of how to deal with

18   those situations.  I know there was some discussion of

19   that in the joint status report.

20         One suggestion is that when it comes time for the

21   Government to cross examine a witness who is on the

22   Government's list, they could just go ahead and ask that

23   witness those subjects that would be covered in their

24   direct part of the case anyway.

25         Do you have any views about that proposal,

Starr International Company, Inc. v. USA                    9/15/2014

 1    Mr. Boies?

 2         MR. BOIES:  Your Honor, we don't have any

 3    objection to that approach as a general matter where

 4    it's necessary or appropriate for the convenience of the

 5    witness and presumably also for the convenience of the

 6    Court; however, there are a number of witnesses on our

 7    witness list that are there only because we need to

 8    authenticate a document or get a document admitted,

 9    overcome objections of one kind or another, or to

10    establish a single fact that may be in dispute.

11         Now, it may be that we don't need to call those

12    witnesses at all, because my experience is, as we get

13    into a trial, a lot of objections fall away and the

14    parties are more willing, particularly in a bench trial,

15    to stipulate to the facts as they become obvious.

16         But if we do need to call these witnesses in

17    order to establish either facts that we think should be

18    stipulated or the admissibility of documents that we

19    think should not have AN objection, we wouldn't want

20    that to open the door to a broad-range examination in

21    the middle of our case, because that really prevents us

22    from ordering our case in what we think is a sensible

23    way to present our points to the Court.

24         So, if we had, for example, a witness that we

25    needed to call for a specific fact or a specific

Starr International Company, Inc. v. USA                    9/15/2014

1    document, put the witness on for 15 or 20 minutes, we

2    wouldn't want a broad-ranging examination of a couple of

3    hours that would then lead to cross.  And what we've

4    done then is we've sort of destroyed the structure of

5    our case.

6         So, I think to some extent what we would like to

7    do is take it case by case, where if they want to do

8    that once they see one of our witnesses that's on their

9    witness list, if they want to put the witness on only

10   once, we will talk with them, we will work it out.  I

11   think we will work it out in the majority of cases where

12   we have a substantial examination time.  I think the

13   issue for us is going to be when we have only really --

14   we're really using them as we might a deponent in a case

15   where you're going to do depositions, which is to

16   authenticate a document or prove a particular fact.

17        THE COURT:  All right.  I think that's a

18   well-taken point.

19        Mr. Dintzer?

20        MR. DINTZER:  Yes, Your Honor.  Just to add to

21   what Mr. Boies said, I think we should, you know, for

22   the most part work on it case by case, of course, taking

23   into account the witness' convenience as well.  So,

24   sometimes perhaps they only want to identify one point,

25   but we would be reluctant to ask that witness to return

Starr International Company, Inc. v. USA                    9/15/2014

1    to court for then our examination.  So, we will then

2    work with the Plaintiffs to try to make sure that both

3    for our convenience and for the witness' convenience,

4    that they -- that we can avoid that.

5         The second thing is, is that if we exceed scope,

6    we want the understanding that we would be doing so but

7    preserve our right to bring a 52(c) if we choose to

8    after the close of the Plaintiff's evidence and that we

9    wouldn't be prejudicing ourselves by theoretically

10   opening our case in doing so.

11        THE COURT:  All right.  Well, it does tend to

12   complicate things a little bit if you get to a Rule

13   52(c) motion if there's evidence in the record that is

14   part of the Government's direct case.  We will try to

15   keep it straight.

16        MR. DINTZER:  Yes.  Thank you, Your Honor.  If we

17   cite it -- if we chose to do a 52(c), we would be

18   assiduous in not citing what was elicited beyond the

19   scope of Plaintiff's direct.

20        THE COURT:  All right, very well.

21        I think the Government also raised in the joint

22   status report the right to waive cross examination of

23   somebody who's on your witness list and then cover all

24   of it as part of your direct case.  Is that right?

25        MR. DINTZER:  Yes, Your Honor, just to preserve

Starr International Company, Inc. v. USA                          9/15/2014

1    that opportunity; that is, if they call a witness -- as
2    Mr. Boies has described, the ability to put on their
3    case and structure it as they see fit, it may turn out
4    that rather than be put in a position where we would
5    want to do -- elicit certain facts during their case, we
6    might choose, if the Court permits -- and I don't know
7    if we're going to do this, but just to get it into
8    the -- as a possibility, that we would reserve our
9    entire examination and then do a direct, and obviously
10   subject to cross, in our case in chief, if we chose to.
11           THE COURT:  Okay.  I think the best approach is
12   to take each witness as it comes, understanding the
13   views of each side.  I can tell you that I will always
14   be sensitive to the convenience of the witness as well.
15   If somebody has traveled here from a long distance, I'm
16   going to be sensitive to trying to take care of that
17   witness while he or she is here.
18           MR. DINTZER:  We appreciate that, Your Honor.
19           MR. BOIES:  And we agree with that as well, Your
20   Honor.
21           THE COURT:  All right.
22           MR. BOIES:  And with respect to the reservation
23   of the right for cross examination, it's obviously
24   whatever works best from the Court's understanding, but
25   from our perspective, we do not have an objection if

1   they want to waive cross examination and do it as a part

2   of their case.

3          THE COURT:  All right, very well.

4          My next question concerning witnesses deals with

5   the fact that a number of the witnesses on your filings

6   seem to have their own counsel.  They have retained

7   their own counsel for whatever reason during the

8   deposition phase of this case and perhaps for other

9   reasons as well.  It is not my intention to allow such

10  separate counsel to participate in the examination of

11  witnesses.

12         I suppose they can always talk to counsel of

13  record and, you know, tell them whatever's on their

14  mind, but I think that you all will control the

15  examination of witnesses, and I do not intend to let

16  other counsel, who are not counsel of record for the

17  parties, to participate.

18         Now, it strikes me that a possible exception to

19  that might arise if we have questions about

20  confidentiality of an exhibit.  If there's a point to be

21  made by, I don't know, the Federal Reserve Bank of New

22  York or somebody who's written a book or something like

23  that and they're concerned about confidentiality, I

24  suppose a situation might arise where I'd be willing to

25  hear a viewpoint about whether an exhibit should remain

Starr International Company, Inc. v. USA                    9/15/2014

1    confidential, but save for that exception, I don't see

2    them participating.

3             Is there any -- do you all agree with that?

4             MR. BOIES:  We agree with that, Your Honor.

5             MR. DINTZER:  We do as well, Your Honor.  We

6    anticipate that all work will be done by the Department

7    of Justice team.

8             THE COURT:  All right, very well.

9             Now, the next subject, something that I included

10   in the pretrial order, it has to do with your

11   discussions with or among witnesses who are yet to come

12   to testify.  The rule, as you all know, is that counsel

13   or other witnesses should not confer with witnesses who

14   have not yet testified about what they have observed in

15   the proceedings and so forth.

16            I understand -- well, let me just ask you, are

17   you expecting to use realtime reporting services in this

18   case?

19            MR. BOIES:  We are, Your Honor.

20            THE COURT:  Okay.  Well, then, all the more

21   reason to be diligent in observing this restriction.  We

22   don't want witnesses to come to have access to any of

23   the transcripts or to have discussions with you all that

24   might color or change their testimony in some way.

25   That's all clear, right?

```
 1              MR. BOIES:  Yes, Your Honor.
 2              MR. DINTZER:  Yes, Your Honor.
 3              THE COURT:  Okay, very good.
 4              And then after a witness has been tendered for
 5     cross examination, if we have a break or something,
 6     there should not be any discussions with that witness by
 7     the party who offered the witness.
 8              Now, the Government did raise a point which I
 9     think has some validity about what if the Plaintiff
10     calls somebody who's really a person from the
11     Government's side of the case, should that restriction
12     apply during direct rather than cross?  It seems
13     reasonable to me, but what ---do you have any thoughts
14     about that?
15              MR. BOIES:  As I understand it, what they would
16     want -- let's say we call Secretary Paulson.  They would
17     want the ability to talk to Secretary Paulson while I'm
18     examining -- while they're examining, not while I'm
19     examining.
20              THE COURT:  During cross, let's say.
21              MR. BOIES:  During what is in form cross but what
22     is, in effect, their examination of the witness.
23              THE COURT:  Yes.
24              MR. BOIES:  So, they would have the same right to
25     examine him -- to talk to him that they would have had
```

 1   if they had called him in their case.

 2            THE COURT:  Yes.

 3            MR. BOIES:  I think that's fair, Your Honor.

 4            THE COURT:  Yes.

 5            MR. BOIES:  I think that each side ought to be

 6   able to talk to their witnesses when they are examining

 7   their own witnesses but not when the other side is

 8   examining their witnesses.

 9            THE COURT:  Correct, yes.

10            MR. BOIES:  I think that's fair.

11            THE COURT:  All right.  I thought it was

12   reasonable, and so that's the practice that we'll

13   follow.

14            MR. DINTZER:  Thank you, Your Honor.

15            THE COURT:  All right.  Let's --

16            MR. BOIES:  Your Honor, could I just ask one

17   question?

18            THE COURT:  Yes.

19            MR. BOIES:  I assume, though, that any

20   conversations that are had with a witness after the

21   witness takes the oath are subject to examination; that

22   is, once a witness is on the stand, they can't have a

23   conversation with the witness about their testimony that

24   we cannot examine about, regardless of when it takes

25   place.

Starr International Company, Inc. v. USA                     9/15/2014

```
 1          THE COURT:  Mr. Dintzer, do you have any problem
 2     with that?
 3          MR. DINTZER:  Your Honor, my -- I understood
 4     that -- just getting back sort of to the Court's
 5     original rule, which is during the -- during the
 6     direct -- let's say the Plaintiffs call Mr. Greenberg or
 7     Mr. Lundqvist, and during his direct, they could --
 8     maybe there's a break, they could talk to him.  My
 9     understanding of the Court's thinking was that that
10     would be privileged, that if they -- if there's
11     something that they wish to converse with him about
12     about his direct, that that would be privileged, and
13     that's the whole idea of allowing that conversation to
14     take place in the first place.
15          Then, when they tender Mr. Lundqvist to us, then
16     we would begin our cross examination, of course, then
17     they would be closed off from any conversation with him,
18     and then -- so -- privileged or otherwise, and that that
19     was sort of the nature of the -- of allowing the
20     conversation to take place in the first place.
21          If it's not going to be privileged, it almost is
22     beside the point if we can't have a -- I mean, we're
23     talking to our client, if we can't have a privileged
24     conversation with him.  So, we would ask the Court to
25     line up the privilege protection with the ability to
```

Starr International Company, Inc. v. USA                    9/15/2014

1   speak to the witness so that it blossoms into what I
2   think the Court had intended.
3        THE COURT:  Well, perhaps we should take that on
4   a case-by-case basis.  I would think that if you have a
5   conversation with a witness along the lines of you're
6   talking too much, you need to make your answers more
7   precise, I don't know, is that privileged or --
8        MR. DINTZER:  We would like -- or even just slow
9   down or have a sip of water or relax, we would like to
10  think that that would be privileged, as they could have
11  with their witnesses, but that -- I mean, that that
12  would be the whole idea of the Court allowing these
13  conversations to take place during the "direct,"
14  whenever they happen, that that's the very nature of the
15  conversations.
16       THE COURT:  Well, I'm not going to alter the
17  rules of privilege for these discussions.  I think
18  privilege rules would still apply, but you could have a
19  question, for example, of a witness, "Did you really
20  mean 2009 or didn't that event really happen in 2008?"
21  I don't know, maybe that's privileged; maybe it isn't.
22       MR. BOIES:  Our strong view, Your Honor, is that
23  that is not privileged.  If a witness has a question,
24  whether they want to seek legal advice, where the
25  witness says, "Can I talk about this?  Is what I am

Starr International Company, Inc. v. USA                    9/15/2014

1    going to say privileged?"  If the witness is asking for

2    legal advice, that can be -- that may be a privileged

3    conversation under those circumstances, but coaching the

4    witness, whether to slow down, take a drink of water,

5    did you really mean 2009, those are not a confidential

6    exchange of legal advice, and we do not think that is

7    privileged.

8         THE COURT:  I tend to agree with you.  So, I

9    think we'll take it as it comes, and, again, I'm not

10   going to alter the rules of privilege, but I think

11   questions and points like that are fair game.

12        MR. DINTZER:  Thank you, Your Honor.

13        THE COURT:  Okay.  All right, let's talk about

14   simply the managing of exhibits a little bit.  First of

15   all, I think the joint exhibits that you all have

16   identified can be admitted into evidence at the

17   beginning of trial.  I take it there's no controversy

18   about those documents and we can just admit them.  All

19   other exhibits, I think, would be taken up as they arise

20   during trial.

21        In addition, in large document cases such as this

22   one, it has proved effective to me to have a witness

23   binder to work from.  It's true that you end up making

24   perhaps multiple copies of the same exhibit, but it's

25   far more efficient to deal with exhibits in that fashion

Starr International Company, Inc. v. USA                              9/15/2014

1    than to try to find them and pull them off the bookshelf

2    each time.  So, if you all would do that, that would be

3    great.

4              MR. DINTZER:  Just to clarify on that, Your

5    Honor, having worked with the witness binders as well,

6    would the understanding of the Court be that when a

7    witness is seated, the party on -- would hand a copy of

8    the binder to the witness and a copy to the other side

9    so that they are not racing and finding documents as

10   well?

11             THE COURT:  Yes, that would be highly preferable.

12             MR. DINTZER:  We appreciate that, Your Honor.

13             THE COURT:  And just a small point, please

14   include on the spine of the binder what the contents

15   are, because when we get these binders back up to

16   chambers, they are going to be on a shelf, and if you

17   don't have something on the spine, I don't know what

18   they are.

19             MR. DINTZER:  Speaking of shelves, Your Honor,

20   when we're setting up shelves for ourselves, would the

21   Court like a shelf back there to absorb these binders?

22             THE COURT:  Not these so much, but there may come

23   a time when I'll want to look at the sequential binders

24   for some reason.  So, if you -- yes, the answer is yes.

25             MR. DINTZER:  And, Your Honor, would you -- would

Starr International Company, Inc. v. USA                    9/15/2014

1    the Court and the Clerk -- we can produce two, and I'm
2    sure the Plaintiffs would agree -- want hard-copy paper
3    copies, along with the witness binders, of a full set of
4    the exhibits?
5              THE COURT:  Yes.
6              MR. DINTZER:  Okay.  Would that be one set or
7    two, Your Honor?
8              THE COURT:  Two.
9              MR. DINTZER:  So, we will provide bookshelves --
10   we will work with the Plaintiffs, of course, and provide
11   bookshelves and complete sets of the exhibits, Your
12   Honor.
13             THE COURT:  Right.  And the reason for that is
14   one copy of the exhibits will end up in chambers that we
15   will work with in reaching a disposition of this case,
16   and the other set will end up in the Clerk's Office as
17   being the official set of exhibits for the case.
18             MR. DINTZER:  And those would be the stickered
19   copies, Your Honor, the ones that --
20             THE COURT:  Yes.
21             MR. DINTZER:  So, we will identify and separate
22   those copies.
23             THE COURT:  Yes.
24             MR. DINTZER:  Thank you, Your Honor.
25             THE COURT:  Now, you might wonder, well, all of

Starr International Company, Inc. v. USA                    9/15/2014

1    these exhibits are not yet in evidence, so what -- how
2    do we deal with that?  Well, I think at the close of
3    trial, we'll just probably take some time off the record
4    and go through them and take out the ones that have not
5    been admitted into evidence.  It will take a few
6    minutes, but it's not going to be an overwhelming task.
7              MR. DINTZER:  Along that score, Your Honor, if we
8    might suggest, at the close of trial on Friday each
9    week, that we make an effort to match up with the
10   Plaintiffs, and if your Clerk is keeping score, the
11   documents that have been admitted into evidence?
12             THE COURT:  That's probably a good thing to do.
13             MR. BOIES:  We agree, Your Honor.
14             THE COURT:  All right.
15             MR. DINTZER:  Thank you, Your Honor.
16             THE COURT:  Very well.
17             Now, regarding the use of technology, I imagine
18   we're going to have significant use of electronic
19   display of exhibits perhaps and some demonstratives no
20   doubt, and so that's fine.  I encourage you just to
21   install it and test it out on Friday, the 26th, to make
22   sure everything's working as you like.
23             As to the realtime transcript, it would be great
24   if I could get a screen up here that displays that and
25   also for my law clerk so we can follow along.

Starr International Company, Inc. v. USA                    9/15/2014

1          MR. DINTZER:  We and the Plaintiffs will provide

2     that, Your Honor.

3          THE COURT:  Okay.  Are there any witnesses that

4     we expect to testify by videoconference?

5          MR. DINTZER:  Not videoconference, Your Honor.

6     Videotape.

7          THE COURT:  Videotape?

8          MR. DINTZER:  There is one, I believe, we've

9     identified it, uncontested, Mr. Studzinski is, I

10    believe, abroad, and both of the parties have agreed

11    that if it please the Court, that we would show -- I

12    believe show a video of -- at some point in the trial.

13    We would each select portions of the video and show that

14    to the Court.

15         THE COURT:  All right.  How long is that?  How

16    much time do you think that would require?

17         MR. DINTZER:  We haven't done our -- I mean,

18    obviously, he was deposed, Your Honor, for a full day.

19    We haven't done our designations, so I couldn't hazard a

20    guess on that.  I -- I -- well, I best not speak if I

21    don't know.

22         THE COURT:  Okay.

23         MR. DINTZER:  Somebody is going to get angry with

24    me if I do, so --

25         MR. BOIES:  I'll rashly make a guess, Your Honor,

Starr International Company, Inc. v. USA                    9/15/2014

1    and it is only a guess, but I would suspect it would be

2    in the nature of probably a couple of hours.  It could

3    be -- it could be a little longer, but I don't -- I

4    think when we actually get -- I have gone through that

5    tape, and taking both what I might like and what they

6    might like, I suspect it's going to be in the range of a

7    couple of hours.

8         THE COURT:  All right.  I had a case a couple of

9    years ago, a trial, where I had a lot of video

10   recordings of deposition testimony, and it just proved

11   to be too much.  And I ended up asking the parties just

12   to submit them to me for viewing at my leisure

13   afterwards, and that was fine.  But I think if it's just

14   two hours, that's -- we can look at it.

15        MR. BOIES:  And thus far, we have only identified

16   one such witness.  There might be a couple others that

17   will come up, but this is the only witness that is

18   outside the subpoena power and won't come voluntarily.

19        THE COURT:  Okay.

20        MR. BOIES:  So, I think the -- the video here

21   will be quite limited.

22        THE COURT:  All right, that's fine.  So, if I

23   understand, then, we're not going to have any live video

24   testimony from a remote location?

25        MR. DINTZER:  Not -- it is not planned, Your

1  Honor.

2          THE COURT:  Okay.

3          MR. BOIES:  That is our understanding as well.

4          THE COURT:  All right, very well.

5          All right, just a couple of points about

6   courtroom decorum.  No beverages or snacks are allowed

7   during the trial except for water.  All electronic

8   devices that are used for voice communication shall be

9   turned off at all times.

10          And also, anyone who's late for a proceeding, if

11   you come back after a break and you're a few minutes

12   late, please just sit in the gallery if you're not a

13   participant in what's going on, sit in the gallery until

14   the next opportunity arises.  It's just disconcerting to

15   have people coming back and forth to counsel table all

16   the time.  So, if you will do that.

17          Now, I received some questions about the

18   possibility live streaming of the transcript?  I need to

19   hear more about that.  What -- my initial reaction is

20   no, but I'll -- I'll listen to what you have to say.

21          MS. BURKE:  Your Honor, when we use Livenote

22   these days, I'm told, it's called Livestream, and our IT

23   people, in conjunction with Starr's, would like to

24   provide that Livestream to the Court as well as members

25   of our constituencies in our own offices.  So, what we

Starr International Company, Inc. v. USA                    9/15/2014

1    need is a wireless capability, which I believe we can do

2    with the Court, and possibly even wireless in the

3    courtroom, which is one of the things we wanted to raise

4    with the Court.

5         THE COURT:  Is this a closed-circuit setup, so

6    it's not going to the public at large?

7         MS. BURKE:  No, it is not going to the public.

8    It is a closed-circuit setup, yet.

9         THE COURT:  And it would go to where?  It would

10   go to Starr's offices and to --

11        MS. BURKE:  It would go to wherever it's

12   designated to go.  So, it -- there would have to be an

13   application process that we would allow the Court to

14   have access to and our offices and Starr's offices.

15        THE COURT:  Mr. Boies?

16        MR. BOIES:  We have no objection to that, Your

17   Honor.  We have done that in other cases, and what I

18   think we would contemplate, if the Court approved this,

19   is we would advise the Court of each location where the

20   Livestream was going to go and see whether that location

21   posed any issue.

22        The idea would be that this would be something

23   that would enable Department of Justice counsel over at

24   their building or Starr counsel back at Starr

25   headquarters to see the Livestream.  It would not be to

Starr International Company, Inc. v. USA                    9/15/2014

1    distribute it to members of the public or members of the
2    press or anything like that.
3            And for control purposes, we would present to the
4    Court each location to which the stream was going to go
5    for the Court to review it on a case-by-case basis.
6            THE COURT:  And the idea is that they would just
7    see the written transcript as it's being prepared?
8            MR. BOIES:  Yes, Your Honor.  There is no --
9    there is no video that goes with it.  This is really the
10   output of what the court reporters do now in terms of --
11   they have this ability, using computers and other
12   things, to create essentially an almost instantaneous
13   transcript, and it is that transcript that goes out.
14           Now, that's an uncorrected transcript, and so
15   nobody wants that to go out broadly, but it is very
16   useful both for counsel and I think for the Court here
17   to see the words that are being used, and it is a
18   convenience to people who have curiosity on both sides
19   as to what's happening in court, to see it as opposed to
20   waiting until the end of the day.
21           THE COURT:  You know, this strikes me as a
22   product that may have some initial attraction, but I'm
23   wondering how high the ratings are going to be after a
24   while.  I don't know.
25           MR. BOIES:  I think the real concern that I think

Starr International Company, Inc. v. USA                    9/15/2014

1    the Court would have and I think both of us would have

2    as well is that it's very important that because of the

3    Rule 615 issue --

4          THE COURT:  Yes.

5          MR. BOIES:  -- that the recipients of this be

6    tightly controlled, and so I think both of us are alert

7    to that -- to that problem, and that's another reason

8    why I think it's important that the Court look at the

9    locations on a case-by-case basis.

10         THE COURT:  That was my immediate concern, in

11   fact, was how are we going to control our Rule 615

12   restrictions if this transcript is being live streamed

13   around, but it -- if you both want to do it, I'm okay

14   with that.  Let's just be diligent about making sure

15   that Rule 615 is not breached.

16         MR. DINTZER:  Thank you, Your Honor.

17         THE COURT:  All right, okay.

18         All right.  At the conclusion of trial -- and I

19   think I covered this point also in the pretrial order --

20   my usual practice, and I think it will work well here,

21   is to afford each side the opportunity to submit

22   post-trial proposed findings of fact and conclusions of

23   law, which would be keyed extensively to the record, the

24   trial record that we have, the transcript and exhibits.

25   This will save enormous time when it's my turn to

Starr International Company, Inc. v. USA                    9/15/2014

1    prepare a decision in this case.

2            This is really your opportunity to provide as

3    much assistance as you can to the Court in reaching an

4    accurate and timely decision.  So, you will have that

5    opportunity.  We'll talk about the time periods for

6    those requirements at the end of trial, and each side

7    would then have a chance to submit a response brief,

8    too, to the other side.

9            Often, we wait for the transcript to come in

10   before that time starts to run, but we won't have that

11   issue in this case because you'll all have the

12   transcript immediately.  So, that will save time there,

13   but I just wanted to raise that point for your

14   consideration today.

15           Mr. Dintzer?

16           MR. DINTZER:  If we could be heard on that, Your

17   Honor.  As I understand what the Court is suggesting,

18   that it would be -- we would each be filing and then we

19   would each be filing replies to each other's briefs?

20           THE COURT:  Yes.

21           MR. DINTZER:  And we would ask, Your Honor, for

22   seriatim briefing as we did with the pretrials.  We

23   generally find that we can be more precise as to the

24   items that we need to respond to if we have had a chance

25   to see the Plaintiff's, and then that would give us a

Starr International Company, Inc. v. USA                    9/15/2014

1    chance to target our response better than simply filing

2    a brief at the same time as them.  So, we would ask for

3    seriatim filing on the post-trials.

4         THE COURT:  We can probably accommodate that.  I

5    think that will work fine.

6         MR. DINTZER:  We appreciate that, Your Honor.

7         THE COURT:  Yes.  We will talk -- again, we will

8    talk about the time periods for all of that at the close

9    of trial.

10        MR. DINTZER:  Thank you, Your Honor.

11        THE COURT:  And then, after I have your

12   post-trial briefs, you'll have an opportunity for

13   closing arguments, but I think all of this will work

14   efficiently and ultimately produce a more timely

15   resolution of the case for both sides.

16        And then one final thing on my list that I think

17   helps our court reporter is if the parties would prepare

18   a joint glossary of terms for the court reporter.  I'm

19   sure all of you and perhaps the Court itself, we're

20   familiar with many of the unusual terms that will come

21   to light in this case, but for the court reporter, this

22   is probably the first time that they have heard or come

23   across these terms.  So, if you can provide a fairly

24   comprehensive list of the unusual terms that you know

25   are going to come up in this case, I think that will

1   help quite a bit.

2           All right.  Any questions about any of that at

3   this point?  I'm ready to move to the joint status

4   report.

5           MR. DINTZER:  We're good, Your Honor.

6           THE COURT:  Okay.

7           All right, the Studzinski deposition we have

8   already talked about.

9           The second thing is there was a paragraph about

10  the fact that no testimony or exhibits discussed during

11  trial will be deemed to cause any waiver of attorney-

12  client privilege or deliberative process privilege with

13  respect to subjects addressed following discovery order

14  number 6, which is the one that dealt with a lot of

15  privilege issues.  I'm fine with that, and apparently

16  you all have stipulated to that.  Is that correct?

17          MR. DINTZER:  Yes, Your Honor.  It will avoid

18  unnecessary interruptions in court and repeating it, and

19  this will just preserve our objections and preserve our

20  rights.

21          THE COURT:  All right, that will be fine.

22          MR. BOIES:  Yes, Your Honor.  We have agreed to

23  that.

24          THE COURT:  All right.  The next thing is that

25  you all have stipulated to the authenticity of all

1    documents on each other's exhibit lists, except for

2    handwritten documents, and I understand that that

3    stipulation doesn't extend to whether a document was a

4    draft or the final version, but I think authenticity

5    issues would be resolved except for handwritten

6    documents, and that's fine.

7         MR. DINTZER:  And marginalia, so handwritten

8    notes on printed documents, Your Honor.  Yes, that is

9    our stipulation.

10        THE COURT:  All right.

11        MR. BOIES:  Yes, Your Honor.

12        THE COURT:  Okay, good.

13        All right.  Then you raised a subject concerning

14   assertions of confidentiality of exhibits.  Tell me what

15   you have in mind there.

16        MR. BOIES:  I think we've largely resolved that

17   issue.  My understanding is that at least for all of the

18   party exhibits, that is, the exhibits generated by

19   either of the two parties, we've agreed that there will

20   not be a confidentiality issue in terms of their use at

21   trial.

22        MS. BURKE:  That's correct, Your Honor.  So, this

23   doesn't extend to the third-party documents that are a

24   part of both our and Starr's exhibit lists, but extends

25   to all of the parties' assertions of confidentiality.

Starr International Company, Inc. v. USA                    9/15/2014

1          THE COURT:  Okay.  I think that's a useful
2     agreement.  My intention, by the way, is to have the
3     entire trial to be open to the public, including the
4     transcript and I suppose any exhibits, unless there's
5     some issue about a third-party document, but the
6     objective is to be as transparent as possible with
7     everything that's going on during the trial.
8          And that actually is the next item on here about
9     the open courtroom.  That, again, is my intention.  Are
10    there any concerns about that?
11         MS. BURKE:  No, Your Honor.
12         THE COURT:  Okay.  All right, opening statements
13    we've covered.  I think we've also covered the first
14    item raised by the Government about witnesses that are
15    first called by Starr even though they're aligned with
16    the Defendant.  Item two we have also discussed about
17    discussions with the witness.
18         All right, let me get to the third item you
19    raised in this joint status report about the parties
20    shall be permitted to make minor modifications to their
21    exhibit lists, up to 25 additions, up to one week before
22    the start of trial, September 22nd.  What is this about?
23         MS. BURKE:  Your Honor, in our preparations for
24    trial, we've identified a handful, really, of documents
25    that we would like to ask the Court's permission to

Starr International Company, Inc. v. USA                    9/15/2014

1   supplement our exhibit list.  So, we came up with the

2   number 25 a little bit arbitrarily, just to give both

3   parties a little bit of cover, but it's my understanding

4   that the number that we will be attempting to add is far

5   smaller.

6        So, the Court's order states that either party

7   may add exhibits for good cause shown, and what we're

8   asking here is for a little more flexibility up until

9   this upcoming Monday.

10       THE COURT:  Mr. Boies?

11       MR. BOIES:  We have no objection, Your Honor.

12       THE COURT:  All right.  I'm not going to place a

13  limit on this, the 25.  I think it is arbitrary, and I

14  don't -- I don't see a need to do that, but I think,

15  again, assuming the cooperation of the parties, if you

16  have some last-minute exhibits that you want to add to

17  your list, I'm sure they will cooperate with you and I'm

18  happy to have you add them.

19       MS. BURKE:  Thank you, Your Honor.

20       THE COURT:  All right.  The next one is the

21  suggestion that the parties must notify each other at

22  least four business days in advance of calling a

23  may-call witness.  Ms. Burke?

24       MS. BURKE:  So, Your Honor, Starr's witness list

25  has a great number of may-call witnesses, and the

Starr International Company, Inc. v. USA                    9/15/2014

1    pretrial order right now contemplates that each side

2    would, the Friday before each week, give the lineup of

3    all of the witnesses.  What we were hoping for is a

4    little bit more advance notice for the may-calls so that

5    we're not in the position of learning on Friday that a

6    whole slew of may-calls are going to be called on Monday

7    and Tuesday, because, of course, these are people who we

8    haven't been devoting the significant portions of our

9    resources to.  We're devoting our resources to the

10   will-calls.  So, I think, actually, Starr is willing to

11   do this, but --

12        MR. BOIES:  Yes, Your Honor.  We have no

13   objection to that.

14        THE COURT:  All right.  Since the parties agree,

15   I'll be happy to observe that.  I still want you to give

16   the lineup each Friday of what's coming the following

17   week.

18        MR. BOIES:  Yes.  This would be in addition to

19   that, Your Honor.

20        THE COURT:  Okay.

21        MR. BOIES:  In other words, we are still going to

22   give a lineup on Friday.  This was just an assurance

23   that they would have at least four days -- and this

24   applies obviously to both sides, so that --

25        THE COURT:  Right.

Starr International Company, Inc. v. USA                    9/15/2014

1          MR. BOIES:  -- neither side, on a Friday, finds
2     out that they have got a whole bunch of may-call
3     witnesses on Monday.
4          THE COURT:  Okay.
5          MR. BOIES:  And we have no objection to that
6     proposal; in fact, we think it's a sensible one.
7          THE COURT:  All right, very well.
8          What about the next one?  Plaintiffs must notify
9     Defendant by tomorrow whether it intends to call any of
10    its expert witnesses currently on its may-call list in
11    its case in chief.
12         MS. BURKE:  Your Honor, in our view, there are a
13    large number of expert witnesses on Starr's may-call
14    list.  In fact, we're not really used to seeing any
15    expert witnesses on a party's may-call witness list.
16    And so taking into account the amount of resources
17    involved in preparing for our expert examinations, we
18    would really like to know, sooner rather than later,
19    what Starr plans with these, I think, four may-call
20    expert witnesses.
21         THE COURT:  Mr. Boies?
22         MR. BOIES:  Your Honor, could Ms. Rutherford
23    respond to that?
24         THE COURT:  Sure.
25         MS. RUTHERFORD:  Your Honor, briefly, just two

Starr International Company, Inc. v. USA                    9/15/2014

```
 1    points:  One is I have already sent an email to the
 2    Department of Justice approximately two weeks ago
 3    stating that if they look at our may-call list, many of
 4    those experts only submitted rebuttal reports.  So,
 5    their identification as may-calls should be obvious,
 6    that they're there based on their dependency on what
 7    arguments the Government raises at trial.
 8         THE COURT:  So, they're rebuttal witnesses more
 9    than direct --
10         MS. RUTHERFORD:  Correct.
11         THE COURT:  -- case-in-chief witnesses?
12         MS. RUTHERFORD:  Correct.  To the extent we plan
13    on calling them, it will be dependent on what issues get
14    raised in trial.  While we're not restricting ourselves
15    from potentially calling them in our case at any time,
16    at this moment, meaning today or tomorrow, we can't say
17    definitively whether these experts will be called.
18         THE COURT:  Okay.
19         MS. BURKE:  Your Honor, this is not the same
20    situation as a fact witness where opposing counsel
21    doesn't know exactly what we're attempting to elicit
22    from the fact witness or what the witness will testify
23    to.  Starr knows exactly the contents of the expert --
24    our expert reports and what the experts plan on
25    testifying to.  So, there's really no reason to hold
```

1    people in abeyance until the end.

2          THE COURT:  How many expert witnesses are on the

3    Plaintiff's may-call list?

4          MS. BURKE:  I believe four.

5          THE COURT:  Four.  Well, this idea strikes me as

6    a little too onerous for what we're trying to achieve

7    here.  I think that the restrictions we have in place to

8    tell you who's coming each Friday will aid this process,

9    and so I'm not going to do this one.  The fact that

10   they're on the list at all, I mean, you can prepare for

11   them at least to some extent, and I think that's fair.

12         MS. BURKE:  Thank you, Your Honor.

13         THE COURT:  Okay.  All right, then we get to the

14   question of entitlement to and proper method of

15   calculating prejudgment interest that you want to

16   bifurcate for some reason?  Isn't this more of a legal

17   question than a fact question?

18         MR. BOIES:  We think it is, Your Honor, and we

19   think in the interest of having the whole case resolved

20   as expeditiously as possible, the Court is going to be

21   able to make this judgment.  We may want to make some

22   arguments about it in our post-trial briefs and in our

23   closing arguments, but I don't see any reason why we

24   ought to bifurcate that and just extend it.

25         I mean, in addition, I think there's one witness

Starr International Company, Inc. v. USA                    9/15/2014

 1    on each side that may speak to some of these -- some of
 2    the issues that are relevant to interest, and we
 3    certainly wouldn't want to have a second mini-trial with
 4    just bringing those two witnesses back.
 5         THE COURT:  Yes, I mean, that's my reaction.
 6    It's mainly a legal issue, and if there's any factual
 7    evidence we need on this point, it's a relatively minor
 8    thing, it seems to me.  So, I would be inclined to just
 9    hear it all at one time as part of the main trial.
10         MR. DINTZER:  Thank you, Your Honor.
11         THE COURT:  Okay.  All right, then, the question
12    of how much advance notice for demonstratives, you have
13    72 hours in advance of their use at trial.  Is Plaintiff
14    okay with that?
15         MR. BOIES:  Your Honor, some time ago -- I can't
16    remember the exact hearing, but we did address this some
17    time ago, and I think at that point we agreed that it
18    would be 48 hours, and I think actually 48 hours is
19    enough time, and I think 72 hours is going to be
20    difficult to meet sometimes and that things are going to
21    happen during a trial.  Indeed, in most trials, you
22    don't even have 48 hours.
23         THE COURT:  Right.
24         MR. BOIES:  The Court's original order did not
25    provide for any time.  The Government asked for some

Starr International Company, Inc. v. USA                    9/15/2014

1    advance notice, and we agreed to 48, but I think -- I
2    think even that is more time than people usually get and
3    will be difficult to meet under the rigors of a
4    fast-moving trial.
5            THE COURT:  Um-hum.  So, you're okay with 48
6    hours?
7            MR. BOIES:  We will stick with 48, because we
8    agreed to it, Your Honor.
9            THE COURT:  Okay, all right.
10           MR. DINTZER:  And we had floated, Your Honor,
11   with the Plaintiff's recently the 48 hours.  Part of
12   what we're requesting here is a clarification so we both
13   understand what "demonstrative" means.  In cases that
14   we've had with this Court, typically the Court will
15   exclude purely textural slides, typically presentation
16   slides used in opening or perhaps with an expert that
17   don't involve any data and that, frankly, don't need to
18   be exchanged in advance, because the other side doesn't
19   need a chance to inspect the data, inspect the flow
20   charts, et cetera.  So, part of what we're asking for is
21   a clarification on demonstratives that do not include
22   purely textural slides.
23           THE COURT:  Well, sometimes it's mixed.
24           MR. DINTZER:  And then we would expect that they
25   be produced 48 hours in advance.

Starr International Company, Inc. v. USA                          9/15/2014

```
 1          THE COURT:  For example, if a party puts on an
 2   expert witness and they use 25 slides with that witness
 3   and some of them are textural and others aren't, I would
 4   still expect you to exchange the entire group 48 hours
 5   in advance.  I mean, I really don't want to make that
 6   precise distinction, but any -- any slides that are, you
 7   know, used for examining a witness or for opening
 8   statements, why don't you just exchange them 48 hours
 9   ahead of time?
10          MR. DINTZER:  We will, Your Honor.
11          THE COURT:  Okay.  All right, that brings us to
12   the question of certification of additional class
13   members, and you have given us a lot of material on
14   that, but it seems like there's not really an objection
15   to this procedure.  Is that correct?
16          MS. BURKE:  That's correct, Your Honor.  We've
17   preserved our original objection, but we have no
18   objection at this time to these additions.
19          THE COURT:  All right.  So, what's the total
20   number of the class members, then?  It's in the hundreds
21   of thousands, right?
22          MR. DWYER:  If we add these 6000 people, the
23   total number is approximately 275,000 persons or
24   organizations.
25          THE COURT:  All right.  Well, for this issue,
```

1    we're going to issue an order that we will get out in a

2    few days, adding these people or entities to the list of

3    certified class members.  I think that's the only thing

4    that you'll receive an order about, perhaps.  I think

5    the rest of it will be a matter of record on today's

6    transcript.  We will get that out for you.

7         And then the -- I guess the last item is

8    Plaintiff's contention that Defendant has asserted

9    frivolous objections to Plaintiff's trial exhibits.  Do

10   you want to go into that, Mr. Boies, or --

11        MR. BOIES:  Well, Your Honor, the Court earlier

12   said that we would take this up during the trial, and we

13   can do that on an individual basis.  As we indicated in

14   our -- in the pretrial order, there are a large number

15   of exhibits that we think the assertion of the hearsay

16   objection to simply isn't very plausible, and it would

17   be more efficient, obviously, if we resolved these

18   issues in advance.

19        We're prepared to do it on a case-by-case basis

20   during the trial, but we do think that to object to some

21   of the exhibits that we've indicated in the joint status

22   report that have been objected to on hearsay grounds

23   doesn't meet the rule and is -- it's an undesirable use

24   of trial time to deal with these kinds of evidentiary

25   objections if we can get them resolved.

Starr International Company, Inc. v. USA                    9/15/2014

1        We wanted to raise it with the Court, because
2    sometimes when a party has to look at the Court and say,
3    "We're keeping these objections," some of the objections
4    fall away.  So, we thought it was at least worth raising
5    with the Court, but we're prepared to do whatever the
6    Court thinks is appropriate as we move forward.
7        MR. GARDNER:  Thank you, Your Honor.  I'd like to
8    address the Court.  As Mr. Boies rightly noted, pursuant
9    to the Court's pretrial order, we understand the Court
10   is going to take up objections as exhibits are offered
11   into evidence, and particularly with hearsay, that makes
12   perfect sense, because we do not know at this juncture
13   whether Plaintiffs are even offering a particular
14   exhibit for the truth of the matter asserted or the
15   multiple levels of hearsay.
16       Many of these documents contain multiple levels
17   of hearsay that they may be able to overcome, and as
18   Mr. Boies alluded to, we may decide not to actually
19   lodge the objection as the fog of trial continues
20   forward.  So, the Government's perspective is that until
21   we know how the document is being used, which portions
22   of the document, it is simply premature to address these
23   types of hearsay objections.
24       I will also note that many of the exhibits over
25   which Plaintiffs have identified have multiple

Starr International Company, Inc. v. USA                    9/15/2014

1    objections beyond just hearsay, so even if we resolve
2    the hearsay objection now, which we believe would be
3    premature, it still wouldn't deal with the overall issue
4    of admissibility.

5         THE COURT:  I think as much as I would like to
6    resolve matters in advance of trial, I think for this
7    one, I think we will wait until trial and we'll address
8    them as they come up.  I think that many of them will
9    just drop out or fall aside as we progress through the
10   case.

11        Speaking of things that we might resolve in
12   advance of trial, I know that both sides have spent a
13   lot of time on filing motions in limine on various
14   subjects, and there's lots of paper accumulating in
15   chambers on these subjects, and I'm still expecting some
16   responses and replies that you may want to file.  I know
17   that some were just filed on Friday, I believe.

18        I'll just tell you for what it's worth at this
19   point, this is a very unusual case, and it's not a jury
20   trial.  So, I think my present inclination is to hear as
21   much of the story as we can during the trial, and I'm
22   really not inclined to limit things in advance when
23   really I'll know more about it and be more up to speed
24   on it at the time of trial.

25        I think that the filings have been useful in

Starr International Company, Inc. v. USA                    9/15/2014

1    alerting me to important issues that are going to be

2    presented in this case, but don't be surprised if

3    they're not granted, I guess is what I'm saying.

4              MR. DINTZER:  Thank you, Your Honor.

5              THE COURT:  All right.  I think that comes out

6    about equal, because I think we had four from each side,

7    so it's kind of a wash.

8              MR. BOIES:  I think we were equally affected,

9    Your Honor.

10             THE COURT:  All right.

11             MR. DINTZER:  So, Your Honor, are you asking us

12   to forgo reply briefs on these?

13             THE COURT:  You can file them if you want.  I'm

14   just --

15             MR. DINTZER:  If the Court tells us the Court

16   will not read them, then we will not file them.

17             MR. BOIES:  I think we can jointly agree to save

18   a tree or something.

19             MR. DINTZER:  Yes.  I think we can jointly agree

20   to that, Your Honor.

21             THE COURT:  Okay, that's fine.  If you want to

22   cease the briefing on those, that's fine.

23             MR. DINTZER:  Thank you, Your Honor.

24             THE COURT:  It will save some space for other

25   things on the shelves.

Starr International Company, Inc. v. USA                                9/15/2014

```
 1              All right, I think that's all that I have.  Are
 2    there any other items or issues that either of you want
 3    to address?
 4              MR. BOIES:  Not at this time, Your Honor, from
 5    our standpoint.
 6              MR. DINTZER:  Just one moment, Your Honor.
 7              THE COURT:  Sure.
 8              (Pause in the proceedings.)
 9              MR. DINTZER:  We're set, Your Honor.
10              THE COURT:  All right, very well.  I guess we'll
11    get under way two weeks from this morning, and I'll see
12    you all on September 29th.
13              ALL COUNSEL:  Thank you, Your Honor.
14              (Whereupon, at 11:00 a.m., the proceedings were
15    adjourned.)
16
17
18
19
20
21
22
23
24
25
```

Starr International Company, Inc. v. USA                    9/15/2014

1                      CERTIFICATE OF TRANSCRIBER

2

3

4           I, Susanne Bergling, court-approved transcriber,

5      certify that the foregoing is a correct transcription

6      from the official digital sound recording of the

7      proceedings in the above-titled matter.

8

9

10

11

12     DATED: 9/15/2014          _____

13                              SUSANNE BERGLING, RMR-CRR-CLR

14

15

16

17

18

19

20

21

22

23

24

25